Jeffrey M. Hamerling (Bar. No. 91532)
jeffrey.hamerling@dlapiper.com
DLA PIPER US LLP
153 Townsend Street
Suite 800
San Francisco, CA 94107-1957
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant
Best Western International, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mahroom Family Partnership, L.P., a California limited partnership; | Case No. C08-00136-JF |
| Plaintiff, | **DEFENDANT'S ANSWER AND COUNTERCLAIM** |
| vs. | |
| Best Western International, Inc., an Arizona non-profit corporation; and Does 1 through 10, inclusive; | **Jury Trial Demanded** |
| Defendants. | |
| Best Western International, Inc., an Arizona non-profit corporation; | |
| Counterclaimant, | |
| vs. | |
| Mahroom Family Partnership, L.P., a California limited partnership; Adiba Mahroom, an individual; Majid Mahroom, an individual; Roxanne Mahroom, an individual; and Dianne Mahroom, an individual; | |
| Counterdefendants. | |

DLA PIPER US LLP
SAN FRANCISCO

ANSWER AND COUNTERCLAIMS – C08-00136-FJ

Defendant Best Western International, Inc. ("BWI") hereby answers the Complaint of the Mahroom Family Partnership, L.P. (the "Partnership") as follows:

## ANSWER

1.    Answering paragraph 1 of the Partnership's Complaint, BWI is without information sufficient to form a belief as to the truth or falsity of the allegations contained therein and therefore denies the same.

2.    Answering paragraph 2 of the Partnership's Complaint, BWI admits that it is an Arizona non-profit Member association.  BWI denies the remaining allegations in paragraph 2 of the Partnership's Complaint.

3.    Answering paragraph 3 of the Partnership's Complaint, BWI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and therefore denies the same.

4.    Answering paragraph 4 of the Partnership's Complaint, BWI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and therefore denies the same.

5.    Answering paragraph 5 of the Partnership's Complaint, BWI denies the allegations contained therein.

6.    Answering paragraph 6 of the Partnership's Complaint, BWI denies the allegations contained therein.

7.    Answering paragraph 7 of the Partnership's Complaint, BWI admits that Plaintiff operates a motel located in Pacific Grove, California (the "Motel").

BWI admits that the Partnership entered into a Membership Agreement concerning the Motel's operation.   A number of the allegations in paragraph 7 of the Partnership's Complaint call for a legal conclusion to which no response is required.   BWI affirmatively states that it is not a franchisor and that no franchise relationship was created or existed between it and the Partnership.   BWI denies the remaining allegations in paragraph 7 of the Partnership's Complaint.

8.     Answering paragraph 8 of the Partnership's Complaint, the allegations contained therein call for a legal conclusion to which no response is required.   BWI affirmatively states that the Partnership entered into a Membership Agreement with BWI concerning the Motel's operation.   BWI further affirmatively states that it is not a franchisor and that no franchise relationship was created or existed between it and the Partnership.   BWI denies the remaining allegations in paragraph 8 of the Partnership's Complaint.

9.     Answering paragraph 9 of the Partnership's Complaint, the allegations contained therein call for a legal conclusion to which no response is required.   BWI affirmatively states that the Partnership entered into a Membership Agreement with BWI concerning the Motel's operation.   BWI further affirmatively states that it is not a franchisor and that no franchise relationship was created or existed between it and the Partnership.   BWI denies the remaining allegations in paragraph 9 of the Partnership's Complaint.

10.    Answering paragraph 10 of the Partnership's Complaint, the allegations contained therein call for a legal conclusion to which no response is required.  BWI affirmatively states that the Partnership entered into a Membership Agreement with BWI concerning the Motel's operation.  BWI further affirmatively states that it is not a franchisor and that no franchise relationship was created or existed between it and the Partnership.  BWI denies the remaining allegations in paragraph 10 of the Partnership's Complaint.

11.    Answering paragraph 11 of the Partnership's Complaint, the allegations contained therein call for a legal conclusion to which no response is required.  BWI affirmatively states that the Partnership entered into a Membership Agreement with BWI concerning the Motel's operation.  BWI further affirmatively states that it is not a franchisor and that no franchise relationship was created or existed between it and the Partnership.  BWI denies the remaining allegations in paragraph 11 of the Partnership's Complaint.

12.    Answering paragraph 12 of the Partnership's Complaint, BWI admits that an August 14, 2006 letter was sent to Majid Mahroom and affirmatively states that the letter speaks for itself.  BWI denies the remaining allegations in paragraph 12 of the Partnership's Complaint.

13.    Answering paragraph 13 of the Partnership's Complaint, BWI admits that an August 14, 2006 letter was sent to Majid Mahroom and affirmatively states

that the letter speaks for itself.  BWI denies the remaining allegations in paragraph 13 of the Partnership's Complaint.

14.    Answering paragraph 14 of the Partnership's Complaint, BWI admits that "quality assurance" assessments of its Member hotels are conducted.  BWI denies the remaining allegations in paragraph 14 of the Partnership's Complaint.

15.    Answering paragraph 15 of the Partnership's Complaint, BWI denies the allegations contained therein.

16.    Answering paragraph 16 of the Partnership's Complaint, BWI admits that Ahmad Abdolvahabi conducted a quality assurance assessment of the Motel on October 23, 2007, resulting in a QA assurance score of 801.  BWI denies the remaining allegations in paragraph 16 of the Partnership's Complaint.

17.    Answering paragraph 17 of the Partnership's Complaint, BWI admits that the Partnership sent a letter to BWI dated December 4, 2007.  BWI denies the remaining allegations in paragraph 17 of the Partnership's Complaint.

18.    Answering paragraph 18 of the Partnership's Complaint, BWI admits that it sent a letter to Majid Mahroom dated December 28, 2007 advising that Partnership's Membership was terminated.  BWI denies the remaining allegations in paragraph 18 of the Partnership's Complaint.

19.    Answering paragraph 19 of the Partnership's Complaint, the allegations contained therein call for a legal conclusion to which no response is required.  BWI affirmatively states that it is not a franchisor and that no franchise

relationship was created or existed between it and the Partnership.  BWI denies the remaining allegations in paragraph 19 of the Partnership's Complaint.

## FIRST CLAIM

20.    Answering paragraph 20 of the Partnership's Complaint, BWI denies the allegations contained therein.  BWI incorporates by reference the admissions, denials, and affirmative allegations contained in the preceding paragraphs as if fully stated herein.

21.    Answering paragraph 21 of the Partnership's Complaint, BWI denies the allegations contained therein.

22.    Answering paragraph 22 of the Partnership's Complaint, BWI denies the allegations contained therein.

23.    Answering paragraph 23 of the Partnership's Complaint, BWI denies that it is a franchisor and that a franchise relationship was created or exists between it and the Partnership.  BWI admits that the Partnership is not entitled to continue its Membership with BWI.  BWI denies the remaining allegations in paragraph 23 of the Partnership's Complaint.

24.    Answering paragraph 24 of the Partnership's Complaint, BWI admits that a dispute exists between the parties.  BWI denies the remaining allegations in paragraph 24 of the Partnership's Complaint.

1

2

3

## SECOND CLAIM

25.    Answering paragraph 25 of the Partnership's Complaint, BWI denies the allegations contained therein.  BWI incorporates by reference the admissions, denials, and affirmative allegations contained in the preceding paragraphs as if fully stated herein.

26.    Answering paragraph 26 of the Partnership's Complaint, the allegations therein call for a legal conclusion to which no response is required.  BWI denies the remaining allegations in paragraph 26 of the Partnership's Complaint.

27.    Answering paragraph 27 of the Partnership's Complaint, BWI denies the allegations contained therein.

28.    Answering paragraph 28 of the Partnership's Complaint, BWI denies the allegations contained therein.

29.    Answering paragraph 29 of the Partnership's Complaint, BWI denies the allegations contained therein.

## THIRD CLAIM

30.    Answering paragraph 30 of the Partnership's Complaint, BWI denies the allegations contained therein.  BWI incorporates by reference the admissions, denials, and affirmative allegations contained in the preceding paragraphs as if fully stated herein.

31.    Answering paragraph 31 of the Partnership's Complaint, the allegations contained therein call for a legal conclusion to which no response is required.    BWI denies the remaining allegations in paragraph 31 of the Partnership's Complaint.

32.    Answering paragraph 32 of the Partnership's Complaint, BWI denies the allegations contained therein.  BWI affirmatively states that it is not a franchisor and that no franchise relationship was created between it and the Partnership.

33.    Answering paragraph 33 of the Partnership's Complaint, the allegations contained therein call for a legal conclusion to which no response is required.    BWI denies the remaining allegations in paragraph 33 of the Partnership's Complaint.

34.    BWI denies any remaining allegations in the Partnership's Complaint not previously admitted herein.

35.    BWI further denies that the Partnership has sustained any injury, damage, or loss and that the Partnership is entitled to any of the relief sought in its Prayer for Relief.

**AFFIRMATIVE DEFENSES**

For its affirmative defenses, BWI states and alleges as follows:

A.    The Partnership fails to state a claim upon which relief may be granted.

B.    BWI has fully performed any and all of its contractual obligations owed to the Partnership under the Membership Agreement or otherwise.

C.    The Partnership failed to join all necessary and indispensable parties in bringing its Complaint against BWI.

D.    To the extent the Partnership has stated any claim upon which relief may be granted, any such claim is subject to setoff and/or recoupment.

E.    To the extent the Partnership has stated any claim upon which relief may be granted, any such claim is barred by the doctrine of unclean hands.

F.    To the extent the Partnership has stated any claim upon which relief may be granted, any such claim is barred by the doctrines of laches, waiver, and/or estoppel.

G.    To the extent the Partnership has stated any claim upon which relief may be granted, any such claim is barred by the applicable statute of limitations.

H.    To the extent the Partnership has stated any claim upon which relief may be granted, such claims are barred for failure to satisfy conditions precedent, concurrent, and/or subsequent.

I.    To the extent the Partnership has stated any claim upon which relief may be granted, any damages the Partnership has suffered are a result of its own improper conduct or the result of others that are not controlled by BWI and/or the Partnership has failed to mitigate its damages.

J.    To the extent the Partnership has stated any claim upon which relief may be granted, any damages the Partnership claims to have suffered cannot be established with the requisite reasonable degree of certainty.

BWI reserves the right to amend and supplement these affirmative defenses as further proceedings may warrant and as the parties conduct discovery.

**WHEREFORE,** BWI respectfully requests judgment in its favor and against the Partnership as follows:

1.    Dismissing the Complaint, in its entirety;

2.    Awarding BWI its costs and attorneys' fees incurred; and

3.    For such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

Best Western International, Inc. ("BWI") for its Counterclaims against the Counterdefendant Mahroom Family Partnership, L.P. (the "Partnership") states as follows:

## THE PARTIES

1.    BWI is an Arizona non-profit member corporation formed under the laws of the State of Arizona and headquartered in Phoenix, Arizona.

2.    Upon information and belief, the Partnership is a limited partnership organized under the laws of the State of California.

3.    The Partnership owns and operates the motel formerly known as the Best Western Monarch Resort, located at 1111 Lighthouse Avenue, Pacific Grove,

-10-

California 93950, and referenced in BWI's records as property #05591 (the "Motel").

4.      The Partnership is comprised of Majid Mahroom, Adiba Mahroom, Roxanne Mahroom, Dianne Mahroom, Laila Mahroom, and Linda Mahroom (collectively, the "Mahrooms").  *See* Membership Application and Agreement, (the "Membership Agreement"), Applicant General Information Form, p. 1, attached hereto as Exhibit A and incorporated herein as if fully set forth.

5.      Adiba Mahroom and Majid Mahroom are general partners of the Partnership.  *See* Membership Agreement, p. 8.

6.      Upon information and belief, Roxanne Mahroom, Dianne Mahroom, Laila Mahroom, and Linda Mahroom are limited partners of the Partnership.

7.      Upon information and belief, Adiba Mahroom, Majid Mahroom, Roxanne Mahroom, and Dianne Mahroom are responsible for the day-to-day operation and management of the Motel. Upon information and belief, Roxanne Mahroom is the General Manager of the Motel.

8.      In their day-to-day operation and management of the Motel, upon information and belief, Adiba Mahroom, Majid Mahroom, Roxanne Mahroom, and Dianne Mahroom conduct business on behalf of the Partnership and the Motel with BWI and with third parties.

9.      Pursuant to the parties' express agreement, the parties agreed that venue of the parties' disputes exists exclusively with the Courts in the State of

Arizona.  Nonetheless, to the extent that venue exists in this Court as alleged by the Partnership in its Complaint, this Court has jurisdiction over the Lanham Act claim set forth below by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the other claims set forth below by virtue of 28 U.S.C. §§ 1332, 1367, and/or 1338(b).

10.    Pursuant to the parties' express agreement, the parties agreed that venue of the parties' disputes exists exclusively with the Courts in the State of Arizona.  Nonetheless to the extent that venue exists in this Court, the exercise of personal jurisdiction over the Partnership is proper pursuant to 28 U.S.C. § 1391(b) and (c) and because, among other reasons, the Partnership has caused events to occur and injuries to result in the State of California.

## **GENERAL ALLEGATIONS**

11.    BWI operates as a membership organization consisting of individually owned and operated hotels (the "Members").  The rights and obligations of the Members are determined by the membership and are set forth in the Membership Agreement, BWI's Bylaws and Articles of Incorporation (the "Articles"), and in BWI's Rules and Regulations (the "Rules and Regulations").  A copy of the Bylaws and Articles of Incorporation is attached hereto as Exhibit B and incorporated herein as if fully set forth.  A copy of the Rules and Regulations is attached hereto as Exhibit C and incorporated herein as if fully set forth.

12.    BWI provides to its Members various services including a worldwide reservation system and worldwide marketing campaigns and the option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "BWI Services").

13.    BWI employs a large number of employees worldwide who are dedicated to providing Member properties with the BWI Services.

14.    In exchange for receiving BWI Services, the Members are obligated to, among other things, pay membership fees and other assessments.

15.    Each BWI Member is authorized to use BWI's trade name, trademarks, service marks, logos, and other identifying marks and symbols (the "Marks") in connection with the Member's property pursuant to a limited, non-exclusive license (the "BWI License"), which is set forth in the Membership Agreement. *See* Membership Agreement at ¶¶ 19-26.

16.    BWI first adopted "Best Western" as its trade name in 1947. Shortly thereafter, BWI adopted and began using "Best Western" as a trademark identifying property services provided by Member properties that were affiliated with BWI. BWI has continuously and extensively promoted its trade name and trademark in interstate commerce since 1947. As a result of this extensive promotion, the trade name and trademark have become famous among consumers as a source-identifying symbol.

17.    Since 1947, BWI has registered with the United States Patent and Trademark Office ("USPTO") various trademarks, service marks, and collective membership marks.  On April 14, 1959, the BWI logo was first registered as a service mark by the USPTO under Registration No. 677,103.  BWI has developed the BWI Marks at great expense over the past decades.

18.    BWI owns the following registrations for BWI Marks and the marks referenced in these registrations:

(a)    a BWI logo was registered as a service mark by the USPTO on April 14, 1959, under Registration No. 677,103;

(b)    a BWI logo was registered as a collective membership mark by the USPTO on October 27, 1959, under Registration No. 687,405;

(c)    a BWI logo was registered as a collective membership mark by the USPTO on May 5, 1964, under Registration No. 769,314;

(d)    a BWI logo was registered as a service mark by the USPTO on May 14, 1968, under Registration No. 849,155;

(e)    a BWI logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,616;

(f)    a BWI logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,617;

(g)    a BWI logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,812;

1

2

3    (h)    a BWI logo was registered as a collective membership mark by

4    the USPTO on June 8, 1971, under Registration No. 914,813;

5    (i)    a BWI logo was registered as a service mark by the USPTO on

6    August 30, 1977, under Registration No. 1,072,360;

7    (j)    a BWI logo was registered as a collective membership mark by

8    the USPTO on September 27, 1977, under Registration No. 1,074,300;

9    (k)    a BWI logo was registered as a service mark by the USPTO on

10   June 11, 1985, under Registration No. 1,341,611;

11   (l)    the BWI word mark was registered by the USPTO as a service

12   mark on February 3, 1987, under Registration No. 1,427,735;

13   (m)    the BWI word mark was registered by the USPTO as a service

14   mark on March 10, 1987, under Registration No. 1,432,431;

15   (n)    the BWI crown logo design was registered by the USPTO as a

16   service mark on December 6, 1988, under Registration No. 1,515,712;

17   (o)    BWI's current logo was registered by the USPTO as a

18   trademark on June 20, 1995, under Registration No. 1,900,620;

19   (p)    BWI's current logo was registered by the USPTO as a service

20   mark on November 7, 1995, under Registration No. 1,933,830;

21   (q)    BWI's current logo was registered by the USPTO as a service

22   mark on November 25, 1997, under Registration No. 2,116,079;

(h)    a BWI logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,813;

(i)    a BWI logo was registered as a service mark by the USPTO on August 30, 1977, under Registration No. 1,072,360;

(j)    a BWI logo was registered as a collective membership mark by the USPTO on September 27, 1977, under Registration No. 1,074,300;

(k)    a BWI logo was registered as a service mark by the USPTO on June 11, 1985, under Registration No. 1,341,611;

(l)    the BWI word mark was registered by the USPTO as a service mark on February 3, 1987, under Registration No. 1,427,735;

(m)    the BWI word mark was registered by the USPTO as a service mark on March 10, 1987, under Registration No. 1,432,431;

(n)    the BWI crown logo design was registered by the USPTO as a service mark on December 6, 1988, under Registration No. 1,515,712;

(o)    BWI's current logo was registered by the USPTO as a trademark on June 20, 1995, under Registration No. 1,900,620;

(p)    BWI's current logo was registered by the USPTO as a service mark on November 7, 1995, under Registration No. 1,933,830;

(q)    BWI's current logo was registered by the USPTO as a service mark on November 25, 1997, under Registration No. 2,116,079;

(r)    BWI's current logo was registered by the USPTO as a service mark on October 14, 1997, under Registration No. 2,105,546;

(s)    BWI's current logo was registered by the USPTO as a service mark on March 3, 1998, under Registration No. 2,140,332;

(t)    BWI has registered a variety of other designs and phrases as service marks in connection with the trade of hotel, motel, and resort lodging.

(u)    BWI has also registered these and other Marks in countries around the world.

19.    Many of the registrations described above are currently in full force and effect, unrevoked, and uncancelled.  Several of the above-listed federal registrations for the BWI mark and logo have become incontestable under 15 U.S.C. § 1065.

20.    The BWI Marks are inherently distinctive and possess strong secondary meaning.

21.    The Membership Agreement and the Rules and Regulations establish the minimum standard scores that each Member must meet in order to achieve and maintain membership.  As a result, consumers worldwide associate the BWI Marks with high quality in the hotel/motel industry.

22.    A key element of BWI's branding effort is the display of the BWI Marks on the premises of Member properties through signs, publications, and other public displays.

23.    Upon default by a Member property of certain of its obligations to BWI, including obligations set forth in the Membership Agreement, the Bylaws, and the Rules and Regulations, the BWI Board of Directors may terminate the membership and the BWI License.

24.    Within fifteen (15) days following the termination of membership, the former Member must cease and desist from using, and remove from public view, all BWI Marks and all references to BWI.  The former Member is also required to cease and desist from using any item that is similar to the BWI Marks in spelling, sound, appearance, or in any other manner.

25.    The former Member must also cease and desist from holding himself/herself out to the general public and the industry in which BWI competes as a Member of BWI.

## THE PARTNERSHIP'S BWI MEMBERSHIP

26.    On January 30, 1998, the Partnership executed the Membership Agreement.  Upon BWI's approval of the Membership Agreement, the Partnership became a BWI Member and the Membership Agreement became the contract controlling the relationship between the Partnership and BWI.

27.    On January 30, 1998, Majid Mahroom elected to be the voting BWI member and thereby became bound by the terms of the Membership Agreement and became liable for all obligations arising under the Membership Agreement on his own behalf, on behalf of Adiba Mahroom and on behalf of the Partnership. Membership Agreement at ¶ 3.

28.    The Partnership agreed to timely pay all fees, dues, charges, and assessments imposed generally on the membership by the Board of Directors of BWI and to promptly pay the costs of all goods or services provided by or ordered through BWI.

29.    It further agreed that past due amounts would bear interest at the rate of one and one-half percent (1.5%) per month from the date due until paid, provided that such interest charge would in no way authorize or excuse late payments or limit BWI's rights and remedies against it.

30.    BWI granted the Partnership the BWI License, thereby allowing it to use the BWI Marks in connection with the Motel, subject to the terms of the BWI License, and only for the term of the BWI License.

31.    The Partnership agreed that "[a]ny portion of any sign displaying a Best Western [Mark] is and shall remain the property of Best Western." The Partnership further agreed to "transfer title of all such portions of signs, whether now owned or acquired in the future, to Best Western." Membership Agreement at ¶ 21.

32.    The Partnership agreed that termination of the BWI membership would result in termination of the BWI License.    The Partnership agreed to "remove from public view and cease using" all BWI Marks and all other references to BWI within fifteen (15) days of the date of termination.    Membership Agreement at ¶ 22.

33.    The Partnership also agreed that, upon termination of the BWI License, it would "actively take steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol."    Membership Agreement at ¶ 22.

34.    On December 28, 2007, after granting the Partnership repeated extensions of time within which to comply with its Membership Agreement, Bylaws, and Rules and Regulations and the Partnership's failure to do so, BWI, in accordance with applicable provisions of the Membership Agreement, Bylaws, Articles, and Rules and Regulations, notified the Partnership that its membership was terminated and that the Partnership must cease using BWI's Marks.    A copy of this notice is attached hereto as Exhibit D and incorporated herein as if fully set forth.

## THE PARTNERSHIP'S INTENTIONAL AND UNLAWFUL USE OF THE BWI MARKS

35.    The Partnership continues to use – intentionally and unlawfully – the BWI Marks in connection with the Motel's operation.

36.    The Partnership continues to use – intentionally and unlawfully – the BWI Marks to advertise and secure reservations on the Internet, including, but not limited to, the following websites:

(a)    http://reservations.visitcalifornia.com;

(b)    http://www.hotel-rates.com;

(c)    www.hotels.expedia.com.

*See* Internet Reservations Listings, attached hereto as Exhibit E.

37.    The Partnership's intentional and unlawful continued use of the BWI Marks in connection with the Motel is likely to confuse the public and cause members of the public to stay at the Motel in the mistaken belief that the Motel is a BWI Motel.

38.    The Partnership's misconduct is also likely to divert to the Partnership the benefit of and/or damage the reputation and goodwill that BWI has built throughout the years.

## FIRST COUNTERCLAIM
## BREACH OF CONTRACT – POST TERMINATION USE OF TRADEMARKS

39.    BWI incorporates by reference the allegations set forth herein as if fully set forth in this First Counterclaim.

40.    Pursuant to the express terms of the Membership Agreement, the Partnership was obligated to remove from public view, and to cease all use of, the BWI Marks in connection with the Motel within fifteen (15) days after termination.

This prohibition included making any representation, whether direct or indirect, indicating that the Motel is affiliated with BWI.

41.    Despite BWI's demand that the Partnership discontinue its use of the BWI Marks in connection with the Motel, it has used and continues to use the BWI Marks in connection with the Motel's operation and without BWI's consent or authorization.

42.    Paragraph 24 of the Membership Agreement provides for liquidated damages where, as here, the Partnership continues to use the BWI Marks in connection with the Motel for more than fifteen (15) days following the termination of its BWI membership and the BWI License.  The amount of liquidated damages is equal to fifteen percent (15%) of the mean of the Motel's room rates per day multiplied by the total number of rooms for every day that the Partnership continues to use the BWI Marks beyond the fifteen (15) day period.  For the Partnership's Motel, such liquidated damages continue to accrue at the rate of $1,120.88 per day.  As of February 27, 2008, the amount of liquidated damages due and owing to BWI by the Partnership is $49,318.72.  Pursuant to the Membership Agreement, the Partnership also agreed that these liquidated damages were in addition to any and all other remedies available to BWI for the Partnership's continued wrongful use of the BWI Marks in connection with the Motel.  *See* Membership Agreement, ¶¶ 24-25.

43.    The Partnership's acts complained of herein will damage and have damaged BWI irreparably.  Monetary damages alone thus will not afford full and adequate relief for all of BWI's injuries resulting from the Partnership's conduct. Such injuries include and will continue to include harm to BWI's goodwill and reputation in the marketplace that money cannot sufficiently compensate.

44.    In addition to and/or in the alternative to monetary damages, BWI is, therefore, entitled to a preliminary and/or permanent injunction restraining and enjoining the Partnership and its respective officers, members, agents, servants, and employees and any other persons or entities acting on behalf of or in concert with the Partnership from using the BWI Marks or any colorable imitation thereof, in connection with the promotion, advertisement, and sale of goods and services without BWI's authorization.

45.    Pursuant to paragraph 36 of the Membership Agreement, A.R.S. § 12-341.01, and CCC § 1717, BWI is entitled to recover the attorneys' fees and costs incurred in pursuing this action.

## SECOND COUNTERCLAIM
## FEDERAL TRADEMARK INFRINGEMENT
## (LANHAM ACT § 32(1), 15 U.S.C. § 1114(1))

46.    BWI incorporates by reference the allegations set forth herein as if fully set forth in this Second Counterclaim.

47.    Despite written demand by BWI, the Partnership refuses to cease and desist from the use of the BWI Marks in connection with the Motel.

-22-

48.    The Partnership continues to hold the Motel out to the public as a BWI Member, despite the fact that an affiliation no longer exists between it and BWI.

49.    The Partnership's unauthorized use of the BWI Marks is likely to cause and has caused the public to believe, erroneously, that the Motel is, in fact, a BWI property.  Also, it is likely to divert and has diverted to the Partnership the benefit of the reputation and goodwill associated with BWI's name and/or damaged the reputation and goodwill associated with BWI's name.

50.    The Partnership's actions complained of herein have at all times been without BWI's consent.

51.    The Partnership's acts constitute infringement of the BWI Marks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52.    The Partnership's acts complained of herein will damage and have damaged BWI irreparably.  Monetary damages will not afford full and adequate relief for all of BWI's injuries resulting from the Partnership's conduct.  Such injuries include and will continue to include harm to BWI's goodwill and reputation in the marketplace that money cannot sufficiently compensate.

53.    BWI is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining the Partnership and its respective officers, members, agents, servants, and employees and any other persons or entities acting on behalf of or in concert with the Partnership from using the BWI Marks or any colorable

imitation thereof, in connection with the promotion, advertisement, and sale of goods and services without BWI's authorization, pursuant to 15 U.S.C. § 1116.

54.     The Partnership's infringement is willful and intentional.

55.     Accordingly, in addition to and/or alternatively, BWI thus is entitled to recover all damages sustained as a result of the Partnership's unlawful conduct, including three times the Partnership's profits and BWI's damages, as well as the costs of this suit and attorneys' fees, pursuant to 15 U.S.C. § 1117.

### THIRD COUNTERCLAIM
### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (LANHAM ACT § 43(a), 15 U.S.C. § 1125)

56.     BWI incorporates by reference the allegations set forth herein as if fully set forth in this Third Counterclaim.

57.     The Partnership's unauthorized use of the BWI Marks is likely to cause and has caused the public to believe, erroneously, that the Motel and its services are sponsored by, endorsed by, or associated with BWI.

58.     The Partnership's continued operation and competition with BWI through infringement of the BWI Marks in connection with the Motel constitutes a false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     The Partnership's conduct has caused, and unless enjoined, will continue to cause, BWI to suffer immediate, irreparable, and continuous loss, including injury to its goodwill and reputation.

60.    Upon information and belief, the Partnership has undertaken the acts complained of herein willfully and with the intent to cause confusion, mistake, and deception on the part of the public.

61.    Unless the Partnership is restrained by this Court, it will continue to commit the foregoing acts of unfair competition.

62.    Monetary damages will not afford full and adequate relief for all of BWI's injuries resulting from the Partnership's conduct, and, therefore, BWI is entitled to injunctive relief under 15 U.S.C. §§ 1116, 1118.

63.    The Partnership's acts of unfair competition are willful and intentional.

64.    Alternatively and/or in addition to its requested injunctive relief, BWI is entitled to recover damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117.

## FOURTH COUNTERCLAIM
## FEDERAL TRADEMARK DILUTION
## (15 U.S.C. § 1125(c))

65.    BWI incorporates by reference the allegations set forth herein as if fully set forth in this Fourth Counterclaim.

66.    BWI has advertised and publicized the BWI Marks extensively for decades throughout the United States.  As a result of their inherent distinctiveness and extraordinarily widespread use, the BWI Marks have acquired a high degree of recognition and fame for hotel services.

67.    The Partnership began using the BWI Marks in commerce, pursuant to the BWI License, long after BWI's marks had already become famous throughout the United States, including the State of Arizona and the State of California.

68.    The Partnership's use of the BWI Marks or variations thereof, in violation of the BWI License, has caused, and will continue to cause, dilution of the distinctive quality of the BWI Marks.

69.    The Partnership's use of the BWI Marks or variations thereof has confused and/or deceived the public and is likely to continue to confuse and/or deceive the public as to the source, sponsorship, creation, administration, operations, and approval of the activities, disclosures, and actions of the Partnership.

70.    Upon information and belief, the Partnership has committed the acts complained of herein willfully and with the intent to trade on BWI's reputation and/or to cause dilution of BWI's famous marks.

71.    The Partnership has damaged and continues to damage BWI's business reputation and goodwill.

72.    Moreover, the Partnership's acts have caused, and unless enjoined will continue to cause, irreparable harm and injury to BWI for which it has no adequate remedy at law.

73.    The Partnership's acts are willful and intentional.

74.    Alternatively and/or in addition to its requested injunctive relief, BWI is entitled to recover damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117.

## FIFTH COUNTERCLAIM
## UNFAIR COMPETITION – ARIZONA AND CALIFORNIA LAW

75.    BWI incorporates by reference the allegations set forth herein as if fully set forth in this Fifth Counterclaim.

76.    The Partnership has damaged BWI's business reputation and goodwill. Moreover, the Partnership's acts have caused, and unless enjoined will continue to cause, irreparable harm and injury to BWI for which it has no adequate remedy at law.

77.    The Partnership's acts complained of herein constitute unfair competition under the laws of the States of Arizona and California.

78.    The Partnership has been unjustly enriched and has damaged BWI's business reputation and goodwill.

79.    Upon information and belief, the Partnership's acts complained of herein were intentional, wanton, willful, and committed in bad faith with the intent to confuse and deceive the public.

80.    The Partnership's acts complained of herein have caused, and unless enjoined will continue to cause, BWI irreparable harm for which there is no adequate remedy at law.

## SIXTH COUNTERCLAIM
## TRADEMARK DILUTION – ARIZONA LAW
## (A.R.S. § 44-1448.01) AND CALIFORNIA LAW
## (CAL. BUS. & PROF. CODE § 14330)

81.    BWI incorporates by reference the allegations set forth herein as if fully set forth in this Sixth Counterclaim.

82.    The BWI Marks are famous within the States of Arizona and California, and became famous in California long before the Partnership began using the BWI Marks.

83.    The Partnership's acts complained of herein constitute commercial use of a mark or trade name that causes dilution of the distinctive quality of the famous BWI Marks.

84.    Upon information and belief, the Partnership has undertaken these acts willfully and with the intent to trade on BWI's reputation or to cause dilution of the BWI Marks.

85.    The Partnership's acts complained of herein have caused dilution of BWI's famous marks in violation of A.R.S. § 44-1448.01 and Cal. Bus. & Prof. Code § 14330.

86.    The Partnership's acts complained of herein have caused, and unless enjoined will continue to cause, irreparable harm and injury to BWI's famous BWI Marks, business reputation, and goodwill for which there is no adequate remedy at law.

### SEVENTH COUNTERCLAIM
### COMMON LAW TRADEMARK INFRINGEMENT

87.    BWI incorporates by reference the allegations set forth herein as if fully set forth in this Seventh Counterclaim.

88.    BWI also has common law rights in the BWI Marks through the use of the BWI Marks in commerce, such rights existing long before any use of the BWI Marks by the Partnership.

89.    The Partnership's acts complained of herein constitute common law infringement of the BWI Marks.

90.    Upon information and belief, the Partnership has undertaken these acts willfully and with the intent to trade on BWI's reputation and to cause confusion, mistake, and deception on the public.

91.    The Partnership's acts complained of herein have caused, and unless enjoined will continue to cause, irreparable harm and injury to BWI's famous BWI Marks, business reputation, and goodwill for which there is no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, BWI prays for judgment against the Partnership as follows:

A.    With respect to the First Counterclaim, liquidated damages for breach of the BWI Membership Agreement in an amount equal to fifteen percent (15%) of the mean of the Motel's room rates per day multiplied by the total number of rooms

from January 13, 2008 (the sixteenth (16th) day following termination of the membership) until the Partnership ceases and desists from the unlawful and unauthorized use of the BWI Marks;

B.     With respect to the Second, Third, Fourth, and Sixth Counterclaims, an order requiring the Partnership to make an accounting of the profits derived by it by reason of their unlawful acts, holding the Partnership liable to BWI for such profits, and awarding BWI its actual damages suffered as a result of the trademark infringement complained of against the Partnership, in an amount to be proven at trial;

C.     With respect to the Second, Third, and Sixth Counterclaims, an award of treble damages against the Partnership pursuant to 15 U.S.C. § 1117(b), or, alternatively, an award of liquidated damages to BWI against the Partnership calculated in the manner provided for in paragraph 24 of the Membership Agreement, whichever is greater;

D.     With respect to all the Counterclaims:

1.     Preliminary and permanent injunctive relief enjoining the Partnership, and its respective officers, members, agents, servants, and employees, and any other persons or entities acting on behalf of or in concert with the Partnership, from:

(a)     Making any use of the BWI Marks, any colorable imitation thereof, or any other confusingly similar marks;

(b)    Displaying, authorizing, licensing, or assisting or facilitating any other person's or entity's use or display of the BWI Marks or any colorable imitation thereof; and

(c)    Using anything consisting of or incorporating any one or more words, letters, designs, or devices that contain any component of the BWI Marks, or which singly or together are similar in spelling, sound, appearance, or in any other manner to the BWI Marks.

2.    Preliminary and permanent injunctive relief enjoining the Partnership and its respective partners, officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with the Partnership, to immediately and permanently remove all BWI Marks as used on the premises of, or in reference to, the Motel including (without limitation) any road signs, wall signs, or any other display or item bearing any of the BWI Marks;

3.    Preliminary and permanent injunctive relief ordering the Partnership to permit BWI to remove any infringing signs, displays, or items from the Motel, and awarding BWI all reasonable and necessary costs of such removal from the Partnership (in addition to whatever penalties the Court may impose on the Partnership for failing to comply with the Court's order to remove any infringing signs, displays, or items from the Motel), if the Partnership does not remove such signs, displays, or items from the Motel within ten (10) days of the injunction issued pursuant to Paragraphs (D)(1) and (2) above;

4.      Preliminary and permanent injunctive relief enjoining the Partnership and its respective partners, officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with the Partnership from applying for, pursuing, or owning any applications or registrations, including without limitation any domain names, business names, corporate names, trade names, trademarks, service marks, or d/b/a's that contain any component of the BWI Marks, any colorable imitation thereof, or any confusingly similar Marks;

5.      Preliminary and permanent injunctive relief ordering the Partnership and its respective partners, officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with the Partnership, to immediately assign the ownership of any application or registration that contains any component of the BWI Marks, any colorable imitation thereof, or any other confusingly similar Marks to BWI, or, alternatively, to file all documents necessary to effectuate the Partnership's abandonment of such applications or registrations;

6.      Preliminary and permanent injunctive relief ordering the Partnership and its respective partners, officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with the Partnership, to immediately notify all advertisers, search engines, and providers of related services that the Partnership is no longer affiliated with BWI and is

DLA Piper US LLP
San Francisco

required to cause the cessation of all advertising and distribution of promotional material containing any of the BWI Marks, any colorable imitation thereof, or any other confusingly similar marks, and enjoining the Partnership from using any such marks (or any imitations or marks confusingly similar thereto) anywhere on the Internet or elsewhere, including without limitation any use on or with any websites, domain names, metatags, key words, banner ads, or search engines;

7. An Order directing the Partnership to file with this Court and serve on BWI within ten (10) days after service of an injunction, a report in writing under oath setting forth in detail the manner and form in which the Partnership has complied with such injunction; and

8. An award to BWI of its damages, in an amount to be proven at trial.

F. With respect to the Fifth Counterclaim, an award of special exemplary and/or punitive damages in an amount to be determined at trial.

G. With respect to all Counterclaims:

1. Attorneys' fees and costs incurred herein against the Partnership pursuant to the Membership Agreement, and/or 15 U.S.C. § 1117(a) (or any other applicable law including by not limited to A.R.S. § 12-341.01 and CCP § 1717); and

2. For such other and further relief as the Court deems just and proper.

1    RESPECTFULLY SUBMITTED this 27th day of February, 2008.

2

3

4

5                                   By    s/Jeffrey M. Hamerling
                                          Jeffrey M. Hamerling (Bar. No. 91532)
6                                         jeffrey.hamerling@dlapiper.com
                                          DLA Piper US LLP
7                                         153 Townsend Street, Suite 800
                                          San Francisco, CA 94107-1957
8                                         Tel: 415.836.2500
                                          Fax: 415.836.2501
9

10

11                                        Attorneys for Defendant
                                          Best Western International, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA Piper US LLP
San Francisco

ANSWER AND COUNTERCLAIMS – C08-00136-FJ

# EXHIBIT A

93 FEB - 2 AM 10: 49



**BEST WESTERN INTERNATIONAL, INC.**

**APPLICANT GENERAL INFORMATION FORM**

## THIS FORM MUST BE COMPLETED IN ITS ENTIRETY. FAILURE TO DO SO WILL RESULT IN A DELAY IN PROCESSING THE APPLICATION

---

## IMPORTANT INSTRUCTIONS FOR COMPLETION:

- **Section I Applies Only if Applicant Owns The Hotel.**

- **Section II Applies Only if Applicant is a Lessee of The Hotel.**

**I.    INFORMATION REGARDING APPLICANT (If applicant is a lessee proceed to Section II).**

1.    State the name and percentage of ownership for each person or entity holding an ownership interest in the Hotel, as well as the social security number of each owner. In this sub-part do not indicate the breakdown of interest in corporations or partnerships who are owners. Merely state the name of each owner and percent interest. For example: XYZ Corporation - 50%, John James - 25%, Jane James - 25%.

| Full Name | Address | Phone Number | Soc. Sec. # | % Ownership |
|-----------|---------|--------------|-------------|-------------|
| MAJID MAHROOM | | | | 25% |
| ADIBA MAHROOM | | | | 25% |
| LINDA MAHROOM | | | | 12.50% |
| LAILA MAHROOM | | | | 12.50% |
| ROXANNE MAHROOM | | | | 12.50% |
| DIANNE MAHROOM | | | | 12.50% |

TOTAL 100   (Must Equal 100%)

2.    If any owner is not an individual (i.e. is a corporation, partnership, limited partnership or other entity), provide the following information for each owner:

    (1) Corporation (answer only subparagraphs A - D);
    (2) Partnership (answer only subparagraphs E - G);
    (3) Limited Partnership (answer only subparagraph H); and
    (4) Other Entity (answer only subparagraph I).

**Corporation**

    A.  Name of Corporation: _____

1

10/97

B.  Date of incorporation and state/province of incorporation: _____

C.  Tax identification number for corporation: _____

D.  Names and percent of interest of each shareholder.

Name                                 Soc. Sec. #                          % Interest

_____

_____

_____

_____

## Partnership

E.  Name of Partnership: _____

F.  Date and state/province of formation of partnership: _____

G.  Names and percent of interest of each shareholder.

Name                                 Soc. Sec. #                          % Interest

_____

_____

_____

_____

## Limited Partnership

H.  If a limited partnership, identify each general and limited partner and state the percentage of interest of each (use additional sheets if necessary) or attach a copy of the certificate of limited partnership, including percentage of ownership.

General Partners:  MAJID & ADIBA MAHROOM

| Name | Soc. Sec. # or Corp. Tax ID # | % Ownership |
|------|------|------|
| MAJID MAHROOM , G.P. | 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 | 25 % |
| ADIBA MAHROOM , G.P. | 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 | 25 % |
| LINDA MAHROOM , L.P. | 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 | 12.50 % |
| LAILA MAHROOM , L.P. | 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 | 12.50 % |
| ROXANNE MAHROOM,L.P. | 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 | 12.50 % |
| DIANNE MAHROOM ,L.P. | 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 | 12.50 % |

10/97

Limited Partners:

| Name | Soc. Sec. # or Corp. Tax ID # | % Ownership |
|------|-------------------------------|-------------|
|      |                               |             |
|      |                               |             |
|      |                               |             |
|      |                               |             |

## Other Entity

I.  If an entity other than a corporation, partnership or limited partnership, fully describe the entity, identify each person having an ownership interest therein, and specify the percent interest of each person.

| Entity | Owner | Soc. Sec. # | % Ownership |
|--------|-------|-------------|-------------|
|        |       |             |             |
|        |       |             |             |
|        |       |             |             |
|        |       |             |             |

## II.  INFORMATION REGARDING LESSEE

1.  State the name and percentage of ownership for each person or entity holding a lessee interest in the Hotel, as well as the social security number of each lessee. In this sub-part do not indicate the breakdown of interest in corporations or partnerships who are lessees. Merely state the name of each lessee and percent interest. For example: XYZ Corporation - 50%, John James - 25%, Jane James - 25%.

| Full Name | Address | Phone Number | Soc. Sec. # | % Ownership |
|-----------|---------|--------------|-------------|-------------|
|           |         |              |             |             |
|           |         |              |             |             |
|           |         |              |             |             |
|           |         |              |             |             |

TOTAL _____ (Must Equal 100%)

3

2.      If any lessee is not an individual (i.e. is a corporation, partnership, limited partnership or other entity), provide the following information for each lessee:

      (1)  Corporation (answer only subparagraphs A - D);
      (2)  Partnerships (answer only subparagraphs E - G);
      (3)  Limited Partnership (answer only subparagraph H); and
      (4)  Other Entity (answer only subparagraph I).

## Corporation

    A.  Name of Corporation: _____

    B.  Date of incorporation and state/province of incorporation: _____

    C.  Tax identification number for corporation: _____

    D.  Names and percent of interest of each shareholder.

| Name | Soc. Sec. # | % Interest |
|------|-------------|------------|
|      |             |            |
|      |             |            |
|      |             |            |
|      |             |            |

## Partnership

    E.  Name of Partnership: _____

    F.  Date and state/province of formation of partnership: _____

    G.  Names and percent of interest of each shareholder.

| Name | Soc. Sec. # | % Interest |
|------|-------------|------------|
|      |             |            |
|      |             |            |
|      |             |            |
|      |             |            |

## Limited Partnership

    H.  If a limited partnership, identify each general and limited partner and state the percentage of interest of each (use additional sheets if necessary) or attach a copy of the certificate of limited partnership, including percentage of ownership.

10/97

General Partners:

| Name | Soc. Sec. # or Corp. Tax ID # | % Ownership |
|------|-------------------------------|-------------|
|      |                               |             |
|      |                               |             |
|      |                               |             |
|      |                               |             |

Limited Partners:

| Name | Soc. Sec. # or Corp. Tax ID # | % Ownership |
|------|-------------------------------|-------------|
|      |                               |             |
|      |                               |             |
|      |                               |             |
|      |                               |             |

**Other Entity**

I.     If an entity other than a corporation, partnership or limited partnership, fully describe the entity, identify each person having an ownership interest therein, and specify the percent interest of each person.

| Entity | Owner | Soc. Sec. # | % Ownership |
|--------|-------|-------------|-------------|
|        |       |             |             |
|        |       |             |             |
|        |       |             |             |

## III.   ALL APPLICANTS MUST COMPLETE THE REMAINING SECTIONS

1.     State the date upon which each individual and/or corporation, partnership, limited partnership or other entity assumed an interest in the Hotel (not applicable if proposed construction).

        SEPTEMBER  22 , 1993

2.      Do any of the persons or entities listed in Sections I and II own, lease or operate other hotels, motels and/or resorts. _X_ Yes ____ No. If yes, for each person, corporation, partnership, limited partnership or other entity, give the names and addresses for all other hotels, motels and/or resorts in which each person or entity has an interest. State whether it is an owning, operating, or leasing interest, and the percentage of such interest in each (use a separate sheet, if necessary).

| Hotel | Address | City, State/Province | Type of Interest | % Ownership |
|---|---|---|---|---|
| BW MAGIC CARPET, | 1875 FREMONT, | SEASIDE, CA. | AS IN SEC I. | AS IN SEC I. |

3.      Have any of the persons or entities listed in Sections I or II ever been involved with any Best Western properties? _X_ Yes ____ No. If yes, give the name of each person or entity name and the hotel name, address and nature of involvement in each (use a separate sheet, if necessary).

| Person/Entity | Hotel Name/Address | City, State/Province | Nature of involvement |
|---|---|---|---|
| MAJID MAHROOM | BW MAGIC CARPET | SEASIDE, CA | GENERAL MGR. |
| ADIBA MAHROOM | "       "       " | "       " | "       " |

05246
(6-11)
pro

4.      Have any of the persons or entities listed in Sections I or II filed or been placed in bankruptcy or a receivership, or been subject to a judicial or non-judicial foreclosure action within the last ten years? ____ Yes _X_ No. If yes, state the details below.

5.      MANAGEMENT EXPERIENCE of person or entity who will be primarily responsible for the management of the property.

MAJID MAHROOM , ADIBA MAHROOM , AND ROXANNE MAHROOM
Company or Individual Name

3510 EDGEFIELD PLACE
Address

| CARMEL | CA | 93923 |
|---|---|---|
| City | State/Province | Postal Code |

(408) 624-8344          Bus (408) 646-8885
Telephone Number

MAJID MAHROOM ( HELP ALSO IN OPERATION )
President

6

ADIBA MAHROOM ( HELP ALSO IN MARKETING)
Vice President or Director of Finance

ROXANNE MAHROOM
Vice President or Director of Sales and Marketing

ROXANNE MAHROOM
Vice President of Operations

List all hotels and restaurants owned and/or operated by manager or management entity within the last three years. Attach a separate sheet if necessary.

BW MAGIC CARPET LODGE
Name

1875 FREMONT BLVD.SEASIDE,CA.
Address

MOTEL
Type of Business

Owned _X_ Operated ____

From 1975 to PRESENT
    Mo/Yr    Mo/Yr

Name

Address

Type of Business

Owned ____ Operated ____

From _____ to _____
    Mo/Yr    Mo/Yr

Name

Address

Type of Business

Owned ____ Operated ____

From _____ to _____
    Mo/Yr    Mo/Yr

Name

Address

Type of Business

Owned ____ Operated ____

From _____ to _____
    Mo/Yr    Mo/Yr

## IV.  INFORMATION REGARDING VOTING MEMBER

1.  Full Name: MAJID MAHROOM

2.  Mailing Address: 3510 EDGEFIELD PLACE, CARMEL, CA 93923

MAHROOM FAMILY LIMITED PARTNERSHIP, L.P.
Company Name                                    Area Code/Telephone Number

3510 EDGEFIELD PLACE                            (408) 624-8344
Street Address - include suite number if applicable

CARMEL                          CA                        93923
City                            State/Province            Postal Code

7

10/97

3.  Street Address (for express mail deliveries, if different from mailing address):

QUALITY INN PACIFIC GROVE                    (408) 646-8885
Company Name                                 Area Code/Telephone Number

1111 LIGHTHOUSE AVE.
Street Address - include suite number if applicable

PACIFIC GROVE              CA                    93950
City                       State/Province       Postal Code

4.  Home Address (if different from mailing address):

3510 EDGEFIELD PLACE                          (408) 624-8344
Street Address                                Area Code/Telephone Number

CARMEL                     CA                    93923
City                       State/Province       Postal Code

5.  Telephone Number (if different from above): _____

6.  Facsimile Number:    408 646 5976

7.  Social Security Number: 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

8.  Explain affiliation with any person or entity listed in Section I or II.

MAJID & ADIBA MAHROOM, ARE HUSBAND & WIFE

LINDA, LAILA, ROXANNE & DIANNE ARE OUR DAUGHTERS


## V.    INFORMATION REGARDING HOTEL

QUALITY INN PACIFIC GROVE                     (408)646-8885
Current Hotel Name                            Hotel Telephone Number

BEST WESTERN MONARCH RESORT                   408 646 5976
Proposed Hotel Name (if application is approved by Best Western)    Hotel Facsimile Number

1111LIGHTHOUSE AVE.
Hotel Street Address (if proposed construction, provide exact site location, i.e., intersections and street address)
                                           Monterey  per IH rev'd 3.11.78
PACIFIC GROVE              CA                USA          93950
City (Hotel location)      State/Province    County       Postal Code


City (for mailing purposes, if different than above)    State/Province    County    Postal Code

**X** Existing Hotel

**SEP 1986**
Year Built

Year(s) Added To

____ Under Renovation Hotel

Is Hotel Presently
Closed?

Estimated Completion Date

____ Under Construction Hotel

Have Footings, Foundation
and Concrete Slabs Been
Started?

Estimated Opening Date

____ Proposed Construction Hotel

Estimated Date When
Construction Will Begin

Estimated Opening Date

## Location:

General Location: __**RESORT AREA**__
(Example: highway, downtown, beachfront)

Distance to Airport: __**7 MILES**__

Facilities:

A.    No. of Guest Units __49__        No. of Stories __3__

B.    Restaurant on Premises (defined as connected to or          ____ Yes **X** No
      located within the lodging
      establishment. If not, fill
      out Section C below.)

        Owned by Applicant                    ____ Yes ____ No

        Operated by Applicant                 ____ Yes ____ No

        Name of Restaurant: _____

        Hours of Operation: _____ a.m. to _____ p.m.          *is for the*

        Cocktail Lounge on Premises           ____ Yes _✓_ No          *renewal*

        Meeting/Function Space                _✓_ Yes ____ No          *3-11-?*
        Total Sq. Ft. _1,134_ _6_

        Is Banquet Service Available          ____ Yes _✓_ No

C.    If a restaurant is not located within or connected to the lodging establishment, please complete the following:

| Name of Closest Restaurants(s) | Hours of Operation | Table Service | Distance in Feet From Your Hotel Lobby |
|---|---|---|---|
| MARIPOSA GRILL | 8AM-10PM | YES | 30 FEET |

Are any of the above restaurants located in another lodging establishment? ____ Yes  _X_ No

If yes, state the name of the lodging establishments(s): _____

## PLEASE INDICATE HOTEL AMENITIES AND SERVICES

| | | | |
|---|---|---|---|
| Indoor Swimming Pool | ☐ | Exercise Room | ☐ |
| Outdoor Swimming Pool | ☒ | Sauna | ☒ |
| Tennis Courts | ☐ | Whirlpool | ☒ |
| ____ On premises | | | |
| ____ Adjacent | | | |
| Golf Course | ☐ | Complimentary Continental Breakfast Served | ☒ |
| ____ On Premises | | | |
| ____ Adjacent | | Continental Breakfast Served | ☐ |

Other Amenities/Services:  6 TWO BEDROOM SUITES, 80% OF THE ROOMS HAVE WOOD BURNING FIREPLACES, 20% OF THE ROOMS HAVE AIRCONDITIONING, BALCONIES, ELEVATOR,8MEETING ROOMS, COVERED PARKING,5 PM WINE & CHEES& FAX.

*As a minimum, Best Western requires a swimming pool at the Hotel, which meets established specifications. If not in compliance, please submit a letter outlining your situation, which will then be submitted to the Board of Directors for consideration of a waiver.

10/97

Has the Hotel ever been affiliated with any chain, franchise, or other hotel/motel organization?__X_Yes ____ No.
If yes, provide the names and dates of each affiliation and the reasons for the termination thereof.

CHOICE HOTELS INTERNATIONAL,INC. FROM 1986 TO PRESENT . MANAGEMENT

CURRENTLY CONSIDERING VOLUNTARILY TERMINATION AS INCREMENTAL SALES

VOLUME GENERATED THROUGH FRANCHISE DOES NOT JUSTIFY ASSOCIATED COST.


## VI.  INSURANCE

Name of Insured

QUALITY INN PACIFIC GROVE

Insurance Company Name and Address

WILLOW GLEN INSURANCE AGENCY

Agent's Name and Address

PHILIP STRUTNER , P.O.BOX 1823 , GILROY , CA 95021.

Policy No.                                                    Policy Period

    CPP410118-1

| Insurer Policy Limits | | |
|---|---|---|
| BUILDING | 3,300,000, + | |
| GEN LIAB | 1,000,000  + | 2,000.000 AGR. |


## VII.  CERTIFICATION

I certify that all information in this application is true and correct.  I understand that falsification of any
information shall be grounds for denial of the Membership Application and Agreement or termination of
membership.

Date:  JANUARY 30 , 1998


MAJID MAHROOM
Name Of Voting Member (Print or Type)

*Majid Mahroom*

Signature (DO NOT USE ANY TITLE)

10/97

# EXHIBIT B



# bylaws & articles







Each Best Western hotel is independently owned and operated



## MEMBERS' BILL OF RIGHTS

### EACH MEMBER OF BEST WESTERN SHALL HAVE THE FOLLOWING RIGHTS:

1. The right to receive an agenda of the annual and regular Board of Directors' meetings prior to each meeting, and to attend such Board meetings and to address the Board at such meetings.

2. The right to receive complete minutes of meetings of the Board of Directors, a detailed annual budget and detailed annual financial statements.

3. The right to set one's own property room rates and the right to vote on implementation of any programs providing for room rate discounts in excess of ten percent (10%) from a member's published rates.

4. The right to vote on any amendment of or additions to the Bylaws of Best Western.

5. The right to vote on any change in Best Western's Rules and Regulations, as defined in these Bylaws.

6. The right to vote on increases in member dues, fees or assessments in excess of the lesser of (a) five percent (5%), and (b) the rate of inflation for the previous year.

7. The right to receive notice of a minimum of 24 hours before any property inspection.

8. The right to request an impact analysis (including an independent analysis of market effect) prior to the approval of a new membership.

9. The right to transfer ones membership to a purchaser of a property in accordance with Article II, Section 7 of the Bylaws.

10. The right to have impartial, standardized and non-discriminatory inspection procedures applied to each member property.

11. The right to continue membership in Best Western except where termination or cancellation is provided for pursuant to the fair application of established Bylaws and Rules and Regulations, which shall provide that cancellation may not occur until after a hearing before the Board of Directors, if requested by the member.

12. The right to receive all member services until membership is cancelled or terminated, except in the following cases, membership services may be restricted; (i) when grounds for cancellation are found by the Board of Directors to exist, after opportunity for a hearing has been provided, and the Board has granted a conditional extension in lieu of cancellation of membership, (ii) when the member scores less than 600 points for guest rooms and public areas, and (iii) when a member's fees, dues or any other account are not paid within the time set by Board policy.

# Best Western International, Inc. Bylaws

## ARTICLE I

### Definitions

The following words and terms shall, as used in these Bylaws, have the following meaning except where a different meaning is clearly indicated by context:

**"Advisory Committees"** has the meaning set forth in Article VI, Section 10 of these Bylaws.

**"Affected Qualified Hotel"** has the meaning set forth in Article II, Section 3(B)(3) of these Bylaws.

**"Annual Dues"** means the dues established by the Board pursuant to Article II, Section 6(B) of these Bylaws.

**"Annual Meeting"** means the annual meeting of the Members.

**"Applicant"** means any person or entity who is seeking new Membership, including a person seeking to renew a Membership that was previously cancelled or terminated.

**"Articles of Incorporation"** means the articles of incorporation of the Corporation as the same may be amended or restated from time to time.

**"Best Western Property"** means the Property designated in a Best Western Membership.

**"Board"** means the Board of Directors of the Corporation.

**"Bylaws"** means these bylaws, as the same may be amended or restated from time to time.

**"Chairperson"** has the meaning set forth in Article V, Section 2(A) of these Bylaws.

**"Condominium Property"** means a Property comprised of prospective rental units (including time shares) owned separately by individual persons or entities, who may also own an undivided interest in common areas or common elements.

**"Corporation"** means Best Western International, Inc., an Arizona nonprofit corporation.

**"Designated Accountant"** means the certified public accountant(s) designated by the Board from time to time to receive and supervise the counting of votes cast by Members pursuant to Article III, Section 5 and Article IV, Section 4 of these Bylaws.

**"Director"** means a duly elected member of the Board.

**"District"** means one of the geographic areas created pursuant to Article IV, Section 2(A) of these Bylaws.

**"District Meeting"** means a meeting called by the Board pursuant to Article III, Section 8 of these Bylaws.

**"Entrance Fees"** means the fees established by the Board pursuant to Article II, Section 6(A) of these Bylaws. Entrance Fees may be comprised of evaluation fees, affiliation fees and any other fees determined by the Board from time to time.

**"Governor"** means a person appointed by a Director to act as a liaison for the Director in the Director's District.

**"Majority of the Board"** means more than half of the total number of Directors authorized by Article IV, Section 1 of these Bylaws.

**"Member"** means a member of the Corporation admitted pursuant to Article II of these Bylaws whose Membership has not been cancelled or terminated.

**"Member with Conditions"** means a new Member whose Property has been activated on the Corporation's reservation system subject to satisfying mutually agreed conditions after activation on the reservation system. Also, this means a Member whose Membership has been continued, rather than terminated after a hearing by the Board, subject to satisfying mutually agreed conditions. Members with Conditions are subject to termination without the right to a hearing or probation if they fail to complete the conditions as mutually agreed.

**"Membership"** means Members collectively of the Corporation or the state of being a Member of the Corporation.

**"Membership Application"** means the membership application and agreement in the form approved by the Board and submitted by an Applicant pursuant to Article II of these Bylaws.

**"Member Market Area"** has the meaning set forth in Article II, Section 3(B)(2) of these Bylaws.

**"Monthly Fees"** means the fees established by the Board pursuant to Article II, Section 6(C) of these Bylaws.

**"Nonprofit Act"** means the Arizona Nonprofit Corporation Act, as amended, or any successor statutes.

**"Officer"** means an officer of the Board or of the Corporation, as applicable, as described in Article V of these Bylaws.

**"Property"** means an establishment or building used, to be used, or under construction for use for accommodation of the traveling public, and shall include a "hotel," "motor hotel," "motel," "motor inn" or "resort."

**"Qualified Hotel"** has the meaning set forth in Article II, Section 3(B)(1) of these Bylaws.

**"Regular Annual Meeting of the Board"** means the regular meeting of the Board held pursuant to Article IV, Section 6(B) of these Bylaws.

**"Regulatory Documents"** means the Articles of Incorporation, these Bylaws, and the Rules and Regulations; and the Membership Application, guidelines, standards, resolutions and policies adopted by the Board from time to time (including brand identity, quality assurance, customer care, new construction, refurbishment and design manuals and policies); and documents defining terms or rights of Membership; as any of them may be amended from time to time.

**"Rules and Regulations"** means the code of rules which defines certain rights and obligations of the Members and is contained in the most current document entitled "Rules and Regulations," which document may only be adopted, amended or repealed by the Members pursuant to Article III, Section 5 of these Bylaws.

**"Transfer Application"** means the form established by the Board from time to time to be used in connection with a request to transfer a Membership to another designated Property pursuant to Article II, Section 4 of these Bylaws.

**"Vice-Chairperson"** has the meaning set forth in Article V, Section 3 of these Bylaws.

**"Voting Member"** means a Member who meets the requirements of Article III, Section 4 of these Bylaws.

## ARTICLE II
### *Membership*
### Section 1. Qualifications

(A)  Membership is restricted to natural persons who either own a Property or Properties, are partners in a partnership owning or operating a Property or Properties, are lessees operating a Property or Properties, are officers of corporations owning and/or operating a Property or Properties or are managers designated by the owner or owners of a Property or Properties.

(B)  A Membership shall apply to a single Best Western Property. Only one Membership shall be issued with respect to a Property.

(C)  Any person may hold multiple Memberships, each such Membership associated with a separate Best Western Property, provided the person has an interest in each such Best Western Property as set forth in Article II, Section 1(A) of these Bylaws.

(D)  Membership is further restricted to those persons whose Properties meet the standards established in the Regulatory Documents and the established customs and practices of the Corporation.

(E)  (1)  An authorized representative of a Condominium Property may qualify for Membership, subject to meeting such terms and conditions as may be established by the Board.

(2)  The Board shall have sole discretion to determine what Condominium Properties may be considered for Membership and shall set criteria and standards for Condominium Properties. The Board shall set policies establishing the terms and scope of the representative's required authorization from the unit owners and the association of owners controlling common areas and elements in a Condominium Property.

(3)  The Regulatory Documents are intended to be applicable to Condominium Properties, including their units and common areas. However, the Board may waive compliance by Condominium Properties with any of the provisions of the Regulatory Documents which it determines not to be applicable or feasible.

(4)  Condominium Properties may be associated with an existing Best Western Property. Such an association shall be subject to compliance with the provisions of Rule 500.45 of the Rules and Regulations pertaining generally to unit count increases or decreases to a Best Western Property.

(5)  In the event an ambiguity or a conflict exists in the application of the provisions of this paragraph (E), the Board shall have the right to resolve the ambiguity or conflict in its sole and exclusive discretion.

### Section 2. Membership

(A)  New Memberships

(1)  Applications for Membership shall be made on the Membership Application.

(2)  Applications for Membership shall be accompanied by payment in full of the appropriate Entrance Fee as established by the Board.

(3)  Applicants shall be elected to Membership only upon the favorable vote of five Directors.

(4)  The Board may not reduce, waive or defer Entrance Fees, Monthly Fees, Annual Dues or any other fees, dues or assessments for Applicants.

(B)  Continuing Memberships

(1)  A schedule of Annual Dues, and any amendments or revisions in the Rules and Regulations shall be mailed to each Member on or before the 1st day of September each year.

(2)  A Member desiring to continue Membership for an additional year shall make payment in full of the Annual Dues as determined by the Board for the additional year, prior to the 15th day of September of the current Membership year.

(3)  The term of Membership for each Member who has complied with the provisions of Article II, Section 2(B)(2) of these Bylaws, shall be continued automatically for an additional year. The continuation of Membership when grounds exist for cancellation shall not be construed as a waiver of power to cancel said Membership at a subsequent time on the same or different grounds. Nor shall the continuation of Membership be construed as a waiver of the power to cancel the Membership should new grounds for cancellation arise during the continued Membership period.

(4)  In the event a Member has not complied with the provisions of Article II, Section 2(B)(2) of these Bylaws, the Membership for the additional year shall only be continued upon a vote of a Majority of the Board.

(C)  Notification of Applicants: Impact Studies: Certain Approval Procedures

(1)  (a)  At least 60 days prior to the Board's consideration of a Membership Application, the Board shall give written notice of the application to Members within a 25 mile radius of the Applicant's Property location if the Property will be in a rural area, and within a 10 mile radius of the Applicant's Property location if the Property will be in a metropolitan area. Each Member entitled to notice shall have the right, within 15 days after the mailing of the notice of the Membership Application, to request that an impact analysis be made concerning the effect of the proposed Applicant's operations on the relevant market. The impact study shall be conducted by an independent nationally recognized consulting firm familiar with and knowledgeable about the hospitality business, which shall not be affiliated with, in any respect, the Corporation or any of its Members. The impact study shall analyze the Applicant's prospect for success, the demand for the Applicant's services in the relevant market and the incremental impact on existing Members within the relevant market, and provide such other information as the Board may request it include. For this purpose, incremental impact means the occupancy and revenue losses (expressed as a percentage) projected to result from the operation of the Property covered by a Membership Application as a Best Western Property, less any occupancy and revenue losses projected to result to existing Members in the relevant market from operation of the Property covered by the Membership Application as a non-Best Western Property.

(b)  The Board may review and approve or deny the Membership Application any time 30 or more days after notice of the Membership Application is given to all Members entitled to notice if none of those Members request an impact analysis.

2

(2)   The Board shall not approve any Membership Application for Membership unless it has:

   (a)   Reviewed and analyzed any requested impact study; and

   (b)   Determined that granting the Membership Application for a Property will not materially impair the ability of existing Members to compete with Properties or other hospitality services operated by non-members in the relevant market.

(3)   No Director shall have the right to participate in the consideration of a Membership Application if such Director has, directly or indirectly, a personal interest in the approval or denial of such Membership Application.

(D)   The provisions of Article II, Section 2 shall apply to all Best Western Members regardless of sub-brand or product descriptors.

## Section 3. Member Market Area Considerations

(A)   A Membership Application for a Property located within the Member Market Area of a Qualified Hotel will not be accepted. An exception to this will apply only if the Voting Member responsible for each Affected Qualified Hotel advises the Board in writing that the Member has no objection to approval of the Membership Application.

(B)   Definitions

(1)   "Qualified Hotel" means a Best Western Property, which meets all of the following criteria:

   (a)   It is not currently and has not been 60 days past due on any of its Membership dues and fees or assessments twice within the last 12 months;

   (b)   Its most recent three quality assurance scores, or such lesser number of scores as are available if the Property has not yet received three quality assurance scores, average at least 50 points higher than the passing level as established by the Rules and Regulations; and

   (c)   The Member is not past due in meeting any conditions of Membership which, if past due, would constitute grounds for cancellation of Membership.

(2)   (a)   "Member Market Area" means a circular area around a Qualified Hotel, whose radius is measured from the center of the main entrance of the lobby and is of a length determined from the following chart, based on the Qualified Hotel's property type and applicable mid-sized hotel market category. If a Membership is transferred to another designated Property in accordance with Article II, Section 4 of these Bylaws, the Member Market Area will be determined by the property type of the newly designated Property regardless of the Member Market Area of the previous Best Western Property.

| Property Type | Primary Market | Secondary Market | Tertiary Market |
|---|---|---|---|
| Airport | 1 mile | 2 miles | 4 miles |
| Intown, Downtown, Urban | 0.25 miles | 1.25 miles | 3 miles |
| Highway | 1.5 miles | 3 miles | 5 miles |
| Resort | 1 mile | 2 miles | 4 miles |
| Suburban | 1.5 miles | 2.5 miles | 4 miles |

The radius of a Member Market Area shall be measured by a global positioning system selected by the Board. Market category criteria will be as determined by Smith Travel Research or such other means as selected by the Board, subject to final approval by the Board. The Board, by an affirmative vote of five Directors, may adjust the Member Market Area radius for each market category and Property type based upon an analysis of data from additional impact studies. Such adjustments shall occur not more frequently than every five years.

   (b) The Member Market Area radius may be altered by a Board policy that fairly and equitably accounts for obstacles or barriers (such as mountains, lakes and major airports) that materially affect the travel time or travel distance between a Member and an Applicant and thereby reduce the likelihood that the Applicant's Property will have an incremental impact on the Member's Property. The Board will consult with the Governors or the appropriate Member Advisory Committees before adopting the policy. This provision shall not affect the Member's right to request an impact analysis in accordance with Article II, Section 2(C) of these Bylaws.

(3)   "Affected Qualified Hotel" means a Qualified Hotel whose Member Market Area includes the location of a Property covered by a Membership Application.

(C)   In addition to fees, dues and assessments provided in Article II, Section 6, the Board, by an affirmative vote of five Directors, shall establish fees to cover costs of administering Article II, Section 3. It is intended that this will be a self-funding program, not subject to the limitations stated in Article II, Section 6.

(D)   In the event an ambiguity, conflict or inadequate data exists in the application of the provisions of this section, the Board shall have the right in its sole discretion to resolve the conflict or ambiguity or to select appropriate data.

(E)   The provisions of Article II, Section 3 shall apply to all Best Western Members regardless of sub-brand or product descriptors.

## Section 4. Transfer of Membership to Another Designated Property

(A)   A Membership may be transferred to another designated Property upon such terms, conditions and requirements as may be established by the Board from time to time.

(B)   A request to transfer a Membership shall be initiated by a fully completed Transfer Application.

(C)   The following terms, conditions and requirements apply to a Transfer Application:

(1)   A Transfer Application may be made for another designated Property only in areas where no Member has a right to request an impact study pursuant to Article II, Section 2(C) of these Bylaws or no such Member entitled to notice requests an impact study upon proper notification.

(2)   Only one transfer will be permitted within a 10 year period.

(3)   Transfers pursuant to this Article II, Section 4 shall not supersede the automatic termination provisions of Article II, Section 7 of these Bylaws as they may apply to the newly designated Property.

(4)   The Property to which the Membership is being transferred must, in the opinion of the Board, provide improved representation for the Corporation in the same relevant market. In evaluating this requirement, the Board in its sole discretion may consider the proposed Property's attributes such as, but not limited to: superior facilities to the existing Member Property, better location, stronger access to demand generators and increased visibility.

(D)   The Board shall establish fees to be paid by Members applying for a transfer pursuant to this Article II, Section 4. Such fees may be changed by the Board from time to time, but cannot be waived. If there is a unit count change, all fees will be assessed on the basis of the unit count at the new Property, according to Board policy on unit count increases and decreases.

(E)   In the event that an ambiguity exists in the application of the provisions of this section, the Board shall have the right to resolve the ambiguity in its sole and exclusive discretion.

## Section 5. Duration of Membership

(A)   Unless otherwise herein provided, Membership shall be for one year commencing on the first day of the fiscal year of the Corporation and ending on the last day of such fiscal year. Membership granted during the course of a fiscal year shall end on the last day of the fiscal year in which issued. All Memberships shall be renewed as provided in Article II, Section 2(B), but shall be subject to cancellation or termination as provided in Article II, Sections 7 and 8 of these Bylaws.

(B)   Any Member may resign from the Corporation at any time but if the Member resigns or is terminated, fees and dues for the remainder of the fiscal year will become immediately due and payable.

## Section 6. Fees and Dues

(A)   The Board shall establish Entrance Fees to be paid by Applicants. Such Entrance Fees may be changed by the Board from time to time, but cannot be waived.

(B)   The Board shall establish Annual Dues to be paid by Members eligible for continuing Memberships. Annual Dues shall be established by the Board during each fiscal year for the succeeding fiscal year.

(C)   The Board shall establish Monthly Fees designed to cover the cost of providing services to the Members.

(D)   Annual Dues, Monthly Fees and assessments may be increased by the Board no more often than once in each fiscal year. No such annual increase shall exceed the lesser of (1) 5%, or (2) the rate of inflation for the previous year, as measured by the United States Bureau of Labor Statistics Consumer Price Index (all items for all urban areas), unless a majority of all Members vote to approve a greater increase, in accordance with rules and procedures for submitting proposals and voting which are set forth in Article III, Section 5 of these Bylaws.

## Section 7. Cancellation or Termination; Exemptions; Automatic Transfers

(A)   Except as provided in Article II, Section 7(B) of these Bylaws, a Membership shall automatically terminate on the date of the occurrence of any one of the following events:

(1)   The Best Western Property is leased or subleased;

(2)   A lease of the Best Western Property terminates;

(3)   If the Best Western Property is not leased, a change occurs of 50% or more of the equitable ownership of the Best Western Property within a 12-month period;

(4)   A change occurs of 50% or more of the equitable ownership of a leasehold interest within a 12-month period;

(5)   If the Best Western Property is not leased, a change occurs of 50% or more of the equitable ownership of the entity or entities owning the Best Western Property within a 12-month period;

(6)   A change occurs of 50% or more of the equitable ownership of the entity or entities leasing the Best Western Property within a 12-month period.

(7)   A term or condition is not met, after the Board, having provided the Member with an opportunity for a hearing, has found grounds exist for cancellation of the Membership and the Member has been granted a conditional extension in lieu of cancellation.

(8)   A Member or Member with Conditions fails to maintain and provide proof of insurance coverage as required by the Rules and Regulations.

(9)   A term or condition is not met by a Member whose Membership Application was approved by the Board with specific requirements and time frames for compliance prior to final approval of the Membership and has been advised that failure to meet any of these requirements will be grounds for automatic cancellation.

Except for the events specified in Paragraphs (A)(7), (8) and (9) of this Article II, Section 7, a Member may request an opportunity to be heard by submitting to the Board, in writing, at least 30 days prior to the effective date of the occurrence, the reasons, in specific detail, why the automatic termination provisions are inapplicable and the termination should not occur. The Board in its sole discretion may request the Member appear in person and provide oral testimony. The Board shall have sole discretion to determine whether an event of automatic termination will or has occurred.

For the events specified in Paragraphs (A)(7) and (A)(9) of this Article II, Section 7, the termination shall occur immediately, without notice or an opportunity to be heard. For the event specified in Paragraph (A)(8) of this Article II, Section 7, the termination shall occur automatically, without further notice or an opportunity to be heard unless the proof of insurance has been provided within 15 days after notice.

(B)   The transactions listed below in this Article II, Section 7(B) are exempt from all provisions of these Bylaws which would otherwise limit transfer of Membership if all the conditions of this Section 7(B) are met. The transferee, within 30 days following the effective date of the change in equitable ownership or lessee interest, must complete and sign all forms required by the Corporation, and pay to the Corporation all unpaid dues, fees, assessments, rentals and charges owed to the Corporation by the transferor which are not then paid by the transferor; and within such 30 days, or under such more liberal schedules as may be set by the Board, bring the Property to a condition which meets all Best Western standards, policies and requirements which would have been applicable to the transferor. The Board may establish reasonable fees to cover the Corporation's reasonable costs of a transfer of Membership. Where a change in equitable ownership or lessee interest

occurs in connection with one of the following transactions, the transferee's rights and obligations as a Member shall be effective as of the date of the change in equitable ownership or lessee interest provided each of the requirements set forth herein is satisfied within the 30 days or other time set by the Board.

(1) Bona fide financing transactions not involving changes in actual control, such as mortgages, pledges and sale and leasebacks.

(2) Changes in the legal form of ownership, without an actual change in control, such as a transfer from individual owners to a corporation where the sole owners of the stock of the corporation are the former individual owners.

(3) A transfer of equitable ownership or lessee interest (including interests transferred in trust) to a parent, spouse, brother, sister, child, stepchild or grandchild of the transferor.

(4) A transfer to a bona fide lender secured by the Best Western Property occasioned by a bona fide default, such as a mortgage foreclosure, trustee's sale, transfer in lieu of foreclosure or termination of the lease under a sale and leaseback.

(5) Changes in stock ownership of a corporation whose stock is publicly traded.

(6) Issuance of new stock in a corporation or new limited partnership interest in a limited partnership occurring prior to commencement of operation as a Best Western Property.

(C) The transactions described below in this Article II, Section 7(C) are exempt from all provisions of these Bylaws which would otherwise limit transfer of Membership:

Any change in ownership where at the time of change (a) the Member has had a passing Property inspection score for the past two regular inspections, or such greater score as approved by the vote of all Members pursuant to Article III of these Bylaws; (b) the Member has provided the Corporation with documentation satisfactory to the Corporation that, prior to the change in ownership, the Member provided the transferee copies of the then current design report and the last three Property inspection reports for the Best Western Property (or the last two if there have only been two inspections), and the transferee
• certified in writing that such reports were received; (c) the Best Western Property is in compliance with the current design program pursuant to Rule 500.21 of the Rules and Regulations; (d) the Member, who may be a Member with Conditions, is not past due in meeting any conditions of Membership, which, if past due, would constitute grounds for cancellation of Membership; and (e) the transferor is current with respect to all dues, fees and assessments, then in such instance, all requirements, including completion time frames, then applicable to the transferor shall be transferred to and assumed by the transferee without alteration. The Member shall give the Corporation at least 30 days advance written notice of the intended change in ownership. The Board may waive the notice requirement if it determines that the circumstances of the transfer do not or did not permit giving 30 days advance notice to the Corporation.

Where a change in ownership occurs, the transferee's rights and obligations as a Member shall be effective as of the date of the change in equitable ownership or lessee interest provided each of the requirements set forth above was satisfied, and the transferee completes and signs all forms

then required by the Corporation and pays all transfer fees within 20 days following the change or such more liberal schedule as may be set by the Board.

(D) Unless already paid by the transferee, the transferor shall be liable for all sums due to the Corporation, including dues and charges, occurring after a transfer, until 30 days after the member services department of the Corporation is notified in writing by certified mail, return receipt requested, of the transfer.

(E) In the event that an ambiguity exists in the application of the provisions of this section, the Board shall have the right to resolve the ambiguity in its sole and exclusive discretion.

## Section 8. Cancellation of Memberships By Board Action

(A) The Board shall have the right to cancel any Membership under one or more of the following conditions. Failure of the Board to effect cancellation when grounds therefore exist shall not be construed as a waiver of a power to cancel Membership at a subsequent time on the same or different grounds:

(1) Failure to pay dues or other fees, rentals, charges or assessments within the time set by these Bylaws or by the Corporation.

(2) Failure to comply with the terms and conditions or to meet the standards as set forth in the Regulatory Documents.

(3) Failure to operate, manage or maintain the Best Western Property in such a way as to effect credit to the Corporation and the Members.

(B) No Membership shall be cancelled under Paragraph (A) of this Article II, Section 8, except by a vote of a Majority of the Board.

(C) Prior to cancellation of a Membership pursuant to this Article II, Section 8, the Corporation shall notify the Member, by using a traceable, expedited courier service, that the Board is considering cancellation of the Membership. Within 15 days after mailing such notification, the Member may demand, by written notice, mailed by certified mail, return receipt requested, to the membership services department of the Corporation, that a hearing be held to permit the Member to show cause why the Membership should not be cancelled. If such a request is timely made, the Board shall cause a hearing to be held and notice of the place, date and time of such hearing shall be mailed to the Member by using a traceable, expedited courier service, at least 15 days before the date set for the hearing. If a hearing is not timely requested, the Board may cancel the Membership as provided in sub-section (B) of this Article II, Section 8. The Member shall be advised of the decision of the Board in writing.

(D) Notwithstanding any notice and hearing rights otherwise provided by this Article II, Section 8 or the Rules and Regulations, the Board may provide a lesser notice and opportunity to be heard prior to cancellation of a Membership if it, in its sole and exclusive judgment, believes: (i) the Member exhibits a gross disregard for the Regulatory Documents, or (ii) delay in a cancellation of a Membership may cause irreparable injury to the Corporation, a Member or Members, or the public. In such event, the Board shall provide at least 15 days notice of the intent to cancel the Membership. The Member shall have an opportunity to be heard by submitting to the Board, in writing, within 10 days of the date of mailing the notice, the reasons why the cancellation should not take place. Upon receipt of the

Member's response, the Board shall set a hearing at which the Member may provide oral testimony. If no response is received, the Board may act without a hearing.

(E)   Notwithstanding any notice and hearing rights otherwise provided by this Article II, Section 8 or the Rules and Regulations, a Member whose Membership terminates pursuant to Article II, Section 7(A) of these Bylaws may only have an opportunity to be heard as provided in Article II, Section 7(A) of these Bylaws.

## ARTICLE III
### Meetings of Membership and Elections
### Section 1. Annual Meeting

The Annual Meeting of the Membership shall be held on a date designated by the Board during the period from September 15th through November 15th of each year. Such meeting shall be held at the location designated by the Board. The purposes of the Annual Meeting shall be to announce the newly-elected Directors, if any, to present to the Members information regarding industry developments and other matters of interest to Members, and to hold a forum for Members to raise, for discussion only, any relevant questions about the Corporation's operations.

### Section 2. Special Meetings

Special meetings of the Membership may be called by the Chairperson, by four Directors or by at least 10% of the Voting Members who sign, date and deliver to the Chair-person, the Vice-Chairperson or the Secretary-Treasurer of the Board one or more written demands for the meeting describing the purpose or purposes for which the special meeting is to be held. The Corporation may conduct only those matters at a special meeting of the Members that are within the purpose or purposes described in the notice of the special meeting. Special meetings of the Members shall be held in the City of Phoenix, Arizona, or at the Annual Meeting, and shall commence on a Monday.

### Section 3. Notice of Meetings

Written or printed notice stating the date, time, place and the purpose or purposes of each annual and special Members' meeting shall be mailed by the President and Chief Executive Officer to each Voting Member not less than 30 nor more than 60 days before the date of the meeting.

### Section 4. Eligibility to Vote

(A)   All voting shall be restricted to those Members who hold a current, valid Membership (but not those whose Best Western Properties have never been activated on the Corporation's reservation system) and who have paid in full the Annual Dues for a continuing Membership as required by Article II, Section 2(B) of these Bylaws for the year in which the voting is conducted.

(B)   Each Member who meets the requirements of Article III, Section 4(A) of these Bylaws and has on file with the Corporation a current voter registration card prior to the mailing date of the ballot shall be entitled to one vote on each matter submitted to the Membership for voting pursuant to Article III, Section 5 of these Bylaws. The Member or the Member's designee, as stated on the voter registration card, shall be the Voting Member.

### Section 5. Presenting Matters for Vote by Written Petition or the Board

(A)   Any matter upon which the Members are to vote, except for the election of the Board, shall be proposed by either a written motion approved by a majority of the then

serving Directors or a written petition signed by at least 150 Voting Members. The petition shall set forth in detail the matter to be voted upon.

(1)   The motion or petition shall be presented to the President and Chief Executive Officer who shall, within 30 days, mail to each Voting Member, a ballot, a copy of the current voter registration card on file with the Corporation, a plain ballot envelope, a self-addressed mailer addressed to the Designated Accountant for ballot return and voting instructions. The President and Chief Executive Officer may also provide factual background and/or explanatory information regarding the matter to be voted upon. The ballot shall be written, shall set forth each proposed action and shall provide for an opportunity to vote for or against each proposed action. The voting instructions shall indicate the number of responses needed to meet the quorum requirements, state the percentage of approvals necessary to approve each matter and specify the deadline, as provided in Article III, Section 5(C) of these Bylaws for returning the ballot.

(2)   The provisions of Article VIII, Paragraph (D)(2) or (D)(3) of the Articles of Incorporation, regarding required legal opinions, shall be complied with by the proponents before the matter is presented to the President and Chief Executive Officer.

(3)   Matters presented for vote pursuant to this Article III, Section 5 shall reflect the vote of each Director on each proposed change. The Board may include a majority and minority opinion on each proposed change, not to exceed 250 words.

(B)   Each Member receiving the ballot materials shall cast his/her vote, seal his/her unsigned ballot in the plain ballot envelope and return it using the self-addressed mailer. On the back of the mailer shall be placed the name and address of the Member's Best Western Property. The Member shall type or print in ink his/her name on the back of the mailer and shall sign his/her name in ink above the typed or printed name substantially the same as it appears on the voter registration card. Such mailer shall either be addressed to the Designated Accountant or placed in another mailing envelope marked "Ballot Enclosed" addressed to the Designated Accountant.

(C)   At 2:00 p.m., Phoenix, Arizona time, on the first Wednesday (which is not a holiday observed by the Corporation) on or after the 30th day following the mailing of the ballots, which time and date shall be the deadline for returning the ballots, the Designated Accountant shall gather all mailers then in the Designated Accountant's possession, certify the validity of each signature, open each mailer and deposit the plain ballot envelopes in a box or in one of seven boxes labeled by District number to receive the ballots cast from that District. The Designated Accountant shall then open the plain ballot envelopes and tally the votes. On the same day the Designated Accountant shall certify the results of the vote to the Corporation.

(D)   All Members voting shall have the right to be present at the certification and counting of the ballots and may challenge any procedure or certification. The Designated Accountant shall rule upon each challenge in writing and the ruling of the Designated Accountant shall be final, as shall the Designated Accountant's certification of the voting results.

(E)   The President and Chief Executive Officer shall, within five days of receipt of the certification of the voting results, send a written report of the voting results to all Members.

6

(F)  The Corporation may implement electronic or online voting as an alternative to the manual voting process described in Article III, Section 5 of these Bylaws, when and if the Board (after consultation with the Governors or the appropriate Member Advisory Committees) has determined that the system should:

    (1)  be confidential, auditable and secure;

    (2)  provide voter anonymity; and

    (3)  produce accurate vote counts.

Each Voting Member must be able to choose to vote manually as provided in Article III, Section 5 of these Bylaws.

### Section 6. Quorum/Votes Required for Passage

(A)  Unless otherwise required by the Nonprofit Act or the Articles of Incorporation, a quorum shall be: (i) for any Annual Meeting, or any regular or special meeting of the Members, 10% of the Voting Members; (ii) for any ballot, except for the election of Directors, the timely return of ballots meeting the requirements of this Article III of 10% of the Voting Members, and (iii) for the election of Directors, 10% of the Voting Members whose Best Western Properties are located in the respective District.

(B)  Unless otherwise required by the Nonprofit Act, the Articles of Incorporation, or Article II, Section 6(D) of these Bylaws for all matters upon which Members are entitled to vote, except: (i) the Election of Directors, (ii) amendment or repeal of the Bylaws and (iii) amendment or restatement of the Articles of Incorporation, an affirmative vote of a majority of the votes cast shall result in passage of the matter proposed provided at least 33 1/3% of all Voting Members vote in favor of the proposal.

(C)  The adoption, amendment or repeal of any Bylaw provision requires the affirmative vote of the Members as set forth in the Articles of Incorporation.

(D)  The amendment or restatement of the Articles of Incorporation or any provision thereof shall require the affirmative vote of the Members as set forth in the Articles of Incorporation.

### Section 7. Proxy and Cumulative Voting Prohibited

(A)  Proxy and cumulative voting by Members is expressly prohibited.

(B)  No Member or Members may create a voting trust conferring on one or more trustees the right to vote or otherwise act for the Member or Members.

### Section 8. District Meetings

(A)  Except as otherwise provided in the Articles of Incorporation and these Bylaws, the Board may call individual District Meetings or combined District Meetings at such times and places as it may determine.

(B)  The nomination of Directors under Article IV, Section 3 of these Bylaws shall be conducted at a District Meeting convened at the location of the Annual Meeting no more than two days prior to the Annual Meeting and no later than the adjournment of the Annual Meeting. The election of Directors who are uncontested for election may be conducted at this District Meeting as provided in Article IV, Section 4(A) of these Bylaws.

### Section 9. Record Date

In order that the Corporation may determine the Members entitled to notice of a Members' meeting, to demand a special meeting, to vote or to take any other action, the Board may fix a record date, which shall not be more than 70 days before the date of the meeting or action requiring a determination of the Voting Members. In the event the Board does not fix a record date: (i) the Members entitled to vote at the meeting or to demand a special meeting shall be determined as of 1:00 o'clock in the afternoon on the day before notice of the meeting is sent; and (ii) the Members entitled to take action without a meeting shall be determined as of 1:00 o'clock in the afternoon on the day before the ballot is sent. A determination of Members entitled to notice of or to vote at a Membership meeting is effective for any adjournment of the meeting unless the Board fixes a new date for determining the right to notice or the right to vote. The Board shall fix a new date for determining the right to notice or the right to vote if the meeting is adjourned to a date that is more than 70 days after the record date for determining Members entitled to notice of the original meeting.

### Section 10. Action by Written Consent

The Members may approve any action required or permitted by the Nonprofit Act that requires the Members' approval without a meeting of the Members if the action is approved by the affirmative vote of a majority of the voting power unless the Articles of Incorporation, these Bylaws or the Nonprofit Act, as amended, requires the action be approved by a different percentage. The action shall be evidenced by one or more identical written consents describing the action taken, signed by Members representing at least the requisite amount of the voting power required for approval of the action, and delivered to the Corporation for inclusion in the minutes or filing with the corporate records.

## ARTICLE IV

### Board

### Section 1. Number and Qualifications

The affairs, business and concerns of the Corporation shall be conducted by a Board of seven Directors. In order to remain eligible to serve as a Director, each Director must have and maintain at least a 10% equity interest in a Best Western Property in the District the Director represents, must be the Voting Member for that Property and must reside in the District. The Directors shall be classified in such a manner that each Director shall serve a term of three years, except as set forth in Article IV, Section 8 of these Bylaws, and in such manner that the terms of approximately one-third of the whole number of Directors shall expire annually. Notwithstanding the foregoing, each Director shall hold office until the Director's successor is elected and qualified, or until the Director's earlier resignation or removal.

### Section 2. Districts

(A)  The Board shall divide the geographic area of the Membership into seven Districts, comprised of whole states, territories, provinces and/or possessions (the District of Columbia is considered to be a state for purposes of this Article).

(B)  A Majority of the Board may, if it deems such action is in the best interest of the Corporation, alter, change or amend the boundaries of the Districts by resolution of the Board without the requirement of amending this Bylaw.

### Section 3. Nominations for Directors

No more than two days prior to the date of the first general business session for all Members at the Annual Meeting, nominations for Directors shall be made from the floor at a District Meeting of the District for which a Director is to be elected held pursuant to Article III, Section 8(B) of these Bylaws; provided, however, that except in the case of a

vacancy occurring on the Board as described in Article IV, Section 8, a candidate's name may not be placed in nomination unless there shall have been filed with the President and Chief Executive Officer or his designee at least 15 days prior to the calling of the District Meeting to order,

(A)  a written statement signed by the proposed candidate:

    (1)  Agreeing to accept the nomination, and

    (2)  Certifying that

        (a)  The candidate is the Voting Member for a named Best Western Property within the District in which the Member is a candidate, has a minimum of 10% equity ownership of such Best Western Property, and resides within that District, and

        (b)  There is neither a presently serving Director whose term does not expire during that year nor a candidate in any District who is affiliated, directly or indirectly, with the Best Western Property which the certifying candidate represents, and

(B)  documentation supporting the candidate's certification of at least 10% equity ownership of such Best Western Property.

The President and Chief Executive Officer of the Corporation may request and the candidate must provide any additional information the President and Chief Executive Officer reasonably requires to support the certification of ownership and of the Voting Member status. If not then satisfied that the information provided supports the certification, the President and Chief Executive Officer must promptly make a full report with detailed explanation to the Board. The candidate will not be eligible to be nominated unless at least five Directors vote in favor of accepting the information as supporting the certification.

### Section 4. Election of Directors

(A)  On or before the second Monday following the date of the first general business session for all Members at the Annual Meeting, the President and Chief Executive Officer shall mail to each Voting Member in the District for which a Director is to be elected, the following: (i) a written ballot showing the names of all qualified nominees for Director from that District; (ii) a copy of the current voter registration card on file with the Corporation; (iii) a plain ballot envelope; (iv) a self-addressed mailer for ballot return addressed to the Designated Accountant; and (v) voting instructions indicating the number of responses needed to meet the quorum requirements, stating the percentage of approval necessary to elect a Director and specifying the time, as provided in Article IV, Section 4(C) of these Bylaws, by which the ballot must be returned in order to be counted; provided, however, that if there is only one qualified nominee for Director from the District, the Voting Members of that District that are present at the District Meeting at which nominations for Director were made shall hold a voice vote on election of the nominee.

(B)  Except in circumstances where a voice vote is held, each Voting Member may vote for one Director for the District in which the Member's Best Western Property is located and for which candidates have been nominated on the ballot provided pursuant to Article IV, Section 4(A) of these Bylaws. The Member shall cast his/her vote, seal his/her unsigned ballot in the plain ballot envelope and return it using the self-addressed mailer. On the back of the mailer shall be placed the name and address of the Member's Best Western Property. The Member shall type or print in ink his/her name on the back of the mailer and shall sign his/her name in ink above the typed or printed name

substantially the same as it appears on the voter registration card. Such mailer shall either be addressed to the Designated Accountant or placed in another mailing envelope marked "Ballot Enclosed" addressed to the Designated Accountant.

(C)  At 2:00 p.m., Phoenix, Arizona time, on the 16th day following the mailing of the election ballots to the Members, which time and date shall be the deadline for returning the ballots, the Designated Accountant shall gather all mailers then in the Designated Accountant's possession, certify the validity of each signature, open each certified mailer and deposit the plain ballot envelopes in a box labeled for the District from which the ballot originated. The Designated Accountant shall then open such plain ballot envelopes and tally the votes for each District. On the same day the Designated Accountant shall certify the results of the vote to the Corporation.

(D)  All Members shall have the right to be present at the certification and counting of the election ballots and may challenge any procedure or certification. The Designated Accountant shall rule upon each challenge in writing and the ruling of the Designated Accountant shall be final, as shall the Designated Accountant's certification of the voting results.

(E)  The President and Chief Executive Officer, immediately upon receiving the certification of the results of the election, shall send each candidate a copy of the certification and within five days thereafter send a written report of the election results to all Members.

(F)  When a voice vote is held, each Member of the District for which such voice vote is held may, upon being asked by the chairperson of the District Meeting, respond by voice either for or against the sole qualified nominee for Director. The chairperson of the District Meeting shall then determine the outcome of the voice vote, which determination shall be final.

(G)  The nominee in each District who receives the highest number of votes cast from Members in that District shall be elected. Where a voice vote is authorized by these Bylaws, a nominee who receives a voice vote in favor of such nominee's election as a Director shall be elected.

(H)  Directors elected shall take office at the regular meeting of the Board immediately following the Annual Meeting in the year elected or upon certification of the election by the Designated Accountant, whichever occurs later.

(I)  Directors shall be elected for a term of three years except as set forth in Article IV, Section 8 of these Bylaws.

### Section 5. Quorum; Voting and Waiver of Notice

(A)  A Majority of the Board shall constitute a quorum for the transaction of business. Except as expressly provided otherwise in these Bylaws, the act of the majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board.

(B)  If at any meeting of the Board, there shall be less than a quorum present, a majority of those present may adjourn the meeting, from time to time, until a quorum is obtained, and no further notice thereof need be given other than by announcement at the adjourned meeting.

(C)  Proxy voting by a Director or Directors is expressly prohibited.

(D)  A Director may waive any notice required by the Nonprofit Act, the Articles of Incorporation or these Bylaws by executing a written notice of waiver before or after the date and time of the meeting. A Director's attendance at or participation in a meeting waives any required notice to the

8

Director of the meeting unless the Director: (i) at the beginning of the meeting or promptly upon the Director's arrival objects to holding the meeting or transacting business at the meeting; and (ii) does not thereafter vote for or assent to action taken at the meeting.

## Section 6. Regular Annual Meeting of the Board

(A)   There shall be one Regular Annual Meeting of the Board each year and such other meetings as fixed by the Board. Each meeting may extend over a period of consecutive days without being adjourned.

(B)   The Regular Annual Meeting of the Board shall be held each year without further notice, at the principal office of the Corporation at 8:00 A.M. local time on the fifth Monday following the date of the first general business session for all Members at the Annual Meeting of the Members, for the purpose of electing Officers of the Board designated in Article V, Section 1, and conducting such other business as may be brought before the meeting.

## Section 7. Special Meetings of the Board

Special meetings of the Board may be called by the Chairperson upon the written request of any three Directors (which three Directors may include the Chairperson). Notice of any such special meeting setting forth the date, time and place of the meeting shall be in writing and given at least five days before the meeting personally, by facsimile, by wire or wireless communication, by private carrier, or by overnight courier. The notice shall describe the purpose of the special meeting.

## Section 8. Vacancies

A vacancy on the Board occurring prior to 90 days before the next Annual Meeting shall be filled by special election according to the procedures established in this Article IV, Section 8, and in accordance with Article IV, Section 4 of these Bylaws. Notice of the vacancy shall be mailed to the Voting Members in the District for which there is a vacancy within 10 days of receipt of notice by any Director or the President and Chief Executive Officer of the occurrence of an event that has caused a vacancy. Members may nominate candidates by presenting to the President and Chief Executive Officer, within 30 days of the mailing of the notice, a nominating petition signed by at least five Voting Members in the District. The proposed candidate shall submit to the President and Chief Executive Officer the statement required of proposed candidates by Article IV, Section 3 of these Bylaws prior to mailing of the ballots in a contested election, or within 60 days of the mailing of the notice of the vacancy in an uncontested election. Voting in a contested election shall be conducted by mail by secret ballot, in accordance with Article IV, Sections 4 and 8 of these Bylaws. The President and Chief Executive Officer shall mail ballots on the 30th day following the mailing of the notice of the vacancy and voting shall be concluded within 60 days of the mailing of the notice of the vacancy. At 2:00 p.m., Phoenix, Arizona time, on the final day of such 60-day period, which time and date shall be the deadline for returning the ballots, all ballots shall be counted by the Designated Accountant pursuant to Article IV, Section 4 of these Bylaws. The candidate receiving the highest number of votes shall serve the remainder of the term for such Board position. In the event only one candidate is eligible for election, on the 30th day following the mailing of the notice of vacancy, the President and Chief Executive Officer shall declare, upon the affirmative vote of a majority of the then serving Directors at a meeting of the Board, that the candidate is elected to serve the remainder of the term for

such Board position. The vote by the Board may be by telephone conference call participated in by a majority of the then serving Directors.

## Section 9. Compensation of Members of the Board of Directors

Directors shall serve as such without salary or other compensation, except as provided in this Article IV, Section 9.

(A)   For each day a Director (i) is away from both the Director's principal place of business and the Director's primary personal residence and (ii) is performing services on behalf of the Corporation, the Director may request payment of a fee of $400 per day.

(B)   For each day a Director (i) is away from both the Director's principal place of business and the Director's primary personal residence and (ii) is performing services on behalf of the Corporation, the Director may request reimbursement of reasonable business and travel expenses. Reimbursement of the expenses shall be according to the then Board policy regarding the reimbursement of business and travel expenses. If a Director stays in a private secondary residence, other than his/her legal residence, while in Phoenix, Arizona, performing services on behalf of the Corporation, the Director may request payment equal to or less than the average amount of the hotel costs paid by Directors staying at Best Western Properties.

(C)   For each $400 fee requested pursuant to Article IV, Section 9(A) of these Bylaws and for the reimbursement of allowed business and travel expenses, the Director must provide the Corporation with a summary of activities and services performed on behalf of the Corporation and documentation, acceptable for federal income tax purposes, of the expenses incurred. The Board may adopt on an annual basis a policy regarding the reimbursement of business and travel expenses. If the policy differs from that of the prior year, the Board shall provide each Member with a notification of the changes.

## Section 10. Specific Powers of Board

Without in any way limiting the general and other powers of the Board as established by statute, by the Articles of Incorporation, and elsewhere in these Bylaws, the Board shall have the following powers:

(A)   To employ and discharge the President and Chief Executive Officer.

(B)   To work with the President and Chief Executive Officer to carry out the plans, as described in Article V, Section 4 of these Bylaws, and meet the budget approved by the Board.

(C)   To manage the operations of the Corporation that affect the financial affairs of the Members, including but not limited to: Membership development, Property standards and evaluations, hearings and Member meetings and communications.

(D)   To work with the Advisory Committees to develop strategic direction of the Corporation.

(E)   To set policies for the strategic direction of the Corporation.

Upon written request to the President and Chief Executive Office, a Director shall be provided all records of the Corporation, including individual employee payroll information. Except for individual employee payroll information, information contained within employee personnel files, as maintained by the director of human resources, shall not be provided. Subject to the provisions of A.R.S. § 10-11602(A), and prior to the disclosure of

9

information received by Directors to third parties, the Director shall notify the Board in writing as to the party requesting information and the purpose of such disclosure. It is the duty of the Director to ensure the information remains confidential and is not disclosed by the third party. The Board may designate other information as confidential. This additional confidential information shall be subject to the notification provisions applicable to individual employee payroll information.

## Section 11. Removal of Directors

Upon delivery to the President and Chief Executive Officer of a written petition proposing the removal of a particular Director, signed by at least one-third of all Voting Members in such Director's District, a special election shall be held according to procedures established in Article IV, Section 8 of these Bylaws. Notice of the election shall be mailed to the Voting Members in the District within 10 days of receipt of the petition. The incumbent Director shall automatically appear on the election ballot unless the Director has notified the Board and the President and Chief Executive Officer in writing of the Director's desire not to be placed on the ballot. In the event the Director resigns before ballots are printed, election of a Director for the then vacant position shall be as provided in this Article IV, Section 11. Other candidates may be nominated by presenting to the President and Chief Executive Officer, within 30 days of the submission of the petition, a nominating petition signed by at least five Voting Members in the District. Each proposed candidate shall submit to the President and Chief Executive Officer a written statement that the candidate meets the requirements of Article IV, Section 3 of these Bylaws prior to the mailing of the ballots. Voting in contested elections shall be conducted by mail and by secret ballot, in accordance with Article IV, Sections 4 and 11 of these Bylaws. The President and Chief Executive Officer shall mail ballots on the 30th day following the receipt of the petition, and voting shall be concluded within 60 days of receipt of the petition proposing removal. At 2:00 p.m., Phoenix, Arizona time, on the final day of such 60-day period, which time and date shall be the deadline for returning the ballots, all ballots shall be counted by the Designated Accountant pursuant to Article IV, Section 4 of these Bylaws. The candidate receiving the highest number of votes shall serve the remainder of the term of the existing Director.

## Section 12. Maximum Term of Directors

No person who shall have served two or more elected terms, whether or not consecutive, shall be eligible to be appointed or elected as a Director. For purposes of this Article IV, Section 12, "elected term" shall not include an unexpired term to which a Director is elected to fill a vacant Director position pursuant to Article IV, Section 8 of these Bylaws, or to replace a removed Director pursuant to Article IV, Section 11 of these Bylaws.

## Section 13. Conduct of Board Meetings

At least 10 days prior to each regular Board meeting, a written agenda setting forth each item to be presented at the meeting shall be prepared and made available to each Director and to any Member upon request. Action at Board meetings shall be limited to action on those items set forth in the agenda, except for such matters as the Chairperson and at least two other Directors certify in writing to involve a bona fide emergency requiring immediate action of the Board. All meetings of the Board shall be open to any Member except that the Board may convene a closed executive session for the purpose of considering personnel matters, considering confidential issues dealing with specific

Members, receiving legal advice or for any other matter which, to avoid legal liability, may require confidential treatment. The Board may convene an executive session only upon the roll-call vote of at least 80% of the seven then serving members of the Board. Action of the Board may only be taken by recorded roll-call vote and the vote of each Director on each issue must be recorded. The Board shall keep detailed minutes of all meetings, including minutes of the general nature of discussions in executive sessions, which minutes shall be made available to all Members upon request. The Board may keep detailed minutes of proceedings in executive session which shall be considered privileged and not subject to disclosure except upon proper legal authority or court order. An executive session may only occur within a regular or special Board meeting.

## Section 14. Limitation on Employment of Directors During and Following Term

During the period of time an individual serves on the Board, and for a period of five years thereafter (commencing from the date the individual no longer is serving on the Board, whether or not the former Director completes the entire term), such individual shall not be employed by the Corporation in any capacity without the approval of the Members. In addition, during such period of time, such Director, and any corporation, partnership, proprietorship, trust or other business entity in which such individual has an equity or beneficial interest of more than 5%, shall not in any way be employed or engaged by the Corporation, or contract with the Corporation, in any manner, without the approval of the Members. The approval of the Members required in this Article IV, Section 14 shall be determined pursuant to Article III of these Bylaws.

## ARTICLE V

### Officers

### Section 1. Designation of Officers

The Board shall annually, at its Regular Meeting of the Board, name the Officers of the Board who shall consist of a Chairperson of the Board, Vice-Chairperson of the Board and Secretary-Treasurer of the Board, all of whom shall be Directors. The Board shall have the power to confer such titles as it deems appropriate on any Officer or employee of the Corporation.

### Section 2. Chairperson

(A)  The Chairperson, who shall serve for a one year term, shall preside at Board meetings and official meetings of the Members. The Chairperson shall have such powers as the Board may assign. The Chairperson shall have the right to serve as an ex officio member of any committee appointed by the Board. No person shall serve more than one year as Chairperson unless elected to an additional term by the unanimous vote of the Board.

(B)  In the absence of the Chairperson, or in the event of the Chairperson's inability or refusal to act, the Vice-Chairperson, or a Director elected by the Board for the term and purpose stated in the resolution of election shall perform the duties of the Chairperson, and when so doing, shall have all the powers of, and be subject to, all the restrictions upon the Chairperson.

### Section 3. Vice-Chairperson

A Vice-Chairperson shall be named by the Board and shall perform such duties and have such authority as determined by resolution of the Board.

### Section 4. President and Chief Executive Officer

The President and Chief Executive Officer shall be named by the Board, shall be the chief administrative officer of the Corporation and shall have such powers and duties as the Board may assign. The President and Chief Executive Officer shall have such duties, responsibilities and powers as are incident to a chief executive officer, but shall at all times be responsible to the Board and shall carry out and conform to the orders and directions issued from time to time by the Board. The President and Chief Executive Officer shall be responsible for managing the affairs of the Corporation in order to meet the objectives of the Board in the strategic direction, updated strategic plan, yearly business plan and yearly budget or amendments thereto approved by the Board. The President and Chief Executive Officer shall be responsible for the hiring and discharging of all Vice-Presidents and other employees. Prior to the discharge of a Vice-President, the President and Chief Executive Officer shall notify the Board members and allow discussion.

### Section 5. Vice-Presidents

Vice-Presidents named by the President and Chief Executive Officer shall perform such duties and have such authority as determined by the President and Chief Executive Officer.

### Section 6. Secretary-Treasurer

The Secretary-Treasurer of the Board shall perform such duties as determined by the Board.

## ARTICLE VI
### Miscellaneous Provisions
### Section 1. Corporate Seal

The corporate seal of the Corporation shall be circular in form and shall contain the name of the Corporation, the date of its creation and the words "Incorporated in Arizona." Said seal may be used by causing it or a facsimile thereof to be impressed, affixed, reproduced on, or otherwise applied to any document, paper or other receiving surface.

### Section 2. Fiscal Year

The fiscal year of the Corporation shall be such as shall from time to time be determined by the Board.

### Section 3. Checks, Drafts, Notes

All checks, drafts or other orders for payment of money, notes or other evidences of indebtedness issued in the name of the Corporation, shall be signed by such Officers, or agent or agents, of the Corporation, and in such a manner, as shall from time to time be determined by the Board.

### Section 4. Loans

No loans shall be contracted on behalf of the Corporation, and no evidence of indebtedness shall be issued in its name, unless authorized by the Board. Such authority may be general or confined to specific instances.

### Section 5. Annual Financial Statement

Within 90 days after the close of the fiscal year of the Corporation, a financial statement, including the balance sheet and profit and loss statement for the preceding fiscal year, shall be furnished to each Member. This financial statement shall be certified by an independent certified public accountant.

### Section 6. Annual Budget

At least 30 days prior to the beginning of each fiscal year, the Board shall have approved a final, detailed annual budget showing proposed receipts and expenditures for the upcoming fiscal year. The annual budget shall be distributed to all Members who make written request therefore, and who acknowledge, on a form prescribed by the Corporation, that, except as may be required by law, the Member will maintain and protect the confidential nature of the documents provided, except that it may be disclosed to Voting Members. Members receiving the annual budget shall reimburse the Corporation for reasonable photocopy charges (which shall not include employee or overhead expenses of the Corporation).

### Section 7. Patronize Best Western Hotels

The Board shall adopt policies designed to maximize the business use of Best Western Properties by Members, the Board, Officers, employees and agents. The policy shall provide that a Best Western Property should be patronized, subject to reasonable availability, anytime that the Corporation pays for motel or hotel rooms or services. Such policy may provide for exceptions, however, where Best Western Properties are not reasonably available for the Annual Meeting or for District Meetings, and for trade shows held at other facilities where it is beneficial for attendees to be staying on premises at such non-Best Western facilities.

### Section 8. Limitations on Inspections

A Member shall be given a minimum of 24 hours notice before any inspection of such Member's Best Western Property. No inspection of a Member's Property shall occur while such Member is attending any official meeting of the Corporation, including (without limitation) annual conventions and meetings of the Board, or within close proximity to the death of a family member of the particular Member, or on a recognized holiday. No points shall be deducted from an inspection score with respect to work on or improvements to a Property designed to correct the matter in issue and pursued with reasonable diligence, (i) which has been commenced prior to receipt by the Member of the notice of inspection, but which has not yet been completed, and which was not indicated to need correction on the next previous inspection, or (ii) which has been commenced in response to and within a reasonable time after the last inspection of the Property, but has not yet been completed at the time of the current inspection. If the same defects are noted in the next following inspection, points may be deducted at that time.

### Section 9. Marketing/Pricing Programs

(A)   The Board shall not establish any mandatory marketing or discount programs involving a discount from published rack rates of Members in excess of 10%, without an affirmative vote of the Members pursuant to Article III of these Bylaws.

(B)   Only mandatory programs, and voluntary marketing programs that have been agreed to in writing by the Member, may be loaded into the reservation system in an "open" status.

### Section 10. Advisory Committees

(A)   To provide for appropriate Membership input into decisions of specific concern to Best Western Property owners, and to assist the Board and the management team in maintaining proper insight into company matters, the following Advisory Committees are hereby created: Cultural Diversity Committee, Education & Training Committee, Marketing Committee, Membership Development Committee, Quality Assurance Committee, Reservations & Technology Committee and Supply Committee.

11

(B)  The role of the Advisory Committees is to provide the benefit of Property perspective and to act as an advisory group to the Board, enhancing the Corporation's ability to provide Member services. The role of the Advisory Committees is not to provide direction to or supervision of the Corporation's staff. Any direction of the Corporation's staff in relation to Advisory Committee functions may be undertaken by the Board upon recommendation of the Advisory Committee. Advisory Committee members will follow the Corporation's ethics policies.

(C)  Each District shall be represented by the same number of Members on each Advisory Committee. Directors shall appoint Advisory Committee members whose Best Western Property is within the Director's District. All appointments shall automatically expire concurrently with the term of the appointing Director. Advisory Committee members may be replaced at the discretion of the Director of that District. Advisory Committee members shall be eligible to serve a maximum of six consecutive years, at which time they must leave the Advisory Committee for a minimum of three years before being eligible for reappointment to that Advisory Committee. Currently serving Advisory Committee members may continue to serve beyond six years until the expiration of the current term of the appointing Director. No Member may serve simultaneously on more than one Advisory Committee.

(D)  At the beginning of each fiscal year, the Board, with the recommendations of the Advisory Committees, shall establish the anticipated program of work for each Advisory Committee. The Board shall determine the amount of funds necessary for each Advisory Committee to complete its assigned tasks in a comprehensive and reasonable manner. Such budget shall provide funding sufficient for a minimum of two meetings per year, which all Advisory Committee members may attend in person.

(E)  The Board shall ensure that each Advisory Committee is provided with timely, comprehensive and pertinent information reasonably necessary to carry out well-informed deliberations. Advisory Committee action will take the form of recommendations reported to the Board no later than the second regular Board meeting following each Advisory Committee meeting. In addition, the chairperson of the Advisory Committee and the appropriate member of staff are responsible for accurately reporting the Advisory Committee findings to the Board, and to be available in person or via telephone to discuss and answer any questions the Board may have regarding the Advisory Committee recommendations.

(F)  The recommendations and actions of any Advisory Committee shall not be binding on the Board or the Corporation and shall not constitute an act of the Corporation.

## Section 11. Conflict of Interest

No employee of the Corporation shall directly or indirectly, as a proprietor, partner, shareholder, employee, lender or in any other capacity, acquire or retain any interest in a Best Western Property.

## Section 12. Information to Members

Except as specifically provided otherwise in the Nonprofit Act, the Articles of Incorporation or Article II, Section 8 of these Bylaws, whenever these Bylaws require the Board or the Corporation to notify, advise or provide information or material in writing or by mail, the notice, advice, information or material may be provided by letter, facsimile, e-mail, the Corporation's website for Members, or other appropriate means calculated to provide such information or material to the intended recipient.

## ARTICLE VII
### Indemnification of Directors, Officers, Governors and Committee Members

### Section 1. Persons Indemnified

The terms "Corporation," "Director," "Expenses," "Liability," "Officer," "Party," and "Proceeding" when used in this Article VII, Indemnification of Directors, Officers, Governors and Committee Members, shall have the same meanings as set forth in A.R.S. § 10-3850, as amended.

(A)  Directors. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is or was a party to a Proceeding because he is a Director, this Corporation shall indemnify said person, as more fully provided in the Articles of Incorporation.

(B)  Officers. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was an Officer of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

(C)  Governors. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was a Governor of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

(D)  Standing Committee Member. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was a standing committee member of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

(E)  Ad Hoc Committee Member. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was an Ad Hoc committee member of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

### Section 2. Advance of Expenses

This Corporation may pay for or reimburse the reasonable Expenses incurred by a Director, Officer, current or former Governor or current or former Standing Committee member who is a Party to a Proceeding in advance of final disposition of the Proceeding in accordance with A.R.S. § 10-3853, as amended.

### Section 3. Power to Indemnify

(A)  Subject to the provisions of paragraph (B) of this Section 3, to the extent permitted by Arizona law, the Board shall have the power to indemnify persons who are not Officers, Directors, Governors, Standing Committee members and Ad Hoc Committee members and the power to pay for or reimburse reasonable expenses incurred by any such person who is a Party to a Proceeding.

(B)   No other person or entity than those specifically named in the Articles of Incorporation shall be indemnified unless by specific Resolution of the Board identifying the indemnitee and the specific scope and conditions of the indemnity.

(C)   Except as provided above in paragraph (B) of this Section 3, no indemnity shall be extended, by grant whether express or implied, to a Member, actual or apparent agents or independent contractors.

## ARTICLE VIII
### Amendments

These Bylaws may be amended as provided in the Articles of Incorporation.

# Best Western International, Inc.
# Restated Articles of Incorporation

## As Amended Through
## August 30, 2000
### Amendments

1.   June 7, 1966 – Article VII
2.   August 12, 1968 – Articles VI & VII
3.   November 21, 1975 – Article I
4.   October 14, 1976 – Articles IV & VI
5.   January 19, 1978 – Article V
6.   December 19, 1978 – Article I
7.   July 21, 1987 – Article VII
8.   September 20, 1989 – Article VII
9.   August 30, 2000
10.  June 14, 2006 – Article VI

ALL PROVISIONS OF THE EXISTING ARTICLES OF INCORPORATION NOT INCLUDED IN THESE RESTATED ARTICLES ARE EXPRESSLY REPEALED UPON ADOPTION OF THESE RESTATED ARTICLES.

## ARTICLE I

The name of the Corporation shall be:
BEST WESTERN INTERNATIONAL, INC.

## ARTICLE II

The principal meeting place of the Corporation shall be in Phoenix, Arizona, but the Corporation may establish other meeting places and other offices elsewhere within and without the State of Arizona.

## ARTICLE III

The general nature of the Corporation shall be for the following purposes:

(A)   To foster the interest of its members and those which are in any way related to the motel industry by common business interest;

(B)   To encourage high business standards and fair and honest treatment of the general traveling public, and specifically in providing for their convenience and comfort, and in the dissemination of highway and travel information and other aids;

(C)   To establish and maintain uniformity and equity in the customs of the motel trade;

(D)   To acquire, preserve and disseminate valuable information and to encourage closer relationships among those engaged in the industry;

(E)   To stimulate and cultivate close and lasting friendships and fellowships among those engaged in the industry;

(F)   To sue and to be sued;

(G)   To make, execute, deliver and assume the obligations of contracts;

(H)   To receive property by devise or bequest, subject to laws regulating the transfer of property by Will;

(I)   To convey, exchange, lease, mortgage, encumber, transfer upon trust or otherwise to dispose of all property, real or personal;

(J)   To own, buy, lease and operate office buildings, store-rooms, garages, club houses and other edifices;

(K)   To do any and all things necessary, suitable and proper for the accomplishment of its affairs and the accomplishment of any of the purposes or for the attainment of any of the objectives or for the exercises of any of the powers herein set forth or which may be recognized as proper and lawful objectives of a trade association, all of which shall be constituted with the public interest of this trade and industry.

(L)   Best Western International, Inc. or its subsidiaries are prohibited from operating, managing or otherwise participating in a hotel or motel except on a site associated with the Best Western International Headquarters.

## ARTICLE IV

The known place of business for the Corporation is 6201 N. 24th Parkway, Phoenix, Arizona 85016.

## ARTICLE V

The Corporation shall be a member nonprofit corporation.

## ARTICLE VI

There shall be no capital stock issued by this nonprofit Corporation. Memberships in the Corporation shall not be assigned except in accordance with the terms and conditions set forth in the Bylaws and none of the members of the Corporation shall receive pecuniary gain or profit. In the event of the dissolution of this Corporation after adequately taking care of all debts and obligations, any remaining assets of the Corporation shall be distributed to a nonprofit educational or charitable organization.

## ARTICLE VII

The time of the commencement of this Corporation shall be the date upon which the Arizona Corporation Commission shall issue its certificate. The Corporation shall have perpetual existence as provided for by law.

## ARTICLE VIII

(A)   The Annual Meeting of the membership shall be held during the period from September 15th through November 15th of each year on a date to be designated by the Board of Directors and such meeting shall be held at a location designated by the Board of Directors.

(B)   The affairs of the Corporation shall be conducted by a Board of Directors comprised of seven (7) Directors who shall be members of the Corporation.

(C)   The annual election of Directors hereafter shall be as set forth in the Bylaws.

13

(D) 1.    The members of the Corporation may propose the adoption, amendment or repeal of any Article of Incorporation or Bylaw or part thereof without the prior action of the Board of Directors. A proposal to adopt, amend or repeal any Article of Incorporation or Bylaw, or part thereof, may be initiated upon the written request of at least one hundred fifty (150) members who meet the requirements of Article III, Section 4 of the Bylaws, which request shall be delivered to the Secretary of the Corporation at its known place of business.

2.    Before a proposal to adopt, amend or repeal any Article or Bylaw is distributed for member signatures, the proposal shall be submitted to the Board and, at the Board's discretion, the proposal may be reviewed by Best Western's legal counsel. Counsel shall render an opinion within thirty (30) days whether the proposal violates any local, state or federal laws or whether the proposal requires the repeal or modification, in whole or in part, of any current Articles, Bylaws or Rules and Regulations. Counsel shall render to the Board and the proponents of the proposal an opinion stating what modifications, if any, are recommended to be made to the proposal and to current Articles, Bylaws or Rules and Regulations to avoid conflict or inconsistency or to provide clarity.

3.    In the alternative to D(2) above, the proponents may, in lieu of submitting the proposal to the Board prior to distribution for member signatures, submit the proposal with the required member signatures, along with a legal opinion of a licensed Arizona attorney. The opinion must state that the proposal does not violate any local, state or federal laws, does not require the repeal or modification, in whole or in part, of any current Articles, Bylaws or Rules and Regulations unless such repeal or modifications are included in the proposal.

4.    Proposals to adopt, amend or repeal the Articles of Incorporation or Bylaws shall reflect the vote of each Director on each proposed change. The Board may include a majority and minority opinion on each proposed change, not to exceed 250 words.

(E)    The Board of Directors may also propose the adoption, amendment or repeal of any Article of Incorporation or Bylaw or part thereof without the prior action of the members. The Board of Directors must also comply with the applicable provisions of Paragraph D(2).

(F)    The power to adopt, amend or repeal the Bylaws of this Corporation shall be vested solely in the members of the Corporation. The adoption, amendment, or repeal of any Bylaw provision shall require the affirmative vote of the lesser of two-thirds (2/3) of the votes cast or a majority of the voting power, unless the Arizona Nonprofit Corporation Act, as amended, or the body proposing the provision requires a greater vote; provided, at least thirty-three and one-third percent (33 1/3%) of the voting power vote in favor.

(G)    Subject to A.R.S. § 10-11002(A), as it now exists or may hereafter be amended, the power to amend or restate these Articles of Incorporation shall be vested in the members of the Corporation. The amendment or restatement of the Articles shall require the affirmative vote of the lesser of two-thirds (2/3) of the votes cast or a majority of the voting power, unless the Arizona Nonprofit Corporation Act, as amended, or the body proposing the provision requires a greater vote; provided, at least thirty-three and one-third percent (33 1/3%) of the voting power vote in favor. The Board of Directors may restate the Articles of Incorporation without member vote if no amendment is included.

(H)    Board of Directors' initiated amendments to the Articles and Bylaws shall comply with the provisions of A.R.S. § 10-11003, as may be amended.

## ARTICLE IX

The private property of each and every member of the Corporation, officer and Director shall, at all times, be exempt from all debts and liabilities of the Corporation.

## ARTICLE X

To the fullest extent that the law of the State of Arizona, as it now exists or as it may hereafter be amended, permits the elimination of or limitation on the liability of Directors and Officers, no Director or Officer of the Corporation shall be liable to the Corporation or its members for monetary damages for any action taken or any failure to take any action as a Director or an Officer. Any repeal or modification of this Article shall be prospective only and shall not adversely affect any elimination or limitation on the personal liability of a Director or Officer of the Corporation existing at the time of such repeal or modification.

## ARTICLE XI

Pursuant to A.R.S. § 10-3202(B)(2) and to the fullest extent that the Arizona Nonprofit Corporation Act, as amended, permits a nonprofit corporation to indemnify a Director, Officer, Governor and Standing Committee member for, from and against liability as defined in A.R.S. § 10-3850, as amended, to any person for any action taken, or any failure to take action as a Director, Officer, Governor, Standing Committee member and Ad Hoc Committee members, the Corporation shall provide indemnification for, from and against any such liability to the Directors, Officers, Governors, Standing Committee members and Ad Hoc Committee members.

## ARTICLE XII

The members of the Corporation may adopt or amend Bylaws in accordance with Article VIII of these Articles of Incorporation to fix a greater quorum or voting requirements for members than is required by the Arizona Nonprofit Corporation Act, as it now exists or as it may hereafter be amended.



**THE WORLD'S LARGEST
HOTEL CHAIN**

Best Western and the Best Western marks are service marks or registered service marks of Best Western International, Inc.
©2006, Best Western International, Inc. All rights reserved. Printed in U.S.A. 7/06 6600

# EXHIBIT C



# *rules &*
# *regulations*







Each Best Western hotel is independently owned and operated.



# NOTICE REGARDING NON-COMPLIANCE WITH
# UNIT COUNT INCREASE POLICY

According to Best Western Rules and Regulations, rentable guest rooms may not be increased by ten rooms or 10%, whichever is greater, without prior approval of the Board of Directors. This process requires the submission of an application, specific fees and impact study notification, if applicable. The request is then reviewed for approval or denial by the Board of Directors. **Please be advised that non-compliance with this rule is grounds for membership cancellation and will result in financial penalties.** Penalties vary based on the Board's decision to approve or deny the request to increase the property's unit count above the allowable increase outlined in the Rules and Regulations. **Effective 2/1/02**, if units exceeding the allowable increase are added to a Best Western property without the prior approval of the Board and the unit count increase is ultimately denied, liquidated damages on the unauthorized number of units will be assessed as outlined in the Membership Application and Agreement.

# Table of Contents

| | | |
|---|---|---|
| **100.0** | General Provisions | 2 |
| **200.0** | Regional Governors | 2 |
| **300.0** | Signs and Advertising | 4 |
| **400.0** | Reservations System and Travel Guide | 5 |
| **500.0** | Administrative | 6 |
| **600.0** | Lobby and Front Office | 12 |
| **700.0** | Buildings, Grounds and Public Areas | 12 |
| **800.0** | Housekeeping Department | 15 |
| **900.0** | Guest Rooms and Bathrooms | 15 |
| **1000.0** | Logo Items and Room Supply Standards | 17 |
| **1100.0** | Violations and Sanctions | 18 |
| **1200.0** | Procedure for Cancellation of Membership | 18 |
| **1300.0** | Procedure for Termination of Contingently-Approved Applicants | 21 |

# Chapter I

### 100.0   General Provisions

**100.1**   The rights and obligations of members are contained in the laws of the State of Arizona and Best Western's Articles of Incorporation, Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, Membership Application and Agreement, annual Membership Certification Agreement, and the orders or directives of the Board (Board). Such rights and obligations shall be governed by and subject to such modifications to and amendments of the foregoing as may be duly effected from time to time by the Arizona Legislature, the membership of the Corporation or the Board of Directors as the case may be.

**100.2**   The Articles of Incorporation may be amended or repealed only by the members in accordance with Section 10-1034, Arizona Revised Statutes.

**100.3**   The Bylaws may be adopted, amended or repealed only by the members in accordance with Article VIII of the Bylaws.

**100.4**   The Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines may be adopted, amended or repealed, and the orders or directives of the Board may be adopted, amended, repealed or rescinded only by the Board in accordance with the Bylaws.

**100.5**   The Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, and orders or directives of the Board may supplement the laws of the State of Arizona, the Articles of Incorporation and the Bylaws, which are the primary repository of the rights and obligations of the members. Any inconsistency between the provisions of the Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, and orders or directives of the Board and the provisions of the laws of the State of Arizona, the Articles of Incorporation or the Bylaws is controlled by the laws, Articles or Bylaws, in that order.

**100.6**   The secretary of the Corporation shall maintain in current form the Articles of Incorporation, the Bylaws, the Rules and Regulations, the New Construction Guidelines, the Renovation & Refurbishing Guidelines, and orders or directives of the Board. These shall be made available for inspection by any member at the principal office of the Corporation during business hours.

**100.7**   Current Articles of Incorporation, Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, and any order or directive of the Board shall be made available for inspection by any member at all regular and special meetings of the members.

**100.8**   Each member shall be given a copy of the then current Articles of Incorporation, Bylaws, Rules and Regulations, New Construction Guidelines and Renovation & Refurbishing Guidelines at or before the time the membership commences. Thereafter, any modifications, revisions and amendments to any of the foregoing will be made available to members as soon after adoption as is reasonably practicable.

**100.9**   Terms used in these Rules and Regulations that are defined in the Bylaws shall have the same definitions here, unless the context indicates otherwise.

**100.10**   Except as otherwise required by law, the Articles of Incorporation or the Bylaws, the provisions of this chapter are directive, not mandatory. Non-compliance with any provision in this chapter shall not confer any right upon, waive any obligation of, or entitle to any relief, any member without a showing that the member would otherwise be substantially prejudiced.

**100.11**   Except as provided otherwise in the Bylaws and Rules and Regulations, membership in Best Western is personal and nontransferable. Only a natural person can hold a membership. The approval or disapproval of an application for membership rests wholly within the discretion of the Board.

# Chapter II

### 200.0   Regional Governors

**200.1**   A.   Each Director shall annually appoint regional Governors to act as liaisons between the Board and the membership within the geographic regions covered by the respective appointments. These appointments shall be ratified by the full Board.

B.   If a Governor fails to meet responsibilities, except in cases of extenuating circumstances as determined by his/her Director, he/she may not be eligible for reappointment for the next year.

C.   The number, responsibilities and accountabilities of the regional Governors shall be determined at the time of appointment and may be altered or rescinded by the Board.

D.   The appointment of a regional Governor may be rescinded and vacancies may be filled by the Director at any time and ratified by the full Board.

**200.2**   In order for an individual to be appointed as a Best Western Governor, the individual shall:

A.   Be a voting member or owner;

B.   Have a minimum of three years hotel/motel industry experience;

C.   Have a minimum of two years Best Western experience;

D.   Be a participating member in industry related associations available in his/her area;

E.   Have attended his/her respective Best Western District Meeting or the Annual International Convention each year for the past two years;

F.   Comply with the following items at all Best Western properties where the Governor is a voting member or owner:

   1.   Attainment of a Quality Assurance score at or above the North American average, averaged over the past three inspections;

2

2.  Maintenance of a customer service com-
plaint ratio below the minimum requirement for
the past 18 months;

3.  Maintenance of a current Best Western
account;

4.  Be current on Design standards.

G.  A CHA designation is highly recommended.

H.  A Board majority may waive qualifications
based on the recommendation of a Director if
there are extenuating circumstances.

**200.3**  After appointment as a Best Western Governor,
the Governor shall meet the following criteria:

A.  Continue to be a voting member or owner;

B.  Continue to be a participating member
in industry related associations available in
his/her area;

C.  Visit each member within their respective
region no less than one time annually:

1.  Observe the management of the property
for the purpose of advising and recommend-
ing areas needing improvement.

2.  Tour the property, discussing with man-
agement any issues of concern. The goal
should be to enhance consistency among
properties in the application of quality control,
customer services, design and brand identity
policies.

3.  Serve as a resource to the member by
discussing Best Western International for the
purpose of clarification.

4.  File a report on the visit to District
Managers within 30 days; discuss serious
concerns with them immediately following
the visit.

D.  Upon request by his/her Director, assist with
issues affecting the Association or represented
region:

1.  Communicate with his/her Director on
any issues concerning members in the district.

2.  Communicate any violations of member-
ship requirements to the staff or Director
occurring within the district.

3.  Communicate any concerns members
have about Best Western International, Inc.
as it may relate to governance issues, Bylaw
changes or Rules and Regulations.

E.  Attend and actively participate in the following
meetings:

1.  Attend the Governors' Conference each
year and, if a newly appointed Governor,
attend new Governor Orientation session at
Governors' Conference.

2.  Attend either his/her respective
District Meeting or the Annual International
Convention each year. Attendance at both
meetings is strongly encouraged.

3.  Coordinate at least one state/provincial/
area or regional meeting each year within the
local area.

4.  Attend, when possible, a Best Western
training workshop annually.

F.  Upon request by his/her Director or the Board,
serve in a leadership role for the organization:

1.  Provide advisory assistance to the Board
on strategy, governance and member matters.

2.  Serve on one member advisory
committee upon request.

3.  Assume other leadership assignments
when called upon by the Director.

G.  Upon request from Membership Development
or the Director, visit a proposed applicant's prop-
erty or site, if new construction.

1.  File a written report with Membership
Development upon completion of the visit
within the required time frame as outlined by
the Development Department.

2.  Objectively evaluate the proposed mem-
ber, keeping in mind the value of the proposed
member property to the Association.

H.  Comply with the following items at all
Best Western properties where the Governor
is a voting member or owner:

1.  Maintain a Quality Assurance score at or
above the North American average, averaged
over the past three inspections prior to
September 1 of each year;

2.  Maintain a customer service complaint
ratio below the minimum requirement;

3.  Maintain a current Best Western account;

4.  Continuously operate their property/prop-
erties in a manner to ensure that grounds for
cancellation of membership/contingent
approval do not exist.

I.  Follow Best Western's ethics policies.

**200.4**  Regional Governors shall serve without pay but
may receive reimbursement for expenses as
determined by the Board:

A.  Mileage reimbursement is in accordance with
Best Western International policy. One night's lodg-
ing will be reimbursed if travel exceeds 200 miles
one way. Airfare and rental car reimbursement
authorized with advance Director approval.

B.  One complimentary registration for the
Governor to attend his/her regional District
Meeting.

C.  Governors will be reimbursed for travel
expenses to attend the Governors' Conference
including airfare, lodging and meals. Rental cars
are not included.

D.  Travel to District Meetings and Annual
International Convention is at Governor's own
expense.

E.  All reimbursable expenses incurred during the
course of the year are to be submitted to the
Finance Department within sixty (60) days of the
date of the expense. All reimbursable expenses
must be submitted no later than forty-five (45)
days following the end of the fiscal year in which
incurred. Expenses not turned in within these time
frames will not be reimbursed.

3

# Chapter III

**300.0    Signs and Advertising**

**300.1**    The Best Western logo shall be incorporated into all signage including outdoor billboards and displays which include the property name. The Best Western logo shall represent at least 30 percent of the total sign square footage and be displayed above or to the left of the property name. Display of credit card panels is prohibited. Budget, dated, cluttered and disjointed signage is not permitted as may be determined by Brand Identity Administration of Best Western. The member or applicant shall have the right to appeal to the Board regarding compliance with this Rule. The decision of the Board shall be final.

**300.2**    Each member shall display on the property premises an approved Best Western property name sign of no less than 50 square feet. This sign shall be the current approved sign series as outlined in the Brand Identity Manual, Sign Program Brochure and Guidelines for Best Western signs. The foregoing manual, brochure and guidelines may be amended by the Board.

**300.3**    Placement, size and type of all Best Western signage shall be approved by Brand Identity Administration of Best Western. All property signage shall comply with the current Rules and Regulations, Brand Identity Manual, Guidelines for Best Western Signs, Sign Program Brochure and Best Western Brand Identity Exterior Sign Program Design Intent Drawings. The foregoing manual, guidelines, brochure and drawings may be amended by the Board. Retrofitted sign cabinets may be permitted for a maximum of five years from the date of approval by Brand Identity Administration of Best Western. Non-conforming, unusually shaped cabinets are subject to approval by Brand Identity Administration of Best Western. The approval shall be based upon whether the cabinet coordinates with the property's architectural design and adheres to Best Western's Brand Identity typestyle, logo colors and qualified size requirements. The member or applicant shall have the right to appeal to the Board regarding compliance with this Rule. The decision of the Board shall be final.

**300.4**    In the event a member obtains an approved Best Western sign from a source other than the Association, the member shall transfer title and ownership of the logo portion or the Best Western identification portion of such sign to the Association.

**300.5**    The member shall be responsible for the cost of installation of any and all Best Western signs and shall be responsible for maintaining such signs in first-class condition.

**300.6**    Upon termination or cancellation of membership, the former Best Western member shall remove the Best Western sign, sign cabinets for NL and NM signs, as defined in Best Western's Brand Identity Manual, and any part thereof, or any display of the Best Western emblem or logo. When the sign cabinet is removed, it must be destroyed or modified so that the top of the cabinet has no curvilinear features. Best Western or its authorized agents shall have the right to enter upon the property for the purpose of removing any Best Western sign, sign cabinet for NL and NM signs and any display of the Best Western emblem or logo upon termination or cancellation of membership. The cost of removal of Best Western identification upon termination or cancellation of membership shall be the responsibility of the former member. If Best Western must take action to require or complete the removal, destruction or alteration of signs, sign cabinets and other Best Western identification, the former member shall be responsible for costs and fees, including attorneys' fees incurred by Best Western.

**300.7**    All logos not conforming to Best Western standards shall be removed or replaced to meet Best Western requirements at the member's expense.

**300.8**    In cases where zoning prohibits display of any available approved sign which meets Best Western's minimum requirements, members shall submit zoning ordinances, plus graphics and dimensions to Brand Identity Administration of Best Western for review. The member/applicant must request a variance in writing from the local city board and if denied, appeal to the next level of government. If local ordinances prevail, the member or applicant shall be required to comply with Best Western's minimum requirements in the following manner.

A.    All allowed signs shall be installed in the most advantageous combination of permitted locations and sizes within the primary property entry area, including entry drive, canopy, porte cochere and main lobby entrance.

B.    The balance of the required Best Western logo signs shall be provided inside the public area, located behind the front desk, or at the main lobby entrance, whichever is the most prominent. A conforming logo shall be either a minimum four square foot full color logo or a minimum eight square foot logo in natural materials.

C.    Any remaining balance shall be installed in other practical, prominent public locations. If the combination of permitted exterior signs and complying interior signs in practical, prominent public areas do not equal the required total square footage, a qualified graphics consultant shall be engaged by the member at their expense to evaluate the suitability of additional locations and sizes for Best Western Brand Identification. The consultant's recommendations shall be evaluated by Best Western's Sign Consultant and Field Designer. If approved by Best Western, the graphics package shall be immediately implemented.

D.    When the canopy or the porte cochere are the only locations to display the property name, then the Best Western logo shall be displayed as outlined in the Brand Identity Manual, Best Western Sign Program Brochure and Guidelines for Best Western Signs. On a multi-sided canopy, only one side shall count toward the 50 square foot requirement.

4

E.    The member or applicant shall have the right to appeal to the Board regarding compliance with this rule. The decision of the Board shall be final.

**300.9**    Each member shall use either the words "Best Western" or the Best Western logo immediately preceding the individual property name in directories and travel guides, brochures, postcards/hotel letters, envelopes, business cards, Yellow Pages, courtesy cars/vans and in all media as outlined in the Brand Identity Manual or policies and directives of the Board. If the member elects to use the words "Best Western" rather than the logo immediately preceding the property name to meet this requirement, the Best Western logo shall be placed elsewhere in the advertisement or display.

**300.10**    The Best Western logo shall be reproduced in its true proportions and entirety and, when reproduced in color, in the approved colors, in accordance with the Brand Identity Manual distributed by Best Western.

**300.11**    No member shall permit the use or display of any merchandise or advertising bearing the Best Western logo in any non-member lodging facility.

**300.12**    No member shall permit the use or display of any merchandise or advertising of a non-member facility at, or in connection with, the advertising of a member property except as provided in the Brand Identity Manual, as may be changed from time to time by the Board of Directors.

**300.13**    All signs including outdoor billboards, shall conform to quality standards, engineering and design specifications and approved art as prescribed in the Brand Identity Manual, Guidelines for Best Western Signs, the Sign Program Brochure and Best Western's Brand Identity Exterior Sign Program Design Intent Drawings.

**300.14**    All property signs, including supporting structures and bases, shall be well-maintained, properly lighted and in a good state of repair and operation at all times. A Signage Condition Evaluation shall be conducted in conjunction with any Quality Assurance inspection or at any other time, but no sooner than 30 days following the last Signage Condition Evaluation, at the Regional Service Manager's discretion. If a point deduction of 15 or more points occurs on any two Signage Condition Evaluations within one year, the property shall be subject to cancellation of membership as outlined in paragraph 1100.6 of the Best Western Rules and Regulations. Points deducted for specific signs or conditions may be reinstated if, within 30 days of the Signage Condition Evaluation date, acceptable proof (repair documents and/or photographs), is submitted to the Best Western Quality Assurance Department showing the sign/condition has been fully corrected.

**300.15**    A property may post rates on outdoor billboards and signs. However, all rate posting shall meet the following minimum standards: (a) All rooms of the advertised room type shall be offered at the advertised price; (b) all rate posting shall conspicuously indicate the type of room offered and shall indicate the number of persons accommodated at the advertised price if the posted rate is based on a number of occupants; and (c) the posted rate shall be available at all times during which the rate is being posted unless the rate posting conspicuously indicates all restrictions placed on the availability of the posted rate. Any rate posting shall conform to the Best Western rate sign posting graphic standards. All rate posting shall represent a bona fide offer to sell the advertised rooms at the advertised price.

**300.16**    All signs and identification of any other motel/hotel chain shall be removed before installing the Best Western sign and beginning operation as a Best Western property.

**300.17**    All Best Western signs obtained from a source other than the Association's approved supplier shall be manufactured in accordance with Best Western's current sign specifications. All costs incurred in the removal or replacement of signs that do not comply with current sign specifications, regulations or graphic standards shall be the responsibility of the member.

**300.18**    The member is cautioned that it is the member's responsibility to ensure that all signs comply with prevailing laws and ordinances. Compliance with the standards and criteria of Best Western does not assure compliance with state and local laws and ordinances.

**300.19**    To the extent of any inconsistency between the provisions of Chapter III of these Rules and Regulations and any manuals, brochures, guidelines, drawings or specifications adopted pursuant to Chapter III, the provisions of these Rules and Regulations shall apply.

**300.20**    Each member shall display a Best Western membership plaque at the entrance. The minimum size of the membership plaque is 6 1/2" x 9 1/8".

# Chapter IV

## 400.0    Reservations System And Travel Guide

**400.1**    Each member shall participate in and comply with such reservations system as may be approved and adopted by the Board, including any and all alterations, amendments, deletions or supplements thereto.

**400.2**    Each member shall execute such documents and agreements as Best Western deems necessary to effectuate member participation in and compliance with such reservations system.

**400.3**    The approved property-to-property reservations system is the Nova.

**400.4**    No member shall permit the referral of Best Western guests to non-member properties unless all available Best Western rooms in a given area are filled.

**400.5**    Future reservations shall be solicited of each guest at the time of check-in and check-out. This shall be done consistently as a part of the registration and check-out procedure.

**400.6**    Front desk personnel of all properties are required to be proficient in sending and receiving reservations.

**400.7**    Standards for arrival times that require guarantees and guaranteed policies will be set periodically by

Best Western. Each member shall, when required by Best Western, select from these standards the desired guarantee policy for the property. Members shall comply with the selected policy for the entire period for which the selection is made.

**400.8** Each member shall honor room reservations made with either an advance deposit or credit card guarantee or a 4pm/6pm hold if accepted by the property, at the rate confirmed at the time of booking. If for any reason a room is not available, the member shall arrange for comparable accommodations in the area, if possible at a nearby Best Western; if not, at a comparable hotel or motel. The room shall be provided at no charge to the guest for the first night's stay. Transportation and a telephone call to notify the guest's home or office of the change shall also be provided without charge.

**400.9** Room rental rates for each Best Western and group rates, if applicable, are established by the member based on such considerations as investment, location, competition, season and any other matters deemed pertinent by the member in its sole discretion. Each member shall furnish accurate and current room rate information in a timely manner for publication in the Travel Guide and accurate and current group rate information, if applicable, for publication in the Group Rate Manual and supplement. Members are not prohibited from charging more or less than the published room or group rates. Repeated or unexplained instances in which a member increases rates above those published in the Travel Guide or the Group Rate Manual shall be deemed to be a failure to provide accurate and current room rate information and shall result in deletion of the member's property listing from the Travel Guide in accordance with paragraph 400.10 of these Rules and Regulations. Serious, repeated or unexplained failures to provide accurate and current room rate information may be deemed to constitute continued violations, deficiencies or infractions of applicable Rules and Regulations and may result in cancellation of membership in accordance with paragraph 1100.6 and the procedure set forth in Chapter XII of these Rules and Regulations.

**400.10** Each member shall furnish accurate and current information in a timely manner for publication in the Travel Guide. Members will be given reasonable notice of deadlines for receipt of information to be included in the Travel Guide and are responsible for complying therewith. The failure to provide accurate and current information, including room rates, prior to the publication deadline shall result in deletion of the member's property listing from the Travel Guide.

**400.11** Each Best Western member is required to maintain a display of the current Travel Guides at the front desk or in the lobby area.

**400.12** Members are required to make a reasonable effort to promote distribution of the Travel Guide to the traveling public.

**400.13** An on-site representative from each property shall attend a ST*R Training Seminar each year.

**400.14** Children 12 years old or under stay free when accompanied by a parent or grandparent in the same room.

## Chapter V

**500.0** **Administrative**

**500.1** All fees, dues and assessments payable by members to the Corporation shall be established by the Board.

**500.2** All members shall pay such fees, dues and assessments as may be established by the Board.

**500.3** All members shall pay a monthly fee established by the Board.

**500.4** All monthly charges are due and payable on or before the 15th of each month. An additional charge shall be assessed for late payment.

**500.5** Annual Dues shall be non-refundable on December 1.

**500.6** A.  Applications for membership shall be made on application forms as prescribed by the Board and accompanied by payment in full of the appropriate fee as established by the Board. Applicants shall be elected to membership in the Association by favorable vote of a majority of the Board. Voting on membership applications may be by mail or at any special or regular meeting of the Board.

B.  The Board may in its sole discretion consider membership applications for lodging facilities which are proposed for construction or under construction. The Board may approve such applications subject to one or more contingencies or conditions imposed by the Board in its sole discretion and, in the case of facilities proposed for construction, may allow the applicant 12 months in which to begin construction (poured concrete footings on approved site). If such conditional or contingent approval is given, the applicant shall not be entitled to membership until the Board has received proof, satisfactory to it, that all such conditions or contingencies have been timely satisfied. The Board may permit applicants who have received contingent approval for properties under construction to have a listing in the Travel Guide under certain conditions. The Board may also permit applicants who have received conditional approval for properties proposed for construction to have a listing in the Travel Guide under certain conditions to include receipt of proof, satisfactory to it, prior to November 15 of the current year that construction has commenced (as previously defined). Applications given contingent or conditional approval as provided in this paragraph (B) shall not be transferable to any other location.

C.  The Board may act upon membership applications by or on behalf of prospective purchasers or transferees of lodging facilities for which current memberships are held by approving such applications subject to one or more contingencies or conditions imposed by the Board in its sole discretion. If such contingent approval is given, the applicant shall not be entitled to membership until the Board has received proof, satisfactory to it, that all such conditions or contingencies have been

timely satisfied. Such final approval, if granted, shall be effective from the date of close of sale or transfer. The Board may direct that customary membership services to the property remain uninterrupted during any contingency period, upon the applicant's agreement to timely comply with the stated conditions and pay the established fees, dues and assessments for said period and the cost of all goods or services provided by or ordered through Best Western whether or not the application is ultimately approved. However, in no event shall this continuation of customary membership services be construed as granting membership status to the applicant.

D.   The Board may act upon other membership applications by approving such applications subject to one or more contingencies or conditions imposed by the Board in its sole discretion. If such contingent approval is given, the applicant shall not be entitled to membership until the Board has received proof, satisfactory to it, that all such conditions or contingencies have been timely satisfied. Such final approval, if granted, shall be effective from the date the final approval is granted. The Board may direct that customary membership services to the property may commence during any contingency period, upon the applicant's agreement to timely comply with the stated conditions and pay the established fees, dues and assessments for said period and the cost of all goods or services provided by or ordered through Best Western whether or not the application is ultimately approved. However, in no event shall this commencement of customary membership services be construed as granting membership status to the applicant.

**500.7**  A.   All applicants for new membership, including those made by or on behalf of prospective purchasers or transferees of lodging facilities for which current memberships are held, shall remit a non-refundable evaluation fee with their applications. The amount of the evaluation fee shall be established by the Board from time to time to defray, in whole or in part, the administrative costs, including inspection costs, of evaluating such new membership applications.

B.   All applicants shall also remit an affiliation fee with their applications in an amount established from time to time by the Board. The affiliation fee shall be non-refundable 30 days after either approval by the Board of the application or upon conditional approval by the Board of the application and the applicant's agreement to satisfy the stated conditions in timely manner. If (i) an application is initially denied by the Board or, (ii) in the case of an application for lodging facilities which are proposed for construction, the applicant withdraws the application within six months of the initial Board action on the application and prior to the start of construction, then in either such event, the affiliation fee, less any amounts owing Best Western by virtue of agreements made pursuant to paragraphs 500.6 (C) and (D) of the Rules and Regulations, shall be refunded to the applicant. The refund shall be paid only after (i) return is

made to Best Western or its designated agents of any and all Best Western property in possession of the applicant, including the Best Western sign and reservations equipment, if any; and (ii) discontinuance by the applicant of any use or display of any Best Western marks, service marks, membership marks, trademarks, trade names and business symbols, including without limitation, the Best Western emblem and logo.

**500.8**  All applicants granted conditional approval for properties proposed for construction may apply for one 12-month extension of their conditional approval so long as construction has not yet commenced. Each such applicant seeking an extension shall submit a progress report describing as a minimum the current status of financing, architectural plans and specifications, satisfaction of zoning requirements and plans for commencement of construction. An extension of 12 months will be granted automatically upon receipt of the fee specified in rule 500.6(B) prior to 30 days of the end of the 12-month period allowed for commencement of construction pursuant to rule 500.6(B). The amount of the entrance fee required upon application for an extension will be based upon the fee schedule current as of the date of the application for extension. The entrance fee paid upon application for extension shall be non-refundable as of the date that the extension period begins. In the event that construction is not commenced at the end of the extension period, no further extensions shall be granted and the applicant may not reapply for membership in the same location for 90 days following the end of the extension period. Any such reapplication following an extension shall be accompanied by all fees required under rule 500.6.

**500.9**  All members shall be required to use the name "Best Western" as part of the name of their property either as the sole name or in combination with another name. All advertising of a member property bearing Best Western as its sole name, however, shall include the statement "individually owned." Legal entities such as corporations, partnerships, firms or associations that own, lease or operate properties are not permitted to use the name "Best Western" as any part of their legal name.

**500.10**  All members shall accept all approved credit cards for payment of room rent and services.

**500.11**  A member or designated operating manager or active management employee of each Best Western property shall attend either the Annual International Convention or a District Meeting each year.

**500.12**  All new members are required to send a representative of their hotel, motel or resort to an Orientation Seminar before they are permitted to operate their facility as a Best Western property. This representative shall be an on-site employee of the property, serving in some operational or management capacity. In addition, all members shall participate in the INNVISION Program (now titled 'Tools for Success') at their own expense.

**500.13**  All members shall accept reservations from bona fide travel agents on a year-round, space-available basis and pay at least the standard 10 percent commission on the gross room rental, except for bookings on special package programs made at net rates as specified by Best Western.

**500.14**  Each member and each contingently approved applicant shall keep in full force, at all times, a policy (or policies) of insurance which:

A.  Is a public liability and property damage policy. Coverage shall be on a commercial general liability form including the broad form endorsement or its equivalent. Coverage shall include premises and operations, owners and contractors protective, products and completed operations, personal injury and contractual liability.

B.  Is a policy covering liability for owned automobiles, non-owned automobiles and hired automobiles.

C.  Is issued by an insurance carrier which is rated no lower than "B+" in the most current edition of A.M. Best's Key Rating Guide and is licensed to do business in the state in which the member is domiciled. Any other insurance carriers, risk prevention groups, captive insurance companies or liability insuring entities must be approved by the Best Western Board before submitting the Certificate of Insurance to Best Western. Approval shall be at the Board of Directors' sole discretion.

D.  Names Best Western International, Inc. as an additional insured, on all insurance policies including, but not limited to, primary, excess and umbrella policies, providing coverage to Best Western for its active and passive negligence for claims arising from acts occurring at or concerning the subject property by use of ISO Form CG20-26-11-85 or its equivalent. Members not providing insurance as set forth in this paragraph (D) agree to indemnify Best Western for all claims and damages which would have been covered by insurance meeting the requirement of paragraph (D) of this rule.

E.  Provides minimum liability limits in such amounts as may be established from time to time by Best Western's Board.

F.  Provides liability coverage on an "occurrence" basis. The Best Western Board may authorize an exemption from this provision, and permit liability coverage on a "claims made" basis, where the member demonstrates an inability to obtain "occurrence" coverage. In the event that "claims made" coverage is authorized, the member shall obtain tail coverage, with liability limits as though an "occurrence" policy had been in force, providing retroactive coverage to the date of the member's last "occurrence" policy or the first date of contingent approval for membership, whichever is later.

G.  If at any time a member changes from a "claims made" to an "occurrence" form of liability insurance, one of the following coverages shall be obtained:

1.  An open-ended reporting period for losses occurring during the time of coverage

under "claims made" policy, or the first date of contingent approval for membership, whichever is later.

2.  Prior acts coverage back to the member's first date of "claims made" coverage or the first date of contingent approval for membership, whichever is later.

H.  The member's insurance shall be primary in all cases. Any other insurance maintained by Best Western is for the protection of Best Western only and is not supplementary or excess insurance for the member.

I.  Provides that the insurance companies issuing such insurance shall notify Best Western in writing at least sixty (60) days prior to any cancellation, alteration or non-renewal of the policy. Each member and each contingently approved applicant shall annually provide Best Western with a Certificate of Insurance, on forms provided by Best Western, evidencing a policy or policies meeting the above requirements. The Certificate of Insurance shall be provided with the contingent applicant certification agreement or prior to or upon expiration of the current Certificate of Insurance on file with Best Western. Failure to provide the Certificate of Insurance shall result in automatic termination in accordance with the provisions of Article II, Section 7 of the Bylaws. As a condition of contingent approval, each applicant, upon notification by Best Western that Best Western intends to contingently approve the application, shall provide Best Western with a Certificate of Insurance, on forms provided by Best Western, evidencing a policy or policies meeting the above requirements. This requirement shall be met prior to activation of services, installation or display of any Best Western signs, or advertising or disclosure of any Best Western association. Failure to maintain the insurance coverage required by this rule shall be grounds for termination of membership in accordance with the provisions of Article II, Section 8 of the Bylaws, immediate suspension of services and termination of contingent approval as may be prescribed in the Rules and Regulations of Best Western.

**500.15**  It is required that each Best Western affiliated member permit inspection of all accommodations, facilities and procedures by an accredited Best Western Regional Service Manager to determine compliance with these Rules and Regulations and the Best Western Member Information and Resource Guide, and as deemed necessary by the Board. Every effort will be made to provide the member with advance notification of a scheduled inspection, but it may not always be possible to do so. When possible, not less than 24 hours advance notice will be given. There will be no notice given where an unannounced inspection is intended.

**500.16**  The quality control inspection program is designed to assist the member and Best Western Headquarters in identifying potential problems at the property. The report measures the cleanliness and condition of the property, the amenities and services furnished, and how well the member complies with the established Rules and Regulations.

8

**500.17** A perfect score in the inspection program is 1,000 points in the inspection report or the Guest Rooms/Public Areas Condition Report. A score of less than 850 points, a point loss of more than 50 points in housekeeping, or a point loss of more than 100 points in maintenance may result in stricter and more frequent inspection requirements. A score of less than 800 points in an inspection report or the Guest Rooms/Public Areas Condition Report will result in the member property being placed into probationary status. The Board may establish a fee for any inspection which is scheduled as a more frequent inspection under this rule. A property, once placed into probationary status, will remain in the status until such time as the inspection report or the Guest Rooms/Public Areas Condition Report score equals or is greater than 800 points or until cancellation of the membership pursuant to paragraph 1100.6 of these Rules and Regulations. The Board may impose stricter inspection requirements on probationary properties.

**500.18** The complete facilities may also be inspected by a member of the Board, a Regional Governor or other member of the Best Western administrative staff.

**500.19** Although not specifically required, it is desirable that the owner or manager of the property accompany the Regional Service Manager on the inspection and review the report with the inspector prior to the Regional Service Manager's departure from the property.

**500.20** A.   All properties will be scheduled for inspection in the manner provided by the Best Western Member Information and Resource Guide, as may be amended.

B.   All facilities associated with a member property shall be made available for inspection. These facilities include:

1.   All land, buildings and improvements which are owned or leased by the member; or

2.   Facilities which are represented by the member as being available to provide goods, services or amenities to the member's guests where the goods, services or amenities provided by the facility are represented as being owned, managed or controlled by the member.

C.   All leases or management contracts for facilities associated with the member property shall include provisions permitting inspection and renovation, as provided in Chapter V of the Rules and Regulations.

D.   All facilities associated with the member property shall be presumed to be available for inspection and renovation unless established to the contrary by the member and a waiver is secured from Best Western.

E.   Waivers from the requirements of this rule may be granted by Best Western, upon such terms and conditions as it, in its absolute discretion, may determine.

**500.21** A planned program shall be in effect to accomplish continual maintenance of facilities associated with the member property to reflect a fresh and high quality appearance. Each Best Western member will implement a redecorating, refurbishing and renovation program in accordance with guidelines and time schedules as may be established by the Board, so that the property shall provide high quality accommodations as required to keep pace with the current trends of the lodging industry.

**500.22** It is recommended that existing members voluntarily proposing renovation or refurbishing submit proposed plans and specifications to the Design Department for review to avoid possible conflict with Best Western guidelines and avoid unnecessary expenditure for products which may be subsequently disapproved. Pursuant to a request by Best Western International, an applicant or member may be required to submit drawings, color boards and specifications to the Design Department for review before purchase or installation. Any redecorating, refurbishment and renovation not first securing the approval of the Design Department of Best Western may not, at the sole discretion of the Board, be considered to be undertaken or completed in compliance with orders, directives or conditions of the Board and may subject the membership to cancellation pursuant to paragraph 1100.6 of these Rules and Regulations. In the event of disagreement between the member or applicant and the Design Department and/or Review Committee relative to the review and/or correction of property deficiencies, the Board of Directors shall have the final decision.

**500.23** These Rules and Regulations, together with Best Western's New Construction Guidelines and Renovation & Refurbishing Guidelines, constitute the rules for projecting a fresh and high quality appearance.

**500.24** Each Best Western property shall be operated in a high ethical and moral standard consistent with Best Western's concept of providing quality accommodations at fair and reasonable prices.

**500.25** Best Western members shall comply with all prevailing laws, ordinances and regulations pertaining to the operation or construction of a hotel/motel or resort property.

**500.26** Each Best Western member will maintain the premises, including coffee shops, restaurants, lounges, meeting/banquet rooms and other public areas, in a clean, safe and orderly condition.

**500.27** Efficient, courteous and high quality services shall be provided by each Best Western member.

**500.28** Any deviation from these Rules and Regulations shall have the prior written approval of the Board. A file of all written waivers shall be maintained at the property and available for inspectors to verify waiver.

**500.29** Each Best Western member shall use reasonable means to encourage the use of other Best Western affiliated hotels/motels on a worldwide basis by the traveling public.

**500.30** Each transaction with the guest shall be conducted in a courteous, cordial, friendly and professional manner that reflects fair and ethical policies and practices.

**500.31** Personnel shall be properly trained to serve the guests in a professional manner.

**500.32** All guest contact personnel shall be neat, well-groomed and properly attired.

**500.33** In order to foster, promote and continue Best Western's image as a provider of high quality service to the traveling public, including families, it is declared to be in the best interest of all members to uniformly prohibit the offer, sponsorship or provision of any entertainment which could be classified as adult, pornographic, lewd, sexually explicit or obscene. Prohibited entertainment shall include, without limitation, the showing of or offer to show any movie or film with an "X" or similar rating or any movie or film that is equivalent to "X" rated and the offering of nude dancing or modeling. The Board shall have final discretion in determining whether there has been a violation of the purpose and spirit of this rule.

**500.34** All Best Western members are expected to comply with Best Western's guaranteed reservations system as prescribed in the Best Western Member Information and Resource Guide.

**500.35** The owner or manager of a Best Western property shall give prompt and courteous attention to any guest criticism, regardless of its source. When complaints are received at the Best Western International Headquarters with reference to a particular property, the guest will be sent a reply stating that the complaint will be investigated and that he can expect to receive an answer directly from the property. Such a complaint letter shall be answered within seven (7) days, with a copy directed to the office of Customer Service at Best Western International Headquarters.

**500.36** The acceptance of pets of guests is recommended, subject to prevailing laws that may apply. Seeing Eye dogs shall be permitted in any area accessible by their masters.

**500.37** Each Best Western property shall be of soundproof construction, in a desirable location, have an attractive exterior and provide year-round heating and/or cooling.

**500.38** Each Best Western member property shall have a restaurant on or within 500 feet of the premises, except when individual circumstances warrant a variance approved by the Board. Although a restaurant is located within 500 feet of the premises, it shall not qualify the member property under this rule if that restaurant is located at any other lodging establishment.

**500.39** Each Best Western member property shall offer a breakfast on-site or at immediately adjacent facilities that are inspected by Best Western. Such breakfast must meet a minimum level of product and service as defined in I., II., or III. below:

    I.    A buffet style continental breakfast must include (A, B and C):

        A.  A choice of at least three of the following: pastries, sweet rolls, muffins, doughnuts, coffee cake, danish, bread, bagel, croissant, english muffin, toast, cereal.

            1.  If cereal is one of the choices offered, then milk and sugar/sweetener must also be offered.

            2.  If bread, toast, english muffins, bagel or croissant are offered as one of the choices, then butter/margarine and a selection of jams/jellies/marmalades must also be offered.

        B.  Fruit (canned or fresh), and fruit juices (one kind of fruit and one fruit juice complies, if in sufficient quantities).

        C.  Coffee, tea (including at least one decaffeinated coffee or tea) and their usual accompaniments are to be served.

    II.  A plated continental breakfast, either table service or delivered to room or provided in rooms equipped with refrigerator. At a minimum, the plated continental breakfast offering must include at least one selection from list I. (A) above, fruit and fruit juice, and a choice of coffee or tea (including at least one decaffeinated coffee or tea) and their usual accompaniments.

    III.  A plated (table service) hot breakfast. At a minimum, the plated (table service) hot breakfast offering must include (A, B, C and D):

        A.  Hot eggs

        B.  An additional griddle item (e.g., hash browns, potatoes, waffles, pancakes, grits, meat, etc.)

        C.  Toast with a selection of butter or margarine and jams/jellies/marmalades

        D.  Coffee, tea (including at least one decaffeinated coffee or tea) and their usual accompaniments

    (Note: A restaurant offering a full service breakfast menu would meet these requirements)

    Table service, for the purpose of this rule only, is defined as plated food delivered to the guest at a table of standard dining table height with chairs suitable for dining and set with typical condiments (e.g., salt, pepper, sugar, sweetener, cream or non-dairy creamer) and eating utensils. Disposable plates, cups or eating utensils are not acceptable for table service.

The complying breakfast, as defined in I., II. or III. above, must be offered a minimum of three hours every morning, seven days a week. Any breakfast area must have a quality appearance, furnishings must be of the same quality if adjacent to other public areas.

In addition, each Best Western member property must:

    Provide seating at a minimum rate of 20% of rooms (e.g., 10 seats per 50 rooms) with a minimum of two tables and six chairs.

or

If the property has less than the required 20% seating, the property may comply by: (1) delivering the complying plated continental or hot breakfast to the guestrooms or, (2) when a delivery charge is imposed, by providing appropriate trays (in sufficient quantity to meet guest demand) so that guests may take the breakfast to the guestrooms. Notice of delivery and/or tray availability must be provided in all guestrooms.

For properties offering a free (at no additional charge) complying breakfast, a special and prominent designation will be provided, at the property's discretion, in all channels where individual property listings include amenities/services available and Best Western has the ability to provide such designation (e.g., *Travel Guide*, internet, etc.).

To qualify for a "free continental breakfast" designation a property must offer, at a minimum, one of the two complying breakfast offerings, described in I. and II. above, at no additional charge.

To qualify for a "free hot breakfast" designation a property must offer the hot breakfast, described in III. above at no additional charge.

**500.40** The member shall be responsible for loss or damage to any Best Western equipment furnished in conjunction with the affiliation which is in their care, custody or control.

**500.41** All Best Western members and personnel shall display a courteous and professional attitude toward officers, directors, employees and staff of Best Western International.

**500.42** All members shall participate in all mandatory programs and promotions as may be adopted by the Board.

**500.43** Each property shall take all steps which may be necessary to maximize guest satisfaction and minimize guest complaints. In order to assure compliance with this rule, Best Western will monitor each property on a rolling 12-month basis. The receipt of more than 1.7 guest complaints for every 10 rooms during the monitoring period (the ratio of the number of complaints to the number of rooms shall not exceed .17) shall be conclusive evidence of a violation of this rule. Becomes effective January 1, 2007.

**500.44** Members shall at all times respect the privacy of guests and shall institute reasonable measures and precautions designed to safeguard guest privacy. Violation of this rule shall be grounds for membership termination.

**500.45** A. The number of rentable guest rooms of an approved or conditionally approved Best Western property, as provided by rule 500.6 of the Rules and Regulations of Best Western, may not be increased or decreased more than 10 rooms or 10%, whichever is greater, without the prior approval of the Board in accordance with the procedures established herein.

1.   An application to increase or decrease the number of rentable guest rooms shall be as prescribed by the Board and accompanied with payment of fees as established by the Board. The Board may require additional information.

2.   An increase or decrease of more than 10 rooms or 10%, whichever is greater, shall be determined by reference to the most recent Membership Application & Agreement or property unit count on file with the Association, whichever is greater, and shall be a cumulative total of guest rooms increased or decreased at the Best Western property since the effective date of this rule.

3.   The notification, impact studies, and approval procedures shall be as prescribed in Article II, Section 2(C) of the Bylaws and the Board policies interpreting and implementing that Section 2(C), except:

a.   Payment for the impact study shall be by the individual making the request to increase or decrease the unit count.

b.   The impact study shall only consider the impact of the increase or decrease requested; and

c.   The Board of Directors may waive impact studies for unit count decreases.

B.   1.   Properties described in Article II, Section 1, (E)(1) of the Bylaws, pertaining generally to property whose rental units are each separately owned, may be associated with a membership and the designated Best Western property. Such an association shall be upon such terms and conditions as may be established by the Board.

2.   In the event that an ambiguity or inconsistency exists in the application of the provisions of this section, or of Section 2(C) of Article II of the Bylaws, the Board shall have the right to resolve the ambiguity or inconsistency in its sole and exclusive discretion.

**500.46** English speaking staff must be available if requested and be available within a reasonable time of such request having been made.

**500.47** Snacks and hot beverages in guest rooms are to be available for guests.

**500.48** Convenient arrangements for early morning call/alarm are to be available.

**500.49** Safe deposit facilities are to be available for guests.

**500.50** Each property will be billed a registration fee for the annual International Convention the month prior to the convention, commencing with the 1997 International Convention. The fee shall not increase more than the lesser of (1) five percent or (2) the rate of inflation for the previous year, as measured by the United States Bureau of Labor Statistics Consumer Price Index (all items for all urban areas).

**500.51** Whenever there exists a marketing cooperative established by a majority vote of the membership in their state (including the District of Columbia), province, territory or country (including regions

11

such as the Caribbean), each member shall partic-ipate in their respective state, province, territory or country marketing cooperative and abide by all established guidelines adopted by the cooperative.

**500.52**  All members are required to award Best Western International frequency program participants either points or miles, at the frequency program mem-ber's request, for all rate plans with the exception of Allstate (D), Employee/member Discount (E), FIT (FI), Leisure Club (LC), Managers Special (MR), Priceline (PL), Travel Agent Discount (TA), Group (BW Direct), wholesale, tours and other hotel negotiated rates (e.g., crew, local volume, longer than 1 week extended stay, (i.e., WE, MT, etc.).

**500.53**  The Board may assess a member a fee of $50 per occurrence for each complaint charged to its member property after any monitoring period in which the member property received a number of complaints exceeding the permitted guest com-plaint ratio. The per-complaint fee may be charged until the member completes a monitoring period in compliance with the permitted guest complaint ratio. Charged complaints shall not include those categories of complaints that the Board deter-mines members cannot reasonably be expected to be able to control such as, without limitation, com-plaints resulting from electing not to participate in a non-mandatory advertising or marketing cam-paign, or complaints resulting from the failure of a third party to deliver a reservation to the property. Becomes effective January 1, 2007.

**500.54**  The Board may assess a member a fee of $75 per occurrence for each guest complaint that its member property does not respond to or make reasonable efforts to resolve within the established time frame. Becomes effective January 1, 2007.

## Chapter VI

**600.0    Lobby and Front Office**

**600.1**  All properties shall provide a lobby of appropriate size and furnishings commensurate with the size of the property and services offered. Ten (10) square feet per room for 40 through 150 room properties or a minimum area of 400 square feet. Six (6) square feet per room in excess of 150 rooms. Deviation on larger properties is subject to Best Western's prior approval.

**600.2**  The front office and registration/check-out area shall be maintained in an orderly and clean man-ner. An efficient, hospitable and courteous attitude shall be displayed to the guest at all times.

**600.3**  Business shall always be referred to the nearest Best Western, unless by so doing the guest's best interest and comfort are not adequately served.

**600.4**  Alternate accommodations should be provided to the guest if accommodations are not available in the contacted inn, to take advantage of the oppor-tunity to render service to future guests and maintain the loyalty of that Best Western guest.

**600.5**  Additional charges shall not be made for reason-able requests for additional services, such as extra towels, soap, glasses, ironing boards, folding table and chairs, bedboards, blankets, etc.

**600.6**  Rooming guests in unprepared accommodations is prohibited.

**600.7**  The telephone switchboard shall be answered as promptly as possible in a pleasant, courteous manner. All incoming calls shall be answered using the words "Best Western." Callers should not be left holding dead lines, be asked to wait or other-wise be inconvenienced through inefficient service.

**600.8**  All Best Western properties shall provide for regis-tration or checking in of guests 24 hours a day. In the event the front desk is closed for certain hours, a bell or some other arrangement shall be pro-vided for guest services. "No vacancy" signs are not recommended.

**600.9**  A current Best Western Member Information and Resource Guide shall be kept available for front office use.

**600.10**  All front desk personnel shall be in uniform or otherwise neatly attired.

**600.11**  Fax facilities are to be available during normal working hours.

**600.12**  Facilities for storing luggage, in case of late checkouts, are to be available.

**600.13**  Assistance with luggage is to be available upon request.

**600.14**  A telephone for internal/external calls located in public areas is to be provided for guest use.

**600.15**  Photocopy facilities shall be available on-site, seven days a week, during normal business hours (minimum of 14 out of 24 hours).

**600.16**  Long distance access shall be offered to guests free of any long distance access charges.

**600.17**  Local calls under 30 minutes per call shall be provided to guests free of charge.

## Chapter VII

**700.0    Buildings, Grounds and Public Areas**

**700.1**  Exterior and interior of buildings shall be main-tained in good condition and in a good state of repair at all times. Painted surfaces should be free of peeling paint, soil and obvious cracks in masonry, and should present an attractive appear-ance in accordance with Best Western standards.

**700.2**  Adequate free parking space shall be provided. The parking area shall be paved and well marked with stripes. It shall be clean and free of refuse and obstructions.

**700.3**  All parking areas, curbing, concrete bumpers and driveways shall be in a good state of repair and free of excessive cracking, crumbling, chuckholes or unsightly repairs.

**700.4**  Snow removal shall be performed when necessary by plowing and/or use of a melting compound. Icy conditions shall be corrected with an appropriate melting compound or traction providing material.

**700.5**  Sufficient lighting shall be provided in all parking areas to provide for guest security and safety to automobiles. Lighting should be on timing devices to go on at dusk and off at sunrise, and should be properly adjusted as seasons change.

12

**700.6** The entrance to a property shall be clearly identified and driveways unobscured so that incoming guests can readily locate the front office and/or restaurant and lounge facilities. Driving areas where view is obstructed should be clearly marked for slow driving.

**700.7** Appropriate, attractive landscaping shall be provided. Grounds and landscaping shall be kept neat and clean. Lawn and planted areas should be free of weeds and properly edged.

**700.8** Grounds shall be policed daily to remove debris and trash from shrubbery and planted areas.

**700.9** Fire extinguishers shall be located in accordance with prevailing codes, be charged and in view, and bear required inspection certificates or tags.

**700.10** One self-service ice machine and one soft drink machine shall be provided for each 60 rooms. Machines for one- or two-story properties shall be centrally located for convenient access by guests on each floor. One self-service ice machine and one soft drink machine should be provided on every other floor in properties of more than two stories. Automatic ice machines shall dispense a controlled portion of sanitary ice. The dispenser may be operated, at the hotel owner's option, by room key or token. Ice shall be available free of charge to guests 24 hours a day, and its location well identified.

**700.11** Ice machines shall be electrically grounded and maintained in a clean, safe, attractive condition.

**700.12** Drink machines shall be electrically grounded, properly stocked, clean and in good condition.

**700.13** Interior corridor carpeting shall be vacuumed daily and be free of wrinkles, litter, debris and clutter. Interior corridors shall be well lighted. Ceiling and woodwork shall be clean and in good repair.

**700.14** Stairways, walkways and elevators shall be kept clean, uncluttered and well lighted; metal railings, treads and floor covering shall be kept in good condition.

**700.15** No storage of any kind will be permitted in any interior corridors, hallways, exterior covered corridors, walkways or breezeways.

**700.16** Stairway lighting, treads, risers and hand rails shall comply with the National Safety Council, OSHA or other appropriate government agency standards. Treads and landings shall have non-slip surfaces.

**700.17** Exit lights shall be on emergency circuits and in operation at all times, in accordance with applicable prevailing codes.

**700.18** Swimming pools are required, except where individual circumstances warrant a variance approved by the Board. Pools shall be a minimum of 400 square feet, except where a size variance is granted by the Board, and be heated if so advertised.

**700.19** Swimming pool area, including deck, shall be neat, clean, attractive and maintained to a high degree of cleanliness year-round. Area shall be kept free of litter and refuse, especially breakable items such as bottles, dishes and articles made of metal or glass that could endanger the safety of guests. Exterior swimming pools that are closed to the public must have pool covers that have stretching capabilities and are securely fastened on all sides or are made of another pre-approved product to eliminate the collection of refuse or rainwater and subsequent unsightly stagnant conditions.

**700.20** Pool depth should be marked to indicate every two-foot change in depth; such markings are to appear on both the vertical sides of the pool and on the pool deck or apron. Shallow and deep ends should also be clearly identified at pool deck level.

**700.21** Pools shall be maintained in accordance with state regulations.

**700.22** Pumps, filters and underground equipment areas shall be clean, neat, properly vented and maintained at all times. Covers for below ground equipment area shall be properly in place at all times.

**700.23** Chemical balance of pool water shall be maintained at proper levels in accordance with prevailing codes. Daily tests should be conducted and recorded.

**700.24** Adequate pool furniture shall be provided, commensurate with size of property. Furniture shall be maintained in good, clean condition, present no hazardous or unsafe conditions and enhance the overall appearance of the pool, deck and area.

**700.25** Doors, locks and hardware shall be regularly inspected for easy, efficient operation and good appearance.

**700.26** All guest room entrance doors shall be solid-core or metal. Entrance doors (other than interior corridor doors) shall be weather-stripped at top and sides for sound transmission reduction and all wooden entrance doors shall be flush panel. Hollow-core doors may be used for guest unit bathroom doors.

**700.27** All guest room entrance doors shall be equipped with a lock that is self-locking. The lock shall be electronically activated and must be UL listed (CSA for Canada). All guest room entrance doors shall be equipped with a one-inch bored-in deadbolt lock, designated as Grade 2 type. Deadbolt locks shall be operable only with a latch from the interior and emergency key from the exterior. The emergency key is any instrument specifically designed to open that locking device and should be maintained by the general manager or security of the hotel.

Combination locks with panic features shall function so that the deadbolt cannot be retracted from the outside by the use of a guest key or the master key. The deadbolt shall be retracted from the outside only by the use of an emergency key. The room number shall not be displayed on the key.

Electronically activated locking devices are required and must provide the following features:

All entrance door looksets shall be electronically activated and always remain in the locked position without having to operate an interior spanner button or any similar device. The lockset shall only unlock by the use of a guest, master or emergency key. A key is defined as a key card or any device specifically manufactured to operate the lockset.

The lockset shall be keyed to at least three levels of security - the guest key, the master key (or maid's key in some instances) and the emergency key. The emergency key shall be maintained by the general manager or security of the hotel and the master keys only by assigned hotel staff. All functions, except the fail-safe feature designed to completely override the guest room lockset, should be performed in a non-mechanical manner.

All lock sets shall automatically re code with each use of a newly assigned guest key, voiding all previously issued guest keys.

Room numbers shall not be displayed on the key.

A fail-safe feature shall be provided to allow entrance to the guest room in the event of a system or power failure.

If battery operated, a low battery warning feature shall be provided at the guest room lockset level.

An audit trail/interrogation feature is required and should be maintained only by the general manager or security staff of the hotel.

An automatic time-out feature is required at the guest room lockset level to void all keys left in the lockset past a predetermined length of time.

**700.28** All guest room entrance doors are to be equipped with a chain- or bar-type door guard. This door chain/guard should be installed in such a manner that the strength of the attachment is equal to the strength of the chain. The bar-type guard or chain should allow for a maximum door opening of one inch.

**700.29** All guest room entrance doors are to be equipped with one-way door viewers with a minimum of 180-degree viewing. All door viewers are to be metal, not plastic. The viewers should be installed four feet, nine inches from the floor and installed with a substance such as "Lock-Tite" or equivalent, to ensure that it is tamper-proof.

**700.30** All guest rooms with interconnecting doors shall have two solid-core or metal doors equipped with a lock that is self-locking and a one-inch bored-in deadbolt lock on each door. Locks shall have all metal components. A 1/2 inch bored-in deadbolt may be used on doors with a metal frame. It is recommended that both doors be weather-stripped to minimize sound transmission. A knob on the guest room side of the interconnecting door with a tamper-proof plate on the other side of the door complies with the self-locking requirement. When half-inch deadbolts on interconnecting doors are replaced, it is recommended that they be replaced with one-inch deadbolts.

**700.31** All sliding doors are to be equipped with a hook lock built-in within the door handle, as well as a secondary locking device. This secondary locking device shall be a safety bar ("charley bar"), a sliding door deadbolt or a pin-type lock. The hook shape is to resist the parting motion of sliding door and jamb. Sliding doors shall be installed to ensure that the sliding panel is on the inside and the stationary panel is on the outside, unless otherwise waived by the Board.

**700.32** All ground level wooden or metal balcony/patio doors without a walkway shall have a bored-in deadbolt. All wooden or metal private balcony/patio doors above the first floor without a walkway shall have a locking device. All other secondary doors with walkways shall have all required locking devices. A key accessible deadbolt is only required in one entry door.

**700.33** All guest room windows that open shall provide a lock which secures the window in a closed position.

**700.34** All public restrooms shall be clean and well-maintained and have sufficient paper and hand washing supplies. Restrooms shall be well lighted and free of offensive odors.

**700.35** Every Best Western property shall provide repair and maintenance of all facilities, equipment, machinery, paving, lighting, electrical systems, plumbing, heating, air-conditioning, guest room interior, bathrooms, exterior walls, stairways, swimming pools and equipment, keys and locks, roofs and guttering.

**700.36** All reports for repair should be made promptly and a system established to make certain that repairs affecting guest comfort, convenience and safety are completed.

**700.37** Ice machines and vending machines shall be inspected daily by maintenance personnel.

**700.38** Maintenance or building superintendent should be supervised closely by the general manager; constant checking should be done to make certain normal repair maintenance work is performed promptly.

**700.39** It should be remembered that maintenance personnel are also guest contact personnel. They should be well-groomed, clean and properly uniformed.

**700.40** Restaurant, lounges, meeting/banquet rooms and other public areas shall be maintained in good condition and in the highest degree of cleanliness.

**700.41** All fencing shall be maintained in good condition and in a good state of repair at all times. Painted surfaces shall be free of peeling, excessive cracking (weather checking), or excessive fading of paint. Gates, if provided, shall be likewise in good condition and operable.

**700.42** An elevator which serves all floors is required in buildings in which a guest would have to use more than one inter-floor stairway to reach the guest rooms from the main entrance.

**700.43** Bottled or canned water (spring or mineral water) is to be available to the guest on site 24 hours a day, free or at charge. (an acceptable solution is to offer water in a vending machine.)

Only where tap water is not safe to drink (as determined by the appropriate regulatory authority), there must be a notice in the room and a minimum of 1 liter of bottled water per day will be provided in the room, free of charge.

**700.44** Additional complimentary toiletries shall be available on-site to guests, on request, 24 hours daily, free of charge. The following items, if not provided

in guestrooms, shall be available at reception: razor, shaving foam, toothbrush, toothpaste, comb, sanitary napkins (an acceptable solution is to offer sanitary napkins via a vending machine in a public restroom) and sewing kits. The availability of these items is to be noted in the guest service directory.

## Chapter VIII

**800.0    Housekeeping Department**

**800.1**   The housekeeper's office and area shall be maintained in a neat, clean and safe manner and be free of refuse and fire hazards.

**800.2**   The housekeeping department office and area shall be adequately supplied; all equipment shall be maintained in good operating condition.

**800.3**   Floor shall be maintained in a good sanitary condition and in an excellent state of repair.

**800.4**   Maids and housemen (regularly employed) shall be neatly uniformed.

**800.5**   When linen shows holes, excessive stains or heavy mending, it shall be removed from service immediately.

**800.6**   In-house laundry is to be maintained in a clean, neat and safe condition and provide good ventilation and lighting.

**800.7**   Floor covering in laundry is optional; tile is recommended as bare concrete stains linens.

**800.8**   Laundry equipment shall be kept clean and in good operating condition. Washers shall be free of corrosion; dryers should be free of excessive lint and properly vented.

**800.9**   Laundry personnel should be properly uniformed.

**800.10**  Every working maid shall have an operable vacuum cleaner in good condition.

**800.11**  Maid carts shall be kept in a good state of repair and be well painted, clean, neat, well organized, properly supplied and free of squeaks or other noises that might disturb guests.

**800.12**  Professional housekeeping procedures shall be followed at all times.

## Chapter IX

**900.0    Guest Rooms and Bathrooms**

**900.1**   Guest rooms and bathrooms shall be attractive, comfortable, professionally designed, in good taste and maintained on a daily basis in the highest degree of cleanliness and safety.

**900.2**   Walls, ceilings, windows and sills shall be in excellent condition, clean and free of dust, lint, stains, fingermarks and smudges.

**900.3**   All guest rooms are to be fully carpeted with good quality carpeting. Carpets shall be vacuumed daily; obvious debris and litter shall be removed from under the beds and other furniture. Carpet under beds shall be vacuumed at least weekly.

**900.4**   Rooms shall be free of odor and insects.

**900.5**   Pillows, box springs and mattresses shall be of motel/hotel quality and in good physical condition. Ticking should be free of stains. Pillows should be plump and bed support solid.

**900.6**   Each guest room shall be numbered with easily distinguishable, uniform numbers. Doors, locks, and hardware shall be regularly inspected for easy, efficient operation and good appearance. If any guest room entrance door locks are inoperable, the guest room shall be placed "out of service" and not rented until the lock is repaired.

**900.7**   Guest rooms shall be equipped with adequate furnishings that are attractive, comfortable, in excellent condition and free of dust, lint, fingermarks, smudges and scratches. Furniture should be constantly upgraded to eliminate worn finish or upholstery. Refer to Best Western's Renovation & Refurbishing Guidelines for furnishing requirements per room.

**900.8**   Every bed shall be supplied with clean bedding in good condition, that is free of odor, discoloration and stains. This includes all bedding: bedspreads, blankets, mattress pads, pillow cases and bed sheets.

**900.9**   Bedspreads shall be coordinated to guest room decor and be free of snags, tears, holes and frayed edges. Faded or stained spreads shall be removed from service.

**900.10**  [Intentionally omitted.]

**900.11**  Guest bedrooms shall have individually controlled thermostats to provide for guest-controlled heating and cooling; units should operate quietly and have clean filters and grills.

**900.12**  Each guest room shall provide one (1) light fixture at the following locations:

    1.  Each night stand (Two lamps are desirable at the night stand between two double beds. One fixture with two lamps is acceptable.)

    2.  Games/parsons table

    3.  Credenza/mirror

    4.  Desk

Shades and lamps, light fixtures and bulbs shall be dusted daily, and have no frayed cords or stained, bent or broken shades. Adequate lighting shall be provided in all areas of the room. Refer to the Best Western Renovation & Refurbishing Guidelines for adequate lighting requirements per room.

**900.13**  At least one light shall be operated by switch at the entrance door.

**900.14**  Each guest room shall contain one waste basket. (See Chapter X.)

**900.15**  No coin-operated devices of any type will be permitted in any room.

**900.16**  Bedroom draperies shall be in good condition and open and close with cords or pull wands. Drapery rods shall be firmly fastened to wall or ceiling, properly strung and in good operating condition. Refer to Best Western's Renovation & Refurbishing Guidelines for additional drapery specification requirements.

**900.17** One minimum 25-inch color television set shall be supplied in each bedroom. Screen is to be cleaned daily. Television shall be connected to a master antenna system or cable to provide a good quality picture. The 25-inch size requirement becomes effective January 1, 2002, or seven years from the manufacturer's date on the non-complying television, whichever is later, and in any event, not later than January 1, 2006.

**900.18** Each guest room shall contain an operating direct-dial telephone and complete dialing instructions.

**900.19** Each guest room shall contain one current local telephone directory in good condition.

**900.20** A telephone message pad and a pen or pencil shall be conveniently provided near the telephone in the bedroom and/or sitting room.

**900.21** An indication is to be provided in each guest room on how to obtain emergency assistance, such as fire, police, ambulance and medical, as well as instruction notices.

**900.22** Writing paper and envelopes shall be available in each guest room.

**900.23** A directory of services shall be provided in each guest room describing the various facilities and services provided by the hotel and the hours such facilities and/or services are available. The location of vending and ice machines shall be noted.

**900.24** Guest room and bathroom doors should be equipped with doorstops to eliminate noise and damage to walls or fixtures. It is recommended that doors have a stop at top corner of door or a doorknob wall-mounted stop. For bathroom doors, it is recommended that a small rubber bumper be affixed to the bath fixture if door opens against tub or toilet.

**900.25** The individual property should advertise in its rooms, in good taste, its own services and promotions. Printed material should be held to a minimum to avoid a cluttered appearance. Any printed material, including endorsements when using the name and/or logo of Best Western, shall contain the current form of logo approved by Best Western. On-premises advertising or promotion of any hotel, motel or resort other than Best Western is prohibited.

**900.26** Closet/clothes hanger area shall be clean and neat and shall include at least eight matching wooden or permanent hangers, two with skirt clips.

**900.27** All bathrooms shall provide a tub/shower combination of ceramic or other approved materials with a non-skid surface or device.

**900.28** Each bathroom shall contain two rolls of good-quality toilet tissue.

**900.29** Plumbing fixtures and all chrome shall be clean, polished, in good condition and free of tarnish and water spots.

**900.30** Bathroom tile walls and floors shall be cleaned and dried daily and be free of lint, hair and water spots. Tile grouting shall be clean, in a good state of repair and free of mildew or discoloration.

**900.31** Vanity/dressing table, mirror and wash basin shall be of modern design, in a good state of repair, cleaned daily and free of soil, water spots and streaks. Vanities shall have at least a seven-inch skirting to conceal exposed plumbing.

**900.32** Toilet seats and lids shall be clean and sanitary, with no chipped or worn surfaces, bare wood or other composition visible. Seats and lids shall be free of discoloration or stains and not be loose on hinges. Seats shall have required bumper supports. Paper bands are not recommended.

**900.33** Bathrooms shall contain good quality terry cloth items of proper grade and in recommended amounts. (See Chapter X.) Sufficient towel bars shall be provided to accommodate the required amount of towels and shall be conveniently located for easy access.

**900.34** Each bathroom shall contain one waste basket. (See Chapter X.)

**900.35** Shower curtain and rod, tub tracks and glass doors shall be clean and free of soap residue, water minerals and mildew.

**900.36** Each guest bath shall be supplied with good-quality toilet and facial tissue holders. Facial tissues of standard size shall be provided in permanently mounted holders or in a permanent decorative holder approved by Best Western.

**900.37** Light fixtures, electric outlets and switches shall be operable and clean at all times.

**900.38** At least one robe hook should be provided in each bath area.

**900.39** Kitchen areas and kitchen equipment shall be of modern design and shall be kept clean and in excellent physical condition and appearance.

**900.40** All bathrooms shall provide adequate ventilation. Window ventilation usually is adequate, but if windows are not available, exhaust vents and fans shall be provided and maintained in an operable condition.

**900.41** Electric shaver points or outlets near a suitably lit mirror shall be provided.

**900.42** A hair dryer shall be provided in all guestrooms.

**900.43** An iron and ironing board shall be provided in each guestroom. Tabletop ironing boards are not acceptable. Freestanding wall-mounted units are acceptable. The iron must be full size (not travel size).

**900.44** Hot and cold running water shall be provided in each guest bathroom.

**900.45** A laundry bag is to be provided for each guest room.

**900.46** Mechanical fans shall be available upon guest request if the property does not provide air conditioning in the guest room.

**900.47** A minimum of 10% of the guestrooms shall have beds with a minimum mattress size of 72 inches by 84 inches (california king) or 76 inches by 80 inches (standard king).

**900.48** All guest rooms shall be required to have coffee or tea makers with complimentary tea or coffee "packets, bags or filter". Decaffeinated coffee or tea must also be provided. Normal accompaniments, i.e., sugar, sweetener, milk or non-dairy creamer, stirrer are to be provided. Disposable

cups or china/ceramic cups shall be provided. Consumables (coffee, tea, accompaniments and cups) must be replenished daily.

**900.49** Each guestroom shall be provided with a clock, (e.g., clock radio).

**900.50** A dataport facility easily accessable to a desk or work surface shall be provided in each guestroom. A dataport facility is defined as a telephone jack available that can accept a phone line and gives access to an outside telephone dialing tone. The jack may be in the wall or on the phone, but should be available to the guest without unplugging any telephone equipment. The dataport may use the same line as the guest telephone.

**900.51** Guest room televisions shall offer at least one english speaking channel that includes international news. A 24 hour all-news channel is not required.

**900.52** All guest rooms shall have a radio or some other source of music (e.g., portable radio, clock radio, radio on tv, music channel on television or hard-wired hotel music system).

**900.53** Hotels shall have a minimum of 50% of their guestrooms designated as non-smoking. Rooms will be identified with a permanent notice on the guestroom external door as a non-smoking room. Rooms will also have at least one notice within the room, identifying the room as a non-smoking room.

## Chapter X

**1000.0 Logo Items and Room Supply Requirements**

**1000.1** Following are the minimum allowable room supply requirements:

A.   Two (2) tumblers per bed. Tumblers shall be sanitized in accordance with applicable government regulations. Sanitized glasses shall be placed in an approved glass bag. Alternatively, the top and rim of the glass may be covered with approved shrink-wrap plastic or a fitted heavy paper glass cap. When disposable glasses are used, they shall be pre-sanitized and pre-wrapped.

B.   Each guest bathroom shall offer 2 bars of packaged soap in the shower/tub and basin/vanity area. Minimum requirements are at least one 3/4 size bar (2 1/2" x 1 1/2" x 1/4" or .6 ounces) and one 1 1/2 size bar (3" x 1 3/4" x 1/2" or 1.2 ounces). A Best Western approved soap dispenser and dispensed product are allowed in the bath area in lieu of a bar of soap provided a 1 1/2 size facial bar is available at the vanity area. It is recommended that a 1 1/2 size deodorant bar be provided in the bath area.

Each guest bathroom shall offer bottled shampoo (packet/sachets not acceptable) or a conveniently located shampoo/shower/bath gel dispenser.

Extra soap and/or shampoo shall be available upon request.

C.   One (1) ice bucket per room (3 qt. minimum).

D.   Two (2) waste baskets per room, one to be placed in the vanity area (at least one waste basket should be a minimum 13 qt. size).

E.   "Do not disturb" device or sign for each room.

**1000.2** The following minimum guest room linen standards are prescribed, the underlined verbiage is effective January 1, 2004:

1 cloth bath mat (bath towel may be substituted). Minimum weight per dozen: 6.9 lbs.

Room with one bed:

• 2 bath towels. Minimum size: 24" x 48" (24" x 50" is recommended). Minimum weight per dozen: 8.0 lbs. (10.5 lbs. is recommended).

• 2 hand towels. Minimum size: 16" x 27". Minimum weight per dozen: 3.0 lbs.

• 2 face cloths. Minimum size: 12" x 12". Minimum weight per dozen: 1.0 lbs.

Room with two beds:

• 3 bath towels. Minimum size: 24" x 48" (24" x 50" is recommended). Minimum weight per dozen: 8.0 lbs. (10.5 lbs. is recommended).

• 3 hand towels. Minimum size: 16" x 27". Minimum weight per dozen: 3.0 lbs.

• 3 face cloths. Minimum size: 12" x 12". Minimum weight per dozen: 1.0 lbs.

• Before shrinkage

Bedroom linens:

• 1 mattress pad per bed

• 2 sheets per bed (minimum T180 percale - 50 percent cotton)

• 1 blanket per bed

• 2 (medium support) regular size pillows and pillowcases (minimum T180 percale –50 percent cotton) per bed (except king beds, which shall be supplied with 3 regular or 2 king size of each). The pillows shall be of the following minimum standard: Fiber type 6 denier per filament, polyester fiber clusters comprised of a blend of hollow low void, high void and antimicrobial fibers with a cluster cohesion of less than 6.0 Newtons, 100% cotton T-180 ticking with the following size and weight of fill specifications:

| Size | Required Medium Support |
|------|-------------------------|
| Standard 20"x 26" | 22 oz |
| Queen 20"x 30" | 27 oz |
| King 20"x 36" | 33 oz |

If you choose to provide gentle and/or firm pillows in addition to the MEDIUM SUPPORT pillows described above, the following specifications apply. The pillows shall be of the following minimum standard: Fiber type 6 denier per filament, polyester fiber clusters comprised of a blend of hollow low void, high void and antimicrobial fibers with a cluster cohesion of less than 6.0 Newtons, 100% cotton T-180 ticking with the following size and weight of fill specifications:

| Size | Optional Gentle Support | Optional Firm Support |
|------|-------------------------|-----------------------|
| Standard 20"x 26" | 20 oz | 24 oz |
| Queen 20"x 30" | 25 oz | 29 oz |
| King 20"x 36" | 31 oz | 35 oz |

The law tag must be affixed to all pillows as required, for compliance and to fulfill assessment requirements.

17

• Bedding includes: bedspreads, blankets, mattresses pads, pillow cases and bed sheets which are of proper size for the box spring and mattress on which they are used.

**1000.0** All members shall choose a minimum of 3 items for use at the property that shall bear the approved Best Western logo.

**1000.4** A minimum of three logo items are to be displayed in the public areas in addition to signage.

**1000.5** Stationery shall be provided in each guestroom as outlined in the Brand Identity Manual.

## Chapter XI

### 1100.0  Violations and Sanctions

**1100.1** If a member property is operated, managed or maintained in a manner that results in violations, deficiencies or infractions of applicable Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, or orders or directives issued by the Board, the member property may be placed on probation.

**1100.2** Probation involving inspection deficiencies requires receipt of an inspection report or a Guest Rooms/ Public Areas Condition Report made by a Best Western Regional Service Manager indicating the property has scored below the minimum of 800 points. Written notice shall then be sent to the member by certified mail with a copy of the inspection report, requiring correction of the deficiencies noted on the inspection report or a Guest Rooms/Public Areas Condition Report within a specified period.

**1100.3** A property, once placed into probationary status, will remain in that status until such time as a Guest Rooms/Public Areas Condition Report score equals or is greater than 800 points, until the reason for the probation has been cured or until cancellation of the membership.

**1100.4** When failure to maintain property to Best Western standards results in probation, a fee established by the Board may be assessed to cover the cost of the field staff inspection.

**1100.5** If a member fails to pay dues or other fees or assessments (other than Annual Dues) within the time period provided for in the Bylaws, Rules and Regulations or orders or directives issued by the Board, and if such dues, fees or assessments remain unpaid for thirty (30) days after the date of written notice of delinquency is sent to the member by Best Western International Headquarters, or no other satisfactory arrangement has been made for liquidation of the indebtedness, the Board may cancel the membership pursuant to Article II, Section 8(C) and (D) of the Bylaws and Chapter XII of these Rules and Regulations. This section does not govern automatic termination of membership for failure to pay Annual Dues by September 15, which is dealt with in Article II, Section 2(B)(2) of the Bylaws, and does not limit the Board's option to restrict services under rule 1100.8.

**1100.6** If a member fails to conform to the obligations or meet the standards set forth in the Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, or orders or directives of the Board, the Board may cancel the membership pursuant to Article II, Section 8 of the Bylaws and Chapter XII of the Rules and Regulations.

**1100.7** If a member property is operated, managed or maintained in a manner that results in:

A.   Receipt of two (2) consecutive inspection scores or Guest Rooms/Public Areas Condition Report scores which are below 800 points;

or

B.   Receipt of two (2) inspection scores or Guest Rooms/Public Areas Condition Report scores less than 800 points during any 18-month period;

or

C.   Receipt of three (3) inspection scores or Guest Rooms/Public Areas Condition Report scores less than 800 points during any 24-month period;

or

D.   Receipt of a single inspection score or Guest Rooms/Public Areas Condition Report score below 600 points;

the Board may cancel the membership pursuant to Article II, Section 8 of the Bylaws and Chapter XII, Paragraph 1200.2(E) of the Rules and Regulations.

**1100.8** Where grounds exist for termination of membership, the Board or its designee may, in addition to any other remedy, restrict any or all membership services. During an administrative restriction, full fees continue to accrue.

**1100.9** The Board shall establish a program automatically restricting properties on the Best Western reservation system when they score below 600 points on a Guest Rooms/Public Areas Condition Report. The property will remain restricted subject to the property's status being determined by the Board.

## Chapter XII

### 1200.0  Procedure for Cancellation of Membership

**1200.1** A.   Unless payment in full is received within the time specified or other satisfactory arrangements are made to liquidate the delinquent indebtedness contained in a notice sent to a member pursuant to paragraph 1100.5 of Chapter XI of these Rules and Regulations, the President and Chief Executive Officer or his designee shall send to the member by certified mail notice containing the following information:

1.   Statements of amounts delinquent;

2.   Nature of charges;

3.   Citation of the Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, or orders or directives of the Board upon which the nature, amount and delinquency of the charges are based; and

4.  Notification that the Board will consider the cancellation of the membership and that a written demand for a hearing to show cause why the membership should not be cancelled shall be received by the President and Chief Executive Officer or his designee by certified mail within fifteen (15) days after mailing of this notification.

B.  Failure to make timely written demand for a hearing shall be deemed consent by the member to any action taken by the Board with respect to cancellation of the membership.

C.  If the member makes timely written demand for a hearing, the provisions of paragraphs 1200.3 and 1200.5 of this chapter shall apply.

**1200.2**  A.  If the President and Chief Executive Officer or his designee believes a member is in violation of Article II, Section 8(A)(2) or 8(A)(3) of the Bylaws or paragraph 1100.6 of these Rules and Regulations, and the violation is such that a corrective period is allowed, he or his designee shall send written notice of such violation to the member by certified mail, return receipt requested. The notice shall specify in detail the violations charged to exist and the facts believed to support the charged violations, and shall cite the Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, or orders or directives of the Board charged to have been violated. For alleged violations of paragraph 1100.7, or violations for which no corrective period is allowed, compliance with this notice provision is not required.

B.  The Board, by policy, may from time to time establish time periods during which the charged violations may be corrected to avoid further action. Any period for correction shall in no event exceed sixty (60) days from the date of notification provided for in rule 1200.2(A). If the alleged violations contained within the notice to the member are subject to corrective period, said period shall be stated in the notice.

C.  Within twenty-one (21) days after the mailing of the notification of violation, the member shall make written answer to the charges, which shall be sent by certified mail to the President and Chief Executive Officer or his designee. The answer shall state specifically whether the charged violations will be corrected within the prescribed corrective period or whether the existence of the charged violations is challenged. If the charged violations have been corrected within the twenty-one (21) days, the answer shall so specifically state. Additionally, if corrective action may still be taken within the established corrective period, the member shall notify Best Western when the charged violations have been corrected. Such notification shall be mailed no later than the last date of the corrective period.

D.  If the President and Chief Executive Officer or his designee, upon receipt of member's written answer, determines that the violations originally charged do not exist, have been satisfactorily corrected, or will be corrected within the prescribed

corrective period, no further action on the part of the member or Best Western is required. In the event the member does not correct the charged violations within the prescribed corrective period and notify Best Western in writing of such event, or if the charged violations have not been corrected to Best Western's satisfaction, then the President and Chief Executive Officer or his designee shall give notice to the member by certified mail, return receipt requested, that grounds for cancellation exist. The notice shall contain:

1.  Statement of the specific violation that has not been satisfactorily corrected;

2.  Statement of the facts upon which the violation charged is based;

3.  Citation of the Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, or orders or directives of the Board charged to be violated; and

4.  Notification that the Board will consider the cancellation of membership and that any written demand for a hearing to show cause why the membership should not be cancelled shall be received by the President and Chief Executive Officer or his designee by certified mail within fifteen (15) days, or such shorter period as may be set by the President and Chief Executive Officer or his designee by certified mail within fifteen (15) days, or such shorter period as may be set by the Board under Article II, Section 8(D) of the Bylaws, after mailing of this notification.

E.  In the case of violation of Chapter XI, paragraph 1100.7, or in the case of a violation for which no corrective period is allowed, the President and Chief Executive Officer or his designee shall notify the member, by certified mail, return receipt requested, that grounds exist for cancellation of the membership which are not subject to corrective action. The notice shall contain the information required under subparagraph (D)(2), (3) and (4) of this section.

F.  If the member fails to make timely answer to the notification by the President and Chief Executive Officer or his designee provided for in paragraph (A) of this section, the President and Chief Executive Officer or his designee shall cause a written notice to be sent to the member containing the items set out in subparagraphs (1), (2), (3) and (4) of paragraph (D) of this section. Failure to make timely written demand for a hearing shall be deemed consent by the member to any action taken by the Board with respect to cancellation of the membership.

**1200.3**  A.  If a member makes timely written demand for a hearing as provided in paragraph (C), Section 8, Article II of the Bylaws, a hearing shall be held by the Board within sixty (60) days after receipt by the President and Chief Executive Officer or his designee of such demand. The President and Chief Executive Officer or his designee shall notify the member in writing, by certified mail, return receipt

requested, no fewer than fifteen (15) days before the hearing, that a hearing will be held, specifying the place, date and time for such hearing.

B.   At the time of making written demand for a hearing by the Board, the member may make written answer to the charged violations with the answer being sent to the President and Chief Executive Officer or his designee in the same manner as the demand for hearing, and which answer shall fairly meet the charges.

C.   The Board may provide a lesser notice and opportunity to be heard prior to cancellation of a membership as provided in Article II, Section 8(D) of the Bylaws.

**1200.4**   A.   Upon failure of the member to make written demand for a hearing, the Board may thereafter at any time cancel the membership in accordance with paragraph (C) of Section 8, Article II of the Bylaws.

B.   Failure by the member to make timely demand for a hearing shall relieve the Board of entertaining any oral argument during the Board meeting, if any, dealing with the matter of the member's cancellation. Such failure will not, however, permit the Board to dispense with the presentation of evidence or argument to support cancellation of membership or relieve the Board of any obligation to consider:

   1.   Any written response received by the Board or by the President or Chief Executive Officer or his designee

   (a)   not later than fifteen (15) days before said Board meeting; or

   (b)   before transmittal of the matter of the member's cancellation to the Board members if consideration of the matter and vote thereon is by mail or;

   2.   Any correspondence or other written matter between the Association and the member dated no later than thirty (30) days after the mailing of the notification by the President and Chief Executive Officer or his designee required under Article II, Section 8 of the Bylaws.

**1200.5**   In cases in which the member has been granted a hearing pursuant to a timely written demand, the following rules shall apply:

A.   Only persons having a direct interest in the cancellation proceeding shall be entitled to attend, although the Board, in its discretion, may permit such other persons to attend under such conditions as the Board may determine.

B.   Any party to the cancellation proceeding may be represented by counsel, but if the member intends to be so represented, the name, address and telephone number of his counsel shall be provided to the President and Chief Executive Officer or his designee in writing no fewer than three (3) days before the scheduled hearing.

C.   No fewer than three (3) days before the scheduled hearing, there shall be provided to the President and Chief Executive Officer or his designee by or on behalf of the member, a written statement containing the following:

   1.   Names and addresses of witnesses, if any, the member intends to call at the hearing;

   2.   Documentary evidence or exhibits, if any, to be introduced by the member;

   3.   Any special requests;

   4.   Statement of issues to be presented to the Board as the member may anticipate; and

   5.   Any offer of compromise.

D.   At or before the hearing, the President and Chief Executive Officer or his designee will present to each member of the Board a written statement containing the following:

   1.   Name and address of the member;

   2.   Name and address of the member's property;

   3.   Nature and character of the uncorrected violations charged as grounds for cancellation;

   4.   Detailed statement of facts upon which the charged violations are based;

   5.   Citation of the Bylaws, Rules and Regulations, New Construction Guidelines, Renovation & Refurbishing Guidelines, or orders or directives of the Board charged to be violated;

   6.   Listing of correspondence or other communications between the Association and the member relating to the violations charged, with a copy of each attached;

   7.   Recommended action to be taken by the Board; and

   8.   Statement of all sums due and owing from the member to the Association and all sums due and payable.

E.   The order of proceeding during hearings shall be as determined by the Board, provided the member has a full and fair opportunity to present relevant and material evidence in support of his position. The burden of proof of charged violations sufficient to justify cancellation of membership and of compliance with the procedures required by the Bylaws and these Rules and Regulations shall be upon the Association.

F.   The Board shall be the sole judge of the relevancy and materiality of proffered evidence; conformity to legal rules of evidence shall not be required. All evidence shall be taken in the presence of all of the parties, except any party who has been given notice of the hearing and who fails or refuses to attend other than by reason of exclusion from the hearing by the Board, unless such exclusion is based upon gross and disruptive misconduct at the hearing. In the event a party is excluded for gross and disruptive misconduct, the Board shall make a specific finding of such misconduct before ordering the party's exclusion from the hearing. The Board may, in its sole discretion, receive and consider evidence by way of affidavit, written statement or letter or telephone call, but shall give such evidence only such weight as the Board deems appropriate.

G.   Whenever the Board deems it necessary to view and inspect the member property, it shall advise the member of its intention and of the date and time that the inspection shall take place. Whenever the member requests that any inspection be made, the Board in its sole discretion may grant or deny the request; in the event the Board shall agree to make an inspection, the member shall pay, in advance, all the expenses incurred by the Board members.

H.   Any inspection made under this rule may be made by one or more members of the Board as directed by the Board. Any interested party may be present at such inspection.

I.   A hearing on cancellation may be reopened at the sole discretion of the Board at any time before a final decision is rendered. A rehearing may be granted at the sole discretion of the Board and upon such terms and conditions as the Board may direct, provided that written petition for rehearing, specifying the grounds for the petition, shall be sent to the President and Chief Executive Officer or his designee by certified mail within fifteen (15) days of the date notice of the final decision of the Board is mailed to the member.

# Chapter XIII

### 1300.0   Procedure for Termination of Contingently-Approved Applicants

**1300.1**   Contingently-approved applicants are subject to termination of approval, as specified by rule 1300.2, for any violation of the Rules, Bylaws or Board policies which would constitute grounds for placing a member on probation or grounds for terminating a membership. By way of example, without limitation, a contingently-approved applicant is subject to termination of approval, as specified by rule 1300.2, for

A.   receipt of a single inspection score below 800 points;

B.   receipt of customer complaints, during a single six-month monitoring period, in excess of the maximum number permitted by rule 500.43; and

C.   failure to strictly and timely comply with each and every condition of approval. The Board may, as a condition of approval, impose stricter standards on contingently-approved applicants.

**1300.2**   Where grounds for termination exist, the Board may summarily terminate approval of a contingently-approved applicant or may impose additional or stricter conditions of approval. A contingently-approved applicant shall have no right to probation, no right to hearing and no right to vote until full membership has been granted.



Best Western and the Best Western marks are service marks or registered service marks of Best Western International, Inc.
©2006, Best Western International, Inc. All rights reserved. Printed in U.S.A. 10/06  3M

# EXHIBIT D

December 28, 2007

Mr. Majid Mahroom                           EXPRESS MAIL (1-Day)
Monarch Resort
1111 Lighthouse Ave.
Pacific Grove, CA 93950-2326

RE:    Member No:  T-05591

Dear Mr. Mahroom:

The Best Western International, Inc. ("Best Western) Board of Directors met recently to discuss the membership status of your property due to having scored a 801 on the October 23, 2007 Quality Assurance Assessment.  The Conditional Extension letter you signed on August 18, 2006 required you to attain a score of at least 875 points throughout the Conditional Extension process to retain your membership.  A copy of the August 14, 2006 Conditional Extension letter is attached.

Your December 4, 2007 letter was also provided to the Board.  After consideration, it was the Board's decision to cancel all aspects of the property's membership effective immediately due to having scored 801 points on that assessment.

We have deleted the property's listing from our reservations system and cancelled your participation in Best Western's master credit card agreements.  You must take appropriate steps to discontinue all use of the Best Western name and logo at your property effective immediately. You will be contacted within the next few days to confirm your arrangements to comply with this requirement.

**You must ensure that all of the instructions outlined in this letter are followed carefully and promptly.  Specifically:**

<u>**JANUARY 8, 2008**</u>

- Remove all Best Western signs, symbols, designs, trademarks and service marks ("Best Western Marks") from the property as required by your Membership Application and Agreement with Best Western and by Best Western's Rules and Regulations, including Rule 300.6.  Please note that this includes not only the sign faces, but also the actual sign cabinets if curvilinear in shape that display or are part of Best Western Marks.  You are responsible for the actual expenses incurred in removing all Best Western Marks.  Please ensure that photographs and written confirmation of compliance with this requirement are received in the Best Western Brand Identity Department by this date.

Monarch Resort
Pacific Grove, CA
Member No: T-05591
December 28, 2007
Page 2 of 4

## JANUARY 8, 2008 (Continued)

Note: Enclosed is a copy of the Membership Application & Agreement which you signed indicating your understanding of Best Western's ownership of the Best Western Marks.

- A representative of our Brand Identity Administration Department will be contacting you to verify your arrangements for removal of the Best Western registered name and marks from your hotel.

- You will be contacted again shortly after this date to confirm your arrangements for removal of the Best Western registered name and marks from your hotel.

- Remove all references to your property as a Best Western hotel, regardless of where these references are or what kind of media contains them. This includes, but is not limited to, advertising, collateral and promotional material, amenities, White and Yellow Pages listings/ads, directory assistance, hotel and travel guides and directories, billboards and highway signs, web sites, domain name registrations, etc. You are responsible for instructing the appropriate parties to make these changes (state and federal highway agencies, webmasters, etc.).

- Contact Best Western's E-Commerce Department at ecom@bestwestern.com prior to this date to obtain relevant technical information to advise your domain registrars to transfer your Best Western domain names to Best Western International, Inc. by this date.

- **Complete and return the enclosed "Affidavit" and "Logo Removal Checklist" to the Best Western Brand Identity Department by this date confirming that all of Best Western's logo'd items used at the hotel/or elsewhere in conjunction with the hotel have been removed. You may contact the Best Western Brand Identity Department at (602) 957-5684.**

**Continued use of these marks, including on the internet, is an infringement and is illegal. Your membership agreement with Best Western requires you to pay hundreds of dollars a day for each day you infringe and Federal laws may require you to pay Best Western three times the value of the amount of harm you cause Best Western if you infringe.**

Monarch Resort
Pacific Grove, CA
Member No: T-05591
December 28, 2007
Page 3 of 4

## JANUARY 28, 2008

- You are responsible for returning the VSAT communications equipment and CSI credit card terminal, if applicable, to Best Western by this date. If you are not contacted first, you must contact the Best Western Property Help Desk to make arrangements for return of this equipment. You may reach the Help Desk by calling 1-800-528-1902 and selecting Option #1.

- Ensure that the Member Web terminal is <u>not</u> turned off until after this date so that Best Western can continue to process any cancellations received for reservations that had been made prior to your effective cancellation date.

## BEST WESTERN ACCOUNT

- Make arrangements to clear the remaining balance owed on your Best Western account as soon as possible. If you have any orders pending with the Best Western Supply Department, they may be shipped (with the exception of logo'd items) upon full prepayment by credit card or by cashier's check. If you have any questions concerning the account, please contact Ms. Rebecca Altieri in our Accounting Department at (602) 957-5627.

## FUTURE RESERVATIONS

- Best Western expects you to honor existing and future reservations on file with the Best Western reservations center. The guests will be expecting the same Best Western policies that applied when they booked the reservations to apply during their stays, e.g. form of payment, credit card policies, etc. You must advise the Best Western Customer Care Department at 1-800-528-1238 if you will not honor these policies so that Best Western can rebook the guests at another Best Western facility.

## GOLD CROWN CLUB

- Your past participation in the Gold Crown Club has been appreciated. However, at this time, we must ask that you destroy your Gold Crown Club materials or send them to our office. If tracking forms are awarded to your guests after your effective cancellation date, your Best Western account will be charged accordingly.

Monarch Resort
Pacific Grove, CA
Member No: T-05591
December 28, 2007
Page 4 of 4

Please feel free to call me at (602) 957-5835 if you have any questions or you may reach me via email at cheryl.pollack@bestwestern.com.

Sincerely,



CHERYL POLLACK, CHA
Director, Member Care and Development Administration

CP/kf

Enclosures

cc:    Best Western Governor (6-11)

# EXHIBIT E



site search

# BEST WESTERN MONARCH RESORT

Bac

| Hotel Info | Hotel Photos | **Rooms & Rates** | Location & M |
|---|---|---|---|

| Check in: | Check out: | Rooms: | Adults: | Children: |
|---|---|---|---|---|
| mm/dd/yyyy | mm/dd/yyyy | 1 | 1 | 0 |

| Start Search Over | Check Avail |
|---|---|

**To view room availability and prices, please select your check-in and check-out dates.**

AR S BBBOnLine RELIABILITY PROGRAM

© 2001-2008 Advanced Reservation Systems, Inc. All Rights Reserved.
Site Map | Privacy Policy | Terms of Use

**Press Room**      **Travel Industry**      **Research**      **Assessment**

**Students**

This site brought to you by the California Travel & Tourism Commission.
Copyright 2008 California Travel & Tourism Commission. All rights reserved. Sitemap | Contact | Advertising



Deutsch  Español  Français  Italiano  Por

site search

Home ⋮ Best Western Monarch Resort - California Travel and Tourism Commission

# BEST WESTERN MONARCH RESORT

## Pacific Grove

Book Now

Best Western Monarch Resort
1111 Lighthouse Ave
Pacific Grove, CA 93950-2312
Phone: (831) 646-8885



**Press Room**            **Travel Industry**            **Research**            **Assessment**

**Students**

This site brought to you by the California Travel & Tourism Commission.
Copyright © 2008 California Travel & Tourism Commission. All rights reserved. Sitemap | Contact | Advertising

Search Hotels    View/Cancel Reservation

Hotel-Rates.com  >>  United States  >>  California  >>  Pacific Grove  >>  **Best Western Monarch Resort**

# Best Western Monarch Resort in Pacific Grove, California

1111 Lighthouse Ave, Pacific Grove, CA 93950

### Pacific Grove Hotels

Asilomar Conference Grounds
Best Western Monarch Resort
Butterfly Grove Inn
Centrella Inn
Clarion Collection Pacific Grove
Deer Haven Inn And Suites
Gosby House Inn
Howard Johnson Express Inn Pacific Grove
Lighthouse Lodge And Suites
Lovers Point Inn
Martine Inn
Pacific Grove Home
Pacific Grove Inn
Sea Breeze Inn And Cottages
Sea Breeze Lodge
Sunset Inn

More Pacific Grove, California Hotels...

**Hotel Rates & Availability Search**

| | | | | |
|---|---|---|---|---|
| Check-in: | January | 1 | Number of Rooms: | 1 |
| Check-out: | January | 3 | Adults per Room: | 2 |

⚓ **LOWEST HOTEL RATES...GUARANTEED!** ⚓



BEST WESTERN MONARCH RESORT 1111

More Hotel Photos

LIGHTHOUSE AVE
PACIFIC GROVE, CA, US 93950

YEAR BUILT - 1986          YEAR REMODELED - 2000
ADDITIONAL PROPERTY DESCRIPTION -  THE BEST WESTERN
MONARCH RESORT IS A THREE-DIAMOND  RESORT LOCATED IN THE
MONTEREY/PACIFIC GROVE AREA.  STAY WITH US AND ENJOY
FRIENDLY HOSPITALITY, SPACIOUS  AND BEAUTIFULLY APPOINTED
ROOMS OR SUITES FEATURING  COLOR TELEVISION WITH HBO,
COZY MARBLE FIREPLACES,  REFRESHING BALCONIES, AIR
CONDITIONING, IN-ROOM COFFEE  AND TEA SERVICE,
COMPLIMENTARY CONTINENTAL BREAKFAST  AND EVENING SOCIAL.
 YOU WILL ALSO DISCOVER UNIQUE  LANDSCAPING, OUTDOOR
HEATED POOL, SAUNA AND HOT TUB.  OUR SERENE LOCATION IS A
SHORT STROLL FROM THE PACIFIC  GROVE MONARCH BUTTERFLY
SANCTUARY, GOLF COURSE, LOVER S  POINT, PICTURESQUE
VICTORIAN DOWNTOWN, ASILOMAR BEACH  AND CONFERENCE CENTER
AND CALIFORNIA S OLDEST WORKING  LIGHTHOUSE, POINT PINOS.
 THE LUXURIOUS BEST WESTERN  MONARCH RESORT IS A SHORT
DRIVE FROM MONTEREY BAY  AQUARIUM AND CANNERY ROW.  WE
ARE ALSO ONLY MINUTES  FROM 17 MILE DRIVE FROM PEBBLE
BEACH GOLF COURSES AND  CARMEL-BY-THE-SEA.   COME JOIN US

FOR A MEMORABLE STAY  ON THE SPECTACULAR MONTEREY BAY.

## Room Information - Best Western Monarch Resort

NBR OF NON-SMOKING ROOMS - 45 ROOM AMENITIES FOR ALL
ROOMS - ROOM AMENITIES - AM/FM ALARM CLOCK / BATHROOM
AMENITIES / CABLE/SATELLITE TV / COFFEE/TEA MAKER /
COLOR TV / FREE  LOCAL TELEPHONE CALLS / HAIRDRYER /
HANDICAPPED ROOM/FACILITIES / IN-ROOM MOVIES /
IRON/IRONING BOARD / NO SMOKING ROOM / PRIVATE BATH OR
SHOWER / TELEPHONE / TELEVISION TECHNOLOGY - DATAPORT /
HIGH SPEED INTERNET ACCESS ROOM AMENITIES FOR HANDICAP
ROOMS - RAILS IN BATHROOM

## Property Information

ON-SITE FACILITIES - GENERAL FACILITIES - DATAPORT
              ELEVATORS  HANDICAP FACILITIES
ICE/VENDING MACHINES  LAUNDROMAT              NON-
SMOKING ROOMS  OUTDOOR POOL              SAUNA
 WHIRLPOOL CHARGEABLE FACILITIES - BUSINESS CENTER
PARKING FACILITIES - DISABLED PARKING  24 HOURS
 COMPLIMENTARY  FREE PARKING  24 HOURS  COMPLIMENTARY
 OUTDOOR PARKING  24 HOURS  COMPLIMENTARY ADDITIONAL
ONSITE FACILITIES - BANQUET AND/OR MEETING FACILITIES ON
PREMISES / HEATED  OUTDOOR POOL ON PREMISES / FREE
DSL /AIR CONDITIONING  IS AVAILABLE IN SOME ROOMS ONLY
OFF-SITE FACILITIES - GENERAL FACILITIES - BANK
              BAR  BARBER/BEAUTY SHOP              BEACH
 GIFT SHOP              GOLF COURSE  LAUNDROMAT
       NEWSSTAND  PHARMACY
 RESTAURANT MEETING AND CONVENTION FACILITIES -

Star rating: 2

Check in time is 4:00 PM, Check out time is .

## Area Activities

PRIMARY CITY - SJC - 1 MI E ART GALLERIES              1
MI 0 BLOCKS E ASILMOR CONVENTION CENTER 2 MI 0 BLOCKS
BEACHES              1 MI 0 BLOCKS NW BIG SUR
       45 MI 0 BLOCKS S CARMEL BEACH              7
MI 0 BLOCKS S LIGHTHOUSE CINEMAS       1 MI 0 BLOCKS
LOVERS POINT              1 MI 0 BLOCKS E MONARCH
BUTTERFLY SANCTUAR0 MI 0 BLOCKS E MONTERAY BAY AQUARIUM
 2 MI 0 BLOCKS NW MONTEREY FISHERMAN S WHARF4 MI 0
BLOCKS MONTERY CONVENTION CENTER 3 MI 0 BLOCKS PG NATURAL
HISTORY MUSEUM 2 MI 0 BLOCKS E PEBBLE BEACH
 2 MI 0 BLOCKS S

## Driving Directions - Best Western Monarch Resort

Directions To The Property - From North - Highway 1 To
Highway 68 W Which Turns Into Forest Avenue. Go 5 Miles.
Lighthouse Avenue L  The Resort Is One Mile, On The Left.

## Policies & Disclaimers

EXTRA CHILD - 0.00 USD    ROLLAWAY FOR CHILD - 0.00 USD
RATES ARE GUARANTEED CHILDREN STAY FREE - CHILDREN 12
AND UNDER STAY FREE IN ROOM WITH PAYING  ADULT. NO PETS
ALLOWED - ADDITIONAL GENERAL POLICY INFORMATION -
 MAXIMUM 5 ROOMS PER RESERVATIONMAXIMUM 5 PERSONS PER
 ROOM / ONLY IF A ROLLAWAY IS AVAILABLE PROPERTY OFFERS
COMMISSION - RATE OF COMMISSION  10.00 PCT PROPERTY

PARTICIPATES IN A CENTRALIZED COMMISSION PROGRAM  PEGASUS
COMMISSION PROCESSING ADDITIONAL COMMISSION PROGRAMS
INFORMATION -  PLEASE SEE BEST WESTERN CHAIN BROCHURE FOR
DETAILS. OVER SOLD POLICY -

**Guarantee Policy:** FOR LATE ARRIVAL AFTER 4PM, ALL
RESERVATIONS MUST BE GUARANTEED.

**Best Western Monarch Resort, Pacific Grove, California**
Search Availability and Our Low Rates Now

Hotel-Rates.com | Privacy & Security | Contact Us

©2007 Hotel-Rates.com





- ○ Flight
- ● Hotel
- ○ Car
- ○ Packages
- ○ Cruise
- ○ Activities

Search for hotels in:
**Pacific Grove, California**

Check-in date:
3/18/2008

Check-out date:
3/20/2008

Rooms:
1

Adults
2

Children
0


**Search**

More Hotel search
options

**Shop with confidence:
Best price guarantee!**

**Other Hotels**
Best Western Monarch
Resort
Wilkies Inn
Inn At 213 Seventeen
Mile Dr
Gosby House Inn
Pacific Grove Inn
Bella Napa Bay Hotel
Crown Resorts Yiannoula
Beach

Home | California | Best Western Monarch Resort
## Best Western Monarch Resort in Pacific Grove, Califor

Best Western Monarch Resort
1111 Lighthouse Ave
Pacific Grove, California 93950

Call Expedia at: 1-800-551-2409

**Book the Best Western Monarch Resort in Pacific Grove Now!**

The Best Western Monarch Resort is a AAA 3 Diamond resort located in the Monterey/I Area. Stay with us and enjoy friendly hospitality, spacious and beautifully appointed roo featuring cable television with HBO®, cozy marble fireplaces, refreshing balconies, air-c some rooms, in-room coffee and tea service, complimentary continental breakfast and e You will also discover unique landscaping, outdoor heated pool, sauna and hot tub. Our location is a short stroll from the Pacific Grove Monarch Butterfly Sanctuary, golf course Point, picturesque Victorian downtown, Asilomar Beach and Conference Center and Ca oldest working lighthouse, Point Pinos. The luxurious Best Western Monarch Resort is a from Monterey Bay Aquarium and Cannery Row. We are also only minutes from 17 mile Beach Golf Courses and Carmel-By-The-Sea. Come join us for a memorable stay on th Monterey Bay.

Amenities | Reviews

**Best Western Monarch Resort Amenities**
* Complimentary continental breakfast * Complimentary evening social * Outdoor pool, I tub - Whirlpool * Steam room - Dry sauna * Aquarium tickets for sale * Babysitting on re deposit baox - Safe * Elevator * Ice/vending machine * Luggage carts * Smoking and no facilities * Physically challenged services - Facilities for the physically challenged * Free open carport * Meeting facilities * Banquet facilities * Conference services * Fax service services

   

**Best Western Monarch Resort Reviews**

| Traveler Ratings Summary for Best Western Monarch Resort | | | | |
|---|---|---|---|---|
| **Overall: 0.00** | Service 0.00 | Condition 0.00 | Cleanliness 0.00 | Comfort 0.00 |

| No reviews available for this hotel. |
|---|

Luca Cypria Florida Hotel
Adams Beach Hotel
Nissi Beach Hotel
Parkside Inn & Suite San
Marcos
Rodeway Inn San Marcos
Holiday Inn Expstes San
Marcos
Motel 6 San Marcos
La Quinta Inn Wichita
Falls Airport Area
Ramada Ltd Wichita Falls
Best Western Northtown
Inn
Best Western Wichita
Falls Inn
Fairfield Inn by Marriott
Wichita Falls
Econo Lodge Wichita
Falls

Didn't find the Hotel you are looking for?
Go to our Hotel section to get started booking your trip today.

*All Destinations*

**Airports in California**

Expedia Information:  about Expedia.com  |  press room  |  investor relations  |  Expedia.com terms of use  |  privacy policy  |  become an affiliate  |  a
flights  |  hotels  |  car rentals  |  cruises  |  activities  |  earn ThankYou Points  |  site map

Expedia, Inc., not responsible for content on external Web sites. ©2007 Expedia, Inc. All rights reserved. Photo: Getty Images
Guide content Copyright ©2007 by Fodors.com, a unit of Fodors LLC. All rights reserved. Weather forecast data copyright ©2004 AccuWeather, Inc.

Plus sign (+) means taxes and fees are additional.

International sites:    Australia  |  Canada  |  China  |  Denmark  |  France  |  Germany  |  Italy  |  Japan  |  Netherlands  |  Norway  |  Sp

Partner sites:
100 Orlando Spots | Big World Trips | Boston Hotelier | Citysearch | ClassicVacations.com | CondoSaver.com | Cruises.net | Entertainment.com |
Hotwire | HSN | ImprovementsCatalog.com | LendingTree | Match.com | RealEstate.com | ReserveAmerica | San Francisco Hotelier | Shoes | Ti